UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

|  |  |
|---|---|
|  | Chapter 11 |
| GALLANT CAPITAL MARKETS, LTD., | Case No. 17-41814-ESS |
| Debtor. | |

-------------------------------------------------------------x
ESTHER DUVAL, AS CHAPTER 11 TRUSTEE
OF GALLANT CAPITAL MARKETS, LTD.
ESTATE,

|  |  |
|---|---|
| Plaintiff, | Adv. Proc. No. |
| Vs. | |
| AFX CAPITAL MARKETS LTD., AFX CAPITAL U.S. CORP. and STO SUPER TRADING ONLINE, | |
| Defendants. | |

-------------------------------------------------------------x

## COMPLAINT

Esther DuVal, as the Chapter 11 Trustee (the "Trustee" or "Plaintiff") of the jointly-administered estates of Avenica, Inc. ("Avenica") and Gallant Capital Markets, Ltd. ("Gallant" along with Avenica are collectively referred to as the "Debtors"), on behalf of the Gallant estate, brings this complaint to turnover $2.85 million and for other relief against defendants AFX Capital Markets Ltd. ("AFX Capital Markets"), AFX Capital U.S. Corp. ("AFX Capital U.S.", along with AFX Capital Markets are collectively referred to as "AFX") and STO Super Trading Online ("STO", along with AFX are collectively referred to as "Defendants").

## NATURE OF THE PROCEEDING

1.      This adversary proceeding is brought to recover sums due the Debtors by Defendants or to avoid and recover transfers made by Gallant to Defendants or funds improperly

withheld by Defendants and which is due to Gallant under §§ 105(a), 362, 502, 541, 542, 547, 550 and 551 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and to hold Defendants liable for, among other things, failure to turnover property of Gallant's estate and a violation of the automatic stay.

## JURISDICTION AND VENUE

2.      Since this action arises under the Debtors' pending Chapter 11 bankruptcy cases, the United States Bankruptcy Court for the Eastern District of New York (the "Court") has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334(b) and Bankruptcy Rules 6009 and 7001.

3.      The statutory predicates for the claims asserted herein are Bankruptcy Code §§ 362, 502, 541, 542, 547, 548, 550 and 551, and Bankruptcy Rules 6009 and 7001.

4.      This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), (b)(2)(E), (b)(2)(F), (b)(2)(H) and (b)(2)(O).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

6.      At all times relevant, the Debtors and one or more of Defendants were engaged in business transactions including, *inter alia*, making wire transfers to accounts based in the United States, exchanging contracts and other business-related transactional documents over the internet and conducting business transactions over telecommunications systems.

7.      At all times relevant, one or more of Defendants, through appointed representatives, were present in the United States, either physically, directly, or indirectly for, *inter alia*, the purpose of transacting business.

8.      One or more of Defendants had an office location in the United States and advertised, marketed and engaged in at least one press release about its office in New York.

9.      At all times relevant, one or more of the Defendants had its employees and/or representatives solicit business for its U.S. operations.

10.     At all times relevant, upon information and belief, one or more of the Defendants had its employee(s) and/or representatives participate in trade shows related to business products, education and training.

11.     One or more of Defendants engaged in press releases about its New York City office and looked to attract business through U.S. marketing and operations.

12.     At all times relevant, the Defendants maintained an employee and an office in New York to conduct business.

13.     At all times relevant, one or more of the Defendants had its overseas representatives visit New York several times per year to discuss the New York business and meet with the employee(s) and staff.

14.     At all times relevant, one or more of the Defendants processed payroll in New York in connection with its employee(s).

15.     At all times relevant, one or more of the Defendants maintained a banking account at Bank of America in New York to process payroll.

16.     Defendants conducted business over the internet and/or telecommunication systems with one or both of the Debtors, who were located in the United States including, but not limited to, New York.

17.      Defendants exchanged documents over the internet with one or more of the Debtors, who were located in the United States including, but not limited to, New York.

18.     Defendants entered into contracts with the Debtors knowing the Debtors had business operations directly or indirectly in the United States.

19.     One or more of the Defendants conducted business through a U.S. employee and or representative, in person and in New York, with one or both of the Debtors.

20.     Defendants have the requisite minimum contacts with the United States including, but not limited to, New York.

21.     In accordance with Local Bankruptcy Rule 7008-1, Plaintiff consents to the entry of final orders and judgment by this Court if it is determined that this Court, absent the consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

22.     At all times relevant, Gallant was a provider of foreign exchange technologies and services to private and institutional traders. Gallant registered its business at 3170 Nemours Chambers Road, Tortola, British Virgin Islands, but used a mailing address as 5068 44th Street, Woodside New York 11377.

23.     At all times relevant, Avenica provided services and technical support to Gallant and had its principal places of business located at 48 Wall Street, Floor 11, New York, New York 10005 and 85 Broad Street, 16 Floor, New York, New York 10004.

24.     Salvatore Buccatello ("Buccatello") held 100% of the membership interest in Avenica and was the CEO of both Debtors.

25.     Upon information and belief, STO is a trade name of AFX.

26.    Defendant AFX Capital Markets is authorized to conduct business and is "regulated by the Cypress Securities and Exchange Commission and the Financial Conduct Authority". <u>See</u> www. https://www.afxgroup.com/en/.

27.    AFX Capital Markets is a Cypriote limited company with an address of AFX Capital Markets is Gladstonos 116, Kyprianou House, 1st floor, 3032 Limassol, Cyprus.

28.    At all times relevant, AFX maintained an office at 370 Lexington Avenue, Office 2001, New York, New York 10017.

29.    At all times relevant, AFX Capital U.S maintained an office at 370 Lexington Avenue, Office 2001, New York, New York 10017.

30.    At all times relevant, AFX Capital U.S. was formed in 2015 and registered to conduct business in the State of New York

31.    Upon information and belief, at all times relevant, Mario Persichino ("<u>Perisichino</u>") is the acting Executive Director of AFX.

32.    Upon information and belief, at all times relevant, STO is a corporation, limited liability company and/or partnership, and has a direct business relationship with AFX.

33.    At all times relevant, STO maintained an office at 370 Lexington Avenue, Office 2001, New York, New York 10017.

34.    At all times relevant, STO maintained an office at Lexington Avenue on behalf of AFX and represented to the general public and market that it was a part of, and affiliated with, AFX.

35.    Upon information and believe, AFX utilized the office located on Lexington Avenue in order to attract United States customers and to establish a more global presence.

## PROCEDURAL AND FACTUAL HISTORY

### A.    The Debtor's Bankruptcy Filing

36.    On April 14, 2017 (the "Filing Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Court.

37.    The Debtors were operating their businesses and managing their affairs as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

38.    By Order dated May 30, 2017, Esther DuVal, CPA, was appointed as the Chapter 11 Trustee of the Debtors' cases [Dkt. No. 67].

39.    By Amended Order entered on August 29, 2017, the Debtors cases are being jointly administered [Dkt. No. 145].

40.    Pursuant to Bankruptcy Code § 1108, the Trustee is authorized to operate the Debtors' businesses.

### B.    AFX Capital Markets Client Agreement with Gallant

41.    On or about November 13, 2014, Gallant and AFX Capital Markets entered into a client account agreement entitled "Terms and Conditions for Eligible Counterparties and Professional Clients" (the "Client Agreement").

42.    On March 20, 2015, AFX Capital Markets and Gallant amended the Client Agreement under the terms of the AFX capital risk share agreement (the "Capital Risk Share Agreement"), in which the parties agreed to enter into a revenue sharing arrangement.

43.    Under the Capital Risk Share Agreement, Capital Revenue is determined by analyzing the amount of realized profit/loss during each calendar month in Gallant trading account(s) owed to Gallant by AFX.

44. AFX Capital Markets and Gallant agreed that payment of AFX Revenue would be conducted on a monthly basis, with payment, if any, being made no later than 30 calendar days following the last day of the month.

**C.** **Relevant Transactional History Between Gallant and AFX Capital Markets**

45. Upon execution of the Client Agreement, an account in the name of Gallant was opened at AFX Capital Markets (the "Gallant Account").

46. Since the execution of the Client Agreement, Gallant had multiple Gallant Account numbers beginning with an account number ending in 674.

47. The last account number of the Gallant Account ended in 276.

48. All transactions referenced herein in the year 2015 in the Gallant Account took place in account number ending in 674.

49. All transactions referenced herein between the years 2016 and 2017 in the Gallant Account occurred in account number ending in 276.

50. In accordance with the Client Agreement, Gallant deposited an aggregate amount of $2,349,896.12 into the Gallant Account, for its benefit, at AFX Capital Markets as follows:

    i. $149,988.00 on April 23, 2015;

    ii. two deposits each in the amount of $249,988.00 on June 8, 2015;

    iii. $199,988.00 on July 2, 2015;

    iv. $499,981.46 on November 21, 2016;

    v. $499,981.39 on November 23, 2016; and

    vi. $499,981.27 on December 20, 2016.

51. On a daily basis, AFX Capital Markets emailed Gallant the same day, or prior day, trading activity and its account balance in STO AFX Daily Confirmation Reports.

52.    On March 14, 2017 (30 days prior to the Filing Date), according to the STO AFX Daily Confirmation Report emailed to Gallant by AFX Capital Markets, Gallant's account reflected a balance of 1,727,733.69.[1]

53.    The following day on March 15, 2017, according to the STO AFX Daily Confirmation Report emailed to Gallant by AFX Capital Markets, the Gallant Account reflected a balance of $2,355,378.42.[2]

54.    On March 30, 2017 (two weeks prior to the Filing Date), according to the STO AFX Daily Confirmation Report emailed to Gallant by AFX Capital Markets, the Gallant Account reflected a balance of $2,391,869.87.

**D.    Gallant's Pre-Petition Demand for Its Money**

55.    In an email dated April 3, 2017 from Buccellato, the CEO of Gallant, to Persichino, the Executive Director of AFX, Gallant made an initial request for a withdrawal from its Gallant Account to a separate Gallant account in the amount of $1,500,000.00 (the "April 3 2017 Demand").

56.    On the date of the April 3, 2017 Demand, according to the STO AFX Daily Confirmation Report, there was a balance of $2,472,421.41 in the Gallant Account.

57.    AFX never remitted the funds.

58.    On April 5, 2017, since Gallant did not receive the money, it made a second request for the withdrawal of $1,441,217.10 (the "Second Demand").

59.    On the day of the Second Demand, the Gallant Account reflected a balance of $2,472,016.28.

60.    AFX never remitted the funds.

---

[1]    The STO AFX Daily Confirmation Report showed a loss of $32,144.52 on March 14, 2017.
[2]    The STO AFX Daily Confirmation Report showed a profit of $627,644.73 on March 15, 2017.

61.     On April 24, 2017, Buccellato, the CEO of the Debtors executed a declaration before this Court, sworn under penalty of perjury, stating that "Gallant has sustained substantial financial difficulty due to the unforeseen actions of its main counter-party, AFX Capital Markets, a company registered with the Cyprus Securities and Exchange Commission. That unforeseen counter-party's actions have resulted in significant default on obligations owed to Gallant and has had the effect of restricting Gallant's ability to trade and do business. Furthermore, this counterparty default resulted in material financial difficulties that triggered Gallant's insolvency on or around 14 April 2017. Specifically, AFX has failed to process a redemption request submitted by Gallant in excess of USD 2,000,000. Gallant's redemption request was entirely ignored by AFX despite numerous written and verbal requests. In addition to this counterparty default, which was in fact Gallant's primary and most important counterparty, Gallant was unable to provide liquidity services to its own clients.  As a result, to protect its assets including customer accounts, Gallant ceased trading at 17:00 hours on 14 April 2017 and filed for chapter protection immediately thereafter". See Case No. 17-41814, ECF Docket No. 40, pp, 2-3.

**E.     Trustee's Investigation Reveals Unauthorized Transfers by AFX from Gallant Account**

62.     Based upon the Trustee's review of the Debtors' records, several unauthorized transfers by AFX of Gallant's property has come to light. On April 6, 2017 (8 days from the Filing Date), AFX, without authorization, made 4 withdrawals (the "Withdrawals") from the Gallant Account as follows:

    i)    $114,554.20, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for January, 2017;

    ii)    $530,442.80, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for February, 2017;

> iii)   $381,745.20, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for March, 2017; and
>
> iv)   $2,024.20, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for April, 2017.

63.    The Withdrawals total $1,028,766.40, which purportedly represented four months of positive profit/loss owed by Gallant to AFX under the Capital Risk Share Agreement.

64.    Based on the Trustee's investigation to date, Gallant was never provided with a detailed analysis of the profit sharing for these four months.

65.    After the Withdrawals, according to the STO AFX Daily Confirmation Report dated April 6, 2017, the Gallant Account reflected a balance of $1,443,132.92.

66.    In an email dated April 10, 2017, Gallant informed AFX that it did not receive the wire transfer requested twice the week before, and made a third request for, the withdrawal of the funds and demanded that the wire be initiated within 24 hours (the "Third Demand").

67.    In April 2017, Gallant was also communicating with Thomas O'Reilly, an AFX Capital U.S. employee in New York about Gallant's demands for its funds in the Gallant Account. Unfortunately, those communications did not result in AFX complying with Gallant's numerous demands.

68.    On April 13, 2017 at 5:00 p.m. (EST), Gallant stopped all foreign transaction activity with AFX.

69.    On April 14, 2017, the Filing Date, according to the STO AFX Daily Confirmation Report, AFX, again without authorization, withdrew the remaining balance of Gallant's funds from the Gallant Account in the amount of $1,443,132.92 (the "Remaining Balance" along with the Withdrawals are collectively defined as the "Gallant Funds"), leaving a balance of $0.00.

**F.**     **Post-Petition Demands by the Trustee for AFX To Return the Gallant Funds**

70.     Upon the appointment of the Trustee, an immediate demand was made for the turnover of Gallant Funds.

71.     Specifically, in a letter dated June 12, 2017, the Trustee, through her special litigation counsel, demanded the immediate turnover of the Gallant Funds totaling $2,471,893.40 as it is property of Gallant's estate.

72.     In a letter dated June 27, 2017, AFX, through counsel, responded to the demand and asserted defenses, but failed to turn over the Gallant Funds.

73.     In a letter dated July 17, 2017, the Trustee, through her special litigation counsel, disputed the arguments raised by AFX in the June 27th letter and made a second demand for the return of the funds. AFX refused to turn over the funds.

74.     Based on the Trustee's calculation and analysis, Defendants owe the Gallant estate an additional $383,926.65 based upon a miscalculation of the revenue sharing arrangement (the "Additional Money").

75.     The Additional Money owed is calculated utilizing the Capital Risk Share Agreement and their course of conduct.

76.     The Additional Money owed is property of the Gallant estate.

77.     Defendants owe the Additional Money to Gallant.

### FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
#### (Turnover of Property of the Estate - §§ 541 and 542)

78.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "77" as if set forth fully herein.

79.     Gallant had legal and equitable interests in: (a) the Withdrawals in the amount of $1,028,766.40; (b) the Remaining Balance in the amount of $1,443,132.92; and (c) the Additional

Money in the amount of $383,926.65 for an aggregate amount of $2,855,815.97.

80.    The Gallant Funds are property of the Gallant estate.

81.    The Additional Money are property of the Gallant estate.

82.    By reason of the foregoing, Plaintiff is entitled to the entry of an Order and judgment against Defendants, jointly and severally, under Bankruptcy Code §§ 541 and 542: (a) in an amount to be determined at trial but in no event believed to be  less than $2,471,899.32, plus the Additional Money in the amount of $383,926.65; (b) directing the immediate turnover of Gallant Funds in the amount of $2,471,899.32 by Defendants, plus the Additional Money in the amount of $383,926.65; (c) attorney's fees and costs in connection with this action for Defendants intentional withholding of the Plaintiff's money, and (d) for a full and complete accounting of the Gallant Funds and Additional Money.

## SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Declaratory Relief - 28 U.S.C. § 2201(a))

83.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs "1" through "82" as if set forth fully herein.

84.    Gallant has a legal and equitable interest in the Gallant Funds, whether previously distributed or to be distributed in the future.

85.    Gallant's legal and equitable interest in the Gallant Funds, whether previously distributed or to be distributed in the future, is property of the Gallant estate.

86.    The Gallant Funds were in the Gallant Account.

87.    Defendants improperly transferred the Gallant Funds and have failed to account for the Gallant Funds.

88.    By reason of the foregoing, and in accordance with 28 U.S.C. § 2201(a), Plaintiff is entitled to a declaration that the Gallant Funds, whether previously distributed or to be

distributed in the future, are property of the Gallant estate pursuant to Bankruptcy Code § 541(a), and an order and judgment directing that the Gallant Funds be turned over to the Trustee for the benefit of creditors, along with attorney's fees and costs in connection with the Defendants intentional withholding of the Plaintiff's money.

**THIRD CLAIM FOR RELIEF AGAINST ALL DEFENDANTS**
**(Preference - § 547)**

89.    The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "88" as if set forth fully herein.

90.     The removal of the Withdrawals and the Remaining Balances from the Gallant Account was made within ninety (90) days of the Filing Date.

91.    Upon information and belief, the removal of the Withdrawals and the Remaining Balances from the Gallant Account was made to, or for the benefit of, Defendants.

92.    The removal of the Withdrawals and the Remaining Balances from the Gallant Account was made to, or for the benefit of, the Defendants because upon information and belief, the Withdrawals and the Remaining Balances reduced or satisfied a debt owed by Gallant to Defendants.

93.    Upon information and belief, the removal of the Withdrawals and the Remaining Balances from Gallant Account was made on account of an antecedent debt owed by Gallant to Defendants.

94.    Upon information and belief, the removal of the Withdrawals and the Remaining Balances from Gallant's account was made on account of antecedent debt owed by Gallant to Defendants based upon the business transactions and history between Gallants and Defendants, whereby (a) Defendants would supplied services to Gallant, (b) Defendants would deliver a bill or

an invoice to Gallant for such services, and (c) Gallant was required to remit payment to Defendants for such services on a subsequent date.

95.    The removal of the Withdrawals and the Remaining Balance from the Gallant Account was made while Gallant was insolvent or Gallant was rendered insolvent as a result thereof.

96.    The removal of the Withdrawals and the Remaining Balance from Gallant Account enabled Defendants to receive more than they would have otherwise received: (a) in Gallant's chapter 7 bankruptcy case; (b) if the Withdrawals and the Remaining Balance were not removed; and (c) if Defendants received payment to the extent provided by the provisions of the Bankruptcy Code.

97.    As evidenced by the current claims filed in this case and the debt incurred to date, the liabilities of Gallant's estate exceed $1,951,496.49 and no bar date has been established in the Debtors' cases as of the date of this complaint.

98.    By reason of the foregoing, the removal of the Withdrawals and the Remaining Balance from the Gallant Account is avoidable and recoverable by the Trustee under Bankruptcy Code §§547(b) and 550.

99.    By reason of the foregoing, the Trustee is entitled to an order and judgment: (i) avoiding the removal of the Withdrawals and the Remaining Balance from the Gallant Account; or (ii) a money judgment in an amount to be determined at trial but in no event believed to be less than $2,471,899.32, plus interest thereon, attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Fraudulent Conveyance - § 548)

100.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "99" as if set forth fully herein.

101.    Defendant's withdrawal of the Remaining Balance from the Gallant Account occurred on or before the Filing Date.

102.    Upon information and belief, Gallant received less than reasonably equivalent value in exchange for the withdrawal of the Remaining Balance from the Gallant Account.

103.    Upon information and belief, Gallant: (a) was insolvent on the date of the withdrawal of the Remaining Balance or became insolvent as a result of these events; (b) was engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with Gallant was unreasonably small capital; or (c) intended to incur or believed that it would incur, debts that would be beyond its ability to pay as they matured.

104.    The withdrawal of the Remaining Balance by Defendants from the Gallant Account constitutes a fraudulent conveyance under Bankruptcy Code § 548(a)(1)(B).

105.    The withdrawal of the Remaining Balance from the Gallant Account was made to or for the benefit of the Defendants.

106.    By reason of the foregoing, the Trustee is entitled to an order and judgment: (i) avoiding the withdrawal of the Remaining Balance from the Gallant Account; or (ii) a money judgment in an amount to be determined at trial but in no event believed to be less than $1,443,132.92, plus interest thereon, attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
### (Violation of the Automatic Stay - §§ 105(a) and 362)

107.    The Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "106" as if set forth fully herein.

108.    Upon information and belief, Defendants withdrew the Remaining Balance from the Gallant Account on or after the Filing Date.

109.    Defendants violated the automatic stay by withdrawing the Remaining Balance of $1,443,132.92.

110.    Upon information and belief, Defendants knew, or should have known, that the Debtors filed for bankruptcy relief.

111.    Defendants' violation of the automatic stay has injured Plaintiff, on behalf of the Debtors' estates, in an amount to be determined at trial, but in no event believed to be less than $1,443,132.92.

112.    By reason of the foregoing, Plaintiff is entitled to the entry of an order and judgment, under Bankruptcy Code § 105(a) and 362, against Defendants for damages in an amount to be determined at trial, but in no event believed to be less than $1,443,132.92, plus attorney's fees and costs.

## PRESERVATION OF CLAIMS

113.    Plaintiff's investigation is continuing and therefore Plaintiff reserves her right to amend this complaint to state further claims and damages against any and all appropriate parties.

**WHEREFORE**, the Trustee demands judgment on her claims for relief against Defendants as follows:

1.    On the first claim for relief, against Defendants, under Bankruptcy Code §§ 541 and 542: (a) in an amount as yet undetermined, but in no event less than $2,471,899.32, plus the Additional Money in the amount of $383,926.65; (b) directing the immediate turnover of $2,471,899.32 by Defendants, plus the Additional Money in the amount of $383,926.65; and (c) for a full and complete accounting of his use of these funds;

2.    On the second claim for relief, against Defendants, for declaratory relief that the Gallant Funds are property of the Gallant estate pursuant to Bankruptcy Code § 541(a);

3.    On the third claim for relief, against Defendants, under Bankruptcy Code § 547 in an amount no less than $2,471,899.32, or such other amount as may be determined by the Court;

4.    On the fourth claim for relief, against Defendants, under Bankruptcy Code § 548 in an amount no less than $1,443,132.92, or such other amount as may be determined by the Court;

5.    On the fifth claim for relief, against Defendants, under Bankruptcy Code §§ 105(a) and 362, in an amount no less than $1,443,132.92 or such other amount as may be determined by the Court; and

6.    For such other and further relief as the Court deems just and proper.

Dated: April 2, 2018
       Wantagh, New York

Respectfully submitted,

**LAMONICA HERBST & MANISCALCO, LLP**
*General Counsel to Esther DuVal,*
*Chapter 11 Trustee*

By:    *s/ Joseph S. Maniscalco*
       Joseph S. Maniscalco, Esq.
       Jacqulyn S. Loftin, Esq.
       3305 Jerusalem Avenue, Suite 201
       Wantagh, New York 11793

*M:\Documents\Company\Cases\Gallant and Avenica cases\AFX Adv Proc\FINAL COMPLAINT.docx*

17