Douglas E. Spelfogel
Derek L. Wright
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
Telephone:  (212) 682.7474
Facsimile:  (212) 687.2329
Email:  dspelfogel@foley.com

and

Geoffrey S. Goodman
FOLEY & LARDNER LLP
321 North Clark Street
Chicago, Illinois 60610
Telephone:  (312) 832.4500
Facsimile:  (312) 832.4700
Email:  ggoodman@foley.com

*Attorneys for Defendants*

<u>**Hearing Date**</u>:  **July 17, 2018 at 9:30 a.m.**
<u>**Objection Deadline**</u>:  **July 10, 2018**
<u>**Reply Deadline**</u>:  **July 14, 2018**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

In re:

GALLANT CAPITAL MARKETS, LTD.,

                    Debtor.

----------------------------------------------------------X

ESTHER DUVAL, AS CHAPTER 11 TRUSTEE
OF GALLANT CAPITAL MARKETS, LTD.
ESTATE

                    Plaintiff,

              v.

AFX CAPITAL MARKETS LTD., AFX CAPITAL
U.S.  CORP., AND STO SUPER TRADING
ONLINE,

                    Defendants

----------------------------------------------------------X

Case No. 17-41814-ESS

Chapter 11

Adv. Pro. No. 18-1038-ESS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 5

ARGUMENT ........................................................................................................................ 8

I.    The Complaint Should Be Dismissed Against AFX for Lack of Personal
      Jurisdiction................................................................................................................ 8

      A.    Applicable Legal Standards ............................................................................ 8

            1.    Plaintiff's Pleading Burden................................................................... 8

            2.    Governing Law ..................................................................................... 9

      B.    The Complaint Improperly Pleads Jurisdiction Against Defendants
            Collectively .................................................................................................. 10

      C.    AFX is Not Subject to General Jurisdiction in New York................................. 11

      D.    AFX is Not Subject to Specific Jurisdiction in New York ............................... 12

            1.    The Complaint Does Not Sufficiently Allege that AFX Conducted
                  Business in New York ........................................................................ 13

            2.    The Trustee Makes *No* Allegation Connecting Any So-Called
                  Business of AFX in New York to the Claims Asserted Herein................ 14

II.   The Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds .................... 17

      A.    The Agreement and All Related Transactions Occurred Abroad ......................... 18

      B.    Cyprus Has a Far Greater Interest than New York ............................................ 18

      C.    Cyprus Is the Parties' Chosen Forum .............................................................. 19

      D.    No Relevant Party to the Action is Domiciled in New York............................... 20

      E.    Cyprus Is an Adequate Alternative Forum ....................................................... 21

      F.    No Key Witnesses or Evidence Are Located in New York................................. 22

      G.    Foreign Law Governs the Trustee's Disguised Breach of Contract Claims......... 22

i

III.    The Complaint Fails To State a Cause of Action ............................................................. 23

    A.    The Turnover, Declaratory Relief and Violation of Stay Claims Should Be Dismissed ............................................................................................................. 23

    B.    The Trustee's Preference and Fraudulent Transfer Claims Should Be Dismissed ............................................................................................................. 24

    C.    The Preference Claim Should Be Dismissed Because a Recoupment Cannot Be a Preference ......................................................................................... 28

IV.    Capital Corp. Is Not a Party to the Subject Transactions in the Complaint and Lacks Capacity to Be Sued .................................................................................................. 29

CONCLUSION ................................................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*172 E. 122 St. Tenants Ass'n v. Schwarz,*
  73 N.Y.2d 340 (1989) ............................................................................29

*41 E. 1st St. Rehab Corp. v. Lopez,*
  26 Misc. 3d 990 (N.Y. Civ., New York County 2009)...........................29

*Abert Trading, Inc. v. Kipling Belg. N.V./S.A.,*
  No. 00 Civ. 0478 (RMB), 2002 U.S. Dist. LEXIS 3109 (S.D.N.Y. 2002)..............................22

*Ace Decade Holdings Ltd. v. UBS AG, No. 653316/2016,*
  2016 N.Y. Misc. LEXIS 4541 (Sup. Ct., New York County Dec. 7, 2016)...............16, 17, 18

*Adamowicz v. Besnainou,*
  58 A.D.3d 546 (1st Dep't 2009) .............................................................22

*Alamo Contract Builders, Inc. v. CTF Hotel Co.,*
  242 A.D.2d 643, 663 N.Y.S.2d 42 (2d Dep't 1997).................................27

*Baosteel Am., Inc. v. M/V Ocean Lord,*
  257 F. Supp. 2d 687 (S.D.N.Y. 2003)......................................................19

*In re Burnett,*
  450 B.R. 589 (Bankr. W.D. Va. 2011) ....................................................24

*In re Casa de Cambio Majapara S.A. de C.V.,*
  390 B.R. 595 (Bankr. N.D. Ill. 2008) ................................................26, 27

*In re Commodore Int'l, Ltd.,*
  242 B.R. 243 (Bankr. S.D.N.Y. 1999) ....................................................19

*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014)...............................................3, 10, 11, 12, 30

*Doe v. Del. State Police,*
  939 F. Supp. 2d 313 (S.D.N.Y. 2013)........................................................9

*Garmendia v. O'Neill,*
  46 A.D.3d 361 (1st Dep't 2007) .............................................................19

*Hanwha Life Ins. v. UBS AG,*
  127 A.D.3d 618 (1st Dep't 2015) ............................................................21

i

*Hbouss v. Bank of Montreal*,
   23 A.D.3d 152 (1st Dep't 2005) ...............................................................................18

*Hood v. Ascent Med. Corp.*,
   No. 13cv0628 (RWS) (DF), 2016 U.S. Dist. LEXIS 28142 (S.D.N.Y. Mar. 3,
   2016) ..............................................................................................11, 12, 14, 15

*In re J.T. Moran Fin. Corp.*,
   124 B.R. 931 (Bankr. S.D.N.Y. 1991) ...............................................................23, 24

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998).....................................................................................9

*King Cty. v. IKB Deutsche Industriebank AG*,
   769 F. Supp. 2d 309 (S.D.N.Y. 2011)......................................................................9

*LaSala v. Bank of Cyprus Pub. Co.*,
   510 F. Supp. 2d 246 (S.D.N.Y. 2007)........................................17, 18, 20, 21, 22

*Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013).............................................................................8, 13

*McCagg v. Schulte Roth & Zabel LLP*,
   74 A.D.3d 620 (1st Dep't 2010) .............................................................................29

*In re Nat'l Gas Distribs., LLC*,
   556 F.3d 247 (4th Cir. 2009) .................................................................................27

*NewMarkets Partners LLC v. Sal. Oppenheim Jr & CIE*,
   638 F. Supp.2d 394 (S.D.N.Y. 2009).................................................................9, 12

*Norben Imp. Corp. v. Metro. Plant & Flower Corp.*,
   No. 03 Civ. 3660, 2004 U.S. Dist. LEXIS 21210 (S.D.N.Y. Oct. 25, 2004) .........14

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010).....................................................................................9

*Phat Tan Nguyen v. Banque Indosuez*,
   19 A.D.3d 292 (1st Dep't 2005) .............................................................................18

*Porter v. LSB Indus., Inc.*,
   192 A.D.2d 205 (4th Dep't 1993) ...........................................................................30

*Project Cricket Acquisition, Inc. v. Fla. Capital Partners, Inc.*
   No. 652524/2015, 2017 N.Y. Misc. LEXIS 2516 (Sup. Ct., New York County
   June 27, 2017)................................................................................................11, 13

*Rush v. Savchuk,*
    444 U.S. 320 (1980)........................................................................................9, 11

*Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.,*
    No. 05-245-JJF, 2006 U.S. Dist. LEXIS 2797 (D. Del. Jan. 26, 2006)....................................23

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
    505 B.R. 135 (S.D.N.Y. 2013)........................................................................25, 27

*Shin-Etsu Chem. Co. v. ICICI Bank Ltd.,*
    9 A.D.3d 171 (1st Dep't 2004) ........................................................................22

*Silver v. Great Am. Ins. Co.,*
    29 N.Y.2d 356 (1972) ........................................................................18

*In re Sledziejowski,*
    Nos. 13-22050, 13-22748, 2016 Bankr. LEXIS 3791 (Bankr. S.D.N.Y. Oct.
    21, 2016)........................................................................14

*Snodgrass v. Dep't of Veterans Affairs,*
    244 B.R. 353 (W.D. Va. 2000) ........................................................................28

*Sonera Holding B.V. v. Cukurova Holding A.S.,*
    750 F.3d 221 (2d Cir. 2014)........................................................................10, 11

*Telecom Int'l Am., Ltd. v. AT & T Corp.,*
    280 F.3d 175 (2d Cir. 2001)........................................................................27

*In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg., et al.),*
    714 F.3d 659 (2d Cir. 2013)........................................................................10

*Tsangaris v. Elite, Inc.,*
    No. 92 Civ. 7855 (RPP), 1993 U.S. Dist. LEXIS 9235 (S.D.N.Y. 1993) ........................19

*Walden v. Fiore,*
    134 S. Ct. 1115 (2014)........................................................................10, 16

*Waldschmidt v. CBS, Inc.,*
    14 B.R. 309 (M.D. Tenn. 1981) ........................................................................28

*Weber v. PACT XPP Techs, AG,*
    811 F.3d 758 (5th Cir. 2016) ........................................................................19

*World Point Trading PTE v. Credito Italiano,*
    225 A.D.2d 153 (1st Dep't 1996) ........................................................................20

*In re Yonkers Hamilton Sanitarium, Inc.*
    22 B.R. 427 (Bankr. S.D.N.Y. 1982)........................................................................28

iii

**Statutes**

28 U.S.C. § 2201(a) ...................................................................................................6

§ 362 of the Bankruptcy Code ....................................................................................7

§ 101(53B) of the Bankruptcy Code................................................................4, 25, 26

§ 101(53C) of the Bankruptcy Code ...........................................................................27

§ 105(a) of the Bankruptcy Code.................................................................................7

§ 546(g) of the Bankruptcy Code...............................................................4, 24, 25, 27

§ 541 of the Bankruptcy Code .....................................................................................6

§ 542 of the Bankruptcy Code .....................................................................................6

§ 547 of the Bankruptcy Code .....................................................................................6

§ 548(a)(1)(B) of the Bankruptcy Code.......................................................................76

**Other Authorities**

CPLR § 302(a)(1) .......................................................................................12, 13, 14, 16

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

AFX Capital Markets Ltd. ("AFX"), STO Super Trading Online ("STO") and AFX

Capital U.S. Corp. ("Capital Corp." and together with AFX and STO, the "Defendants") submit

this memorandum of law and accompanying Declaration of Mario Persichino dated June 14,

2018 (the "Pers. Dec.") in support of their joint motion (the "Motion") for entry of an order

dismissing the complaint [Doc. No. 1] (the "Complaint")[1] filed by the Chapter 11 Trustee (the

"Trustee").

## PRELIMINARY STATEMENT

As alleged in the Complaint, this action arises from that certain client account agreement

dated November 13, 2014 entitled "Terms and Conditions for Eligible Counterparties and

Professional Clients" between the debtor, Gallant Capital Markets, Ltd. ("Gallant"), and AFX

Capital Markets Ltd. (the "Client Agreement") as amended by that certain capital risk share

agreement dated March 20, 2015 (the "Capital Risk Share Agreement" and together with the

Client Agreement, the "Agreement").  Compl. ¶¶ 41-42.  The Agreement, entered under Cypriot

law, provides, among other things, that Gallant would maintain an account at AFX and enter into

foreign currency transactions with AFX and the parties would share 50/50 in the profits and

losses realized.  Importantly, the Agreement contains a choice of law and forum selection

provision through which the parties agreed that the Agreement and any related contract or

transaction shall be governed by Cypriot law and that the courts of Cyprus shall have jurisdiction

over any related disputes.

Through the Complaint, the Trustee, who stands in the shoes of the debtor, Gallant,

brings this action – at its core, a simple breach of contract action – to recover amounts it alleges

---

[1]  References to the Complaint are cited herein as "Compl. ¶ __."

AFX improperly withdrew from the Gallant account (the "Alleged Withdrawals") pursuant to the Capital Risk Share Agreement (Compl. ¶¶ 63, 69) and additional amounts it alleges are owed to Gallant based upon so-called miscalculations by AFX (the "Alleged Miscalculation Amount") under the same Capital Risk Share Agreement. Compl. ¶¶ 75, 76. Specifically, to overcome fatal jurisdictional defects, the Trustee dresses up contract claims, alleging causes of action demanding: (i) turnover of the Alleged Withdrawals and Alleged Miscalculation Amount; (ii) a declaration that the Alleged Withdrawals are now property of Gallant's estate; (iii) avoidance of the Alleged Withdrawals as a preferential transfer; (iv) avoidance of the Alleged Withdrawals as a fraudulent transfer; and (v) a judgment in the amount of the Alleged Withdrawals based on an alleged violation of the automatic stay.

Significantly, each claim asserted by the Trustee seeks to recover amounts allegedly owed to Gallant under the Agreement. As such, as noted above, the Trustee's claims are simply dressed up breach of contract claims alleged here as Chapter 5 or "stay violation" causes of action under the Bankruptcy Code as a means to sidestep the Forum Clause (defined below) and attempt to improperly manufacture jurisdiction in this Court. While such disguised breach of contract claims are improper (and disputed), as described below, no matter how the Trustee chooses to characterize its purported claims, such claims are subject to dismissal because: (i) the Court lacks personal jurisdiction over AFX; (ii) New York is an inappropriate forum under the doctrine of *forum non conveniens*; and (iii) each claim, as pled, fails to state a cause of action.

First, the Trustee cannot manufacture personal jurisdiction over AFX[2] – an entirely foreign entity – by simply dressing its breach of contract claims up as bankruptcy claims and

---

[2] Through this Motion, only the Court's jurisdiction over AFX is addressed. As detailed below, STO is a trade name (and not a separate legal entity) for AFX so any arguments on behalf of "AFX" with respect to jurisdiction apply equally to STO. In addition, as discussed in section IV below, Capital Corp. is a dissolved entity and cannot

2

naming a non-party to the Agreement, *and now-dissolved entity* (Capital Corp.), as a defendant. Indeed, the Trustee's so-called jurisdictional allegations are woefully deficient as pled. As an initial matter, such allegations fail to plead against each Defendant individually, pleading only against "Defendants" or "one or more Defendants" collectively. Such vague group pleading fails to satisfy the requirement under New York law that each Defendant's contacts with the forum must be assessed individually. Moreover, and in any case, the allegations do not satisfy the standards for establishing either general or specific jurisdiction over AFX in New York. It is undisputed that AFX is a Cypriot entity with its principal place of business in Cyprus. As such, the Complaint fails to allege either factor required to establish general jurisdiction as prescribed by the Supreme Court in *Daimler*.[3] Nor, as detailed below, does the Complaint allege that AFX has sufficient minimum contacts with New York, let alone contacts substantially related to the Trustee's purported causes of action, as required to establish specific jurisdiction and satisfy due process.

Second, even if this Court could properly exercise jurisdiction, this case should be dismissed in favor of another forum. Under the doctrine of *forum non conveniens*, this Court should not entertain this action, as it lacks a substantial nexus with New York. As described in detail below, numerous factors that New York courts weigh in determining an application for dismissal based on *forum non conveniens* strongly point toward dismissal here, including: (i) the Agreement and all related transactions occurred abroad; (ii) Cyprus has a greater interest in the controversy than New York; (iii) the Forum Clause makes Cyprus the parties' agreed forum; (iv)

---

be sued in any jurisdiction. Capital Corp. is also not a party to the Agreement and is not liable for any cause of action asserted herein.

[3] *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), *infra* ("Daimler").

no relevant party to the action is domiciled in New York, as Gallant is based in the British Virgin Islands (the "BVI"); (v) Cyprus is an adequate alternative forum; (vi) no key witnesses or evidence are located in New York; and (vii) foreign law governs the Trustee's disguised breach of contract claims.

Third, to the extent this action is not dismissed on personal jurisdiction and/or *forum non conveniens* grounds, the Complaint should be dismissed in its entirety for failure to state a claim. The Trustee's first, second and fifth causes of action for turnover, declaratory relief and violation of the stay are not properly raised before a court resolves whether or not the alleged underlying (disputed) debt (breach of contract claims based on the Alleged Withdrawals and Miscalculation Amount) is due; in other words, these are dressed up breach of contract claims subject to the Forum Clause.  The Trustee's third cause of action to avoid an alleged preference and fourth cause of action to avoid an alleged constructively fraudulent conveyance fail, as a matter of law, under § 546(g) of the Bankruptcy Code because they seek to claw back transfers in connection with foreign currency transactions, which are plainly "swap agreements" under § 101(53B) of the Bankruptcy Code (not to mention that courts in New York have made clear that contract claims cannot be dressed up as fraud claims where the complained of conduct relates to alleged breaches of the underlying agreement, as is the case here).  The Trustee's alleged preference claim also fails, as a matter of law, because recoupment is not an avoidable preference.

Finally, any claim asserted against Capital Corp. – a non-party to the Agreement and dissolved entity – should be dismissed where Capital Corp. has no connection to or liability for the claims asserted *and* lacks capacity to be sued; Capital Corp. is named here solely as a ploy to feign New York jurisdiction.

# BACKGROUND

### A.    The Agreement

Under the Client Agreement, Gallant entered into foreign currency transactions with AFX through an account Gallant maintained with AFX.  Pers. Dec. ¶ 5.  AFX and Gallant amended the Client Agreement through the Capital Risk Share Agreement which reaffirms the Client Agreement, subject to certain modifications, and generally provides that the parties would share 50/50 in the profits and losses that Gallant realized in its account at AFX.  *Id*. ¶ 6.  Pursuant to the Capital Risk Share Agreement, AFX has credited Gallant's account for its share of profits realized and, when applicable, properly debited Gallant's account as a recoupment for AFX's share of such profits.  *Id*. ¶ 7.  Overall, however, Gallant's losses exceeded its profits resulting in 50% of those losses being subsidized by AFX.  *Id*.

It is undisputed that the only parties to the Agreement – Gallant and AFX – are foreign entities organized in the BVI and Cyprus, respectively.  Compl. ¶¶ 22, 26, 27.  Nor is it disputed that the Agreement includes a choice of law and forum selection provision (the "Forum Clause") through which the parties agreed that the Agreement and any related contract or transaction shall be governed by Cypriot law and that the courts of Cyprus shall have jurisdiction over any related disputes:

> 16.10  Governing Law and Jurisdiction:  This Agreement and any Contracts and transaction contemplated by this Agreement shall be governed by and construed in accordance with Cyprus law.  AFX and the Client irrevocably agree that the courts of Cyprus shall have jurisdiction to hear all and any disputes, controversies or claims (of any and every kind of type, whether based on this Agreement, tort, statute, regulation or otherwise) arising out of, relating to, or connected with this Agreement, including as to its construction, validity, interpretation and enforceability or breach (a "Dispute") and, for such purposes, irrevocably submit to the jurisdiction of the courts of Cyprus.

Pers. Dec. Ex. 1 (Client Agreement, § 16.10), Ex. 2 (incorporated in the Capital Risk Share Agreement, § 4).

**B.    The Nature of the Case**

As alleged in the Complaint, the subject causes of action stem solely from the Client Agreement and Capital Risk Share Agreement entered into by and among Gallant and AFX. Compl. ¶¶ 41-42.  Specifically, the Trustee seeks to recover the Alleged Withdrawals "which purportedly represented four months of positive profit/loss owed by Gallant to AFX under the Capital Risk Share Agreement" (*Id.* ¶ 63) and "the remaining balance of Gallant's funds from the Gallant Account."  *Id.* ¶ 69.  The Trustee also seeks to recover the Alleged Miscalculation Amount "based on a miscalculation of the revenue sharing arrangement [under the Capital Risk Share Agreement]."  *Id.* ¶ 73.

Notwithstanding these contract claims, the Trustee brings the following causes of action under the Bankruptcy Code:

(i)    **Turnover of Property of the Estate – §§ 541 and 542:**  The Trustee asserts that Gallant had legal and equitable interests in the Alleged Withdrawals and Alleged Miscalculation Amount totaling $2,855,815.97. The Trustee seeks an order directing the immediate turnover of such funds (*Id.* ¶¶ 78-82);

(ii)    **Declaratory Relief –  28 U.S.C. § 2201(a):**  The Trustee asserts that Defendants improperly transferred the Alleged Withdrawals totaling $2,471,899.32 and have failed to account for the same.  The Trustee seeks a declaration that the Alleged Withdrawals are property of the Gallant estate and entry of an order and judgment ordering that such funds be turned over to the Trustee (*Id.* ¶¶ 83-88);

(iii)    **Preference – § 547:**  The Trustee asserts that removal of the Alleged Withdrawals totaling $2,471,899.32 from Gallant's account was made within ninety (90) days of Gallant's petition date and constitutes a preferential transfer under § 547 of the Bankruptcy Code.  The Trustee seeks entry of an order and judgment avoiding the removal of such amount (*Id.* ¶¶ 89-99);

6

(iv)    **Fraudulent Conveyance – § 548:**  The Trustee asserts that Defendant's withdrawal of certain of the Alleged Withdrawals totaling $1,443,132.92 from Gallant's account occurred *on or before* the petition date and constitutes a fraudulent conveyance claim under § 548(a)(1)(B) of the Bankruptcy Code.  The Trustee seeks entry of an order and judgment avoiding the withdrawal of such amount (*Id.* ¶¶ 100-06);

(v)    **Violation of the Automatic Stay – §§ 105(a) and 362:**  The Trustee asserts that Defendants withdrew certain of the Alleged Withdrawals totaling $1,443,132.92 from Gallant's account *on or after*[4] the petition date in violation of the automatic stay and seeks entry of an order and judgment in the same amount (*Id.* ¶¶ 107-12).

## C.    AFX and the Other Moving Defendants

AFX is a Cypriot limited company with its principal place of business in Cyprus that is authorized and regulated by the Cypress Securities and Exchange Commission in providing trading and investment services.  *Id.* ¶¶ 26-27.  STO is a trade name of AFX, but not a separate legal entity.  *Id.* ¶ 25; Pers. Dec. ¶ 11.[5]

Capital Corp. is an entity that was incorporated in New York in 2015 – after the Agreement was executed – and was formally dissolved on September 12, 2017 – nearly seven months before the Complaint was filed.  Pers. Dec. ¶¶ 12, 16.  Capital Corp. is not a party to the Agreement or otherwise liable thereunder.  *Id.* ¶ 12.  At all relevant times, Thomas O'Reilly was the Chairman of Capital Corp. and ran its day to day operations; Mr. O'Reilly was not an employee or owner of AFX.  *Id.* ¶ 13.  Mr. O'Reilly also had no business connection with Gallant – he earned no commission from AFX's relationship with Gallant.  *Id.* ¶ 14.  In addition,

---

[4]  The Alleged Withdrawals sought through Claims 5 and 6 are the same, totaling $1,443,132.92, yet through Claim 5 the Trustee asserts such Alleged Withdrawals occurred on or *before* the petition date while through Claim 6 the Trustee asserts that such Alleged Withdrawals occurred on or *after* the petition date.  This is an apparent inconsistency, as alleged.  Indeed, if such Alleged Withdrawals occurred before the petition date, there can be no violation of the automatic stay as alleged in Claim 6; if such Alleged Withdrawals occurred after the petition date, there can be no preference as alleged in Claim 5.

[5]  As such, as used herein, STO is synonymous with AFX and all legal arguments made with respect to AFX apply equally to STO including, among other things, lack of personal jurisdiction, dismissal based on *forum non conveniens* and failure to state a claim.

7

Mr. Persichino was AFX's client contact for Gallant, not Mr. O'Reilly. *Id.* AFX had no

ownership interest in Capital Corp. and Manuela Mazzacco, who has no ownership interest

(either directly or indirectly) in AFX, owns 50% of Capital Corp. *Id.* ¶ 15.

### D.    Gallant, *Not AFX*, Is in Breach of the Agreement

Under the Agreement, AFX has broad rights to be indemnified for fees, expenses and

other losses AFX suffers based on actions by Gallant. *Id.* ¶ 8. Gallant was in perpetual breach of

the Agreement by, among other things, improperly using customer money to engage in foreign

currency transactions at AFX. *Id.* ¶ 9. Gallant's improper actions, both pre-petition and post-

petition (before the appointment of the Trustee) have caused AFX to suffer losses that it has the

right to recoup under the Agreement. *Id.* Those losses include, without limitation: (i) AFX's

loss of valuable investments due to an ongoing regulatory investigation arising out of Gallant's

improper trading at AFX; (ii) potential fines and penalties for which AFX could become subject

due to that investigation; and (iii) attorneys' fees and expenses incurred by AFX due to Gallant's

bankruptcy, Gallant's false representations regarding AFX's conduct and this lawsuit. *Id.*

AFX's resulting indemnification claim (the extent of which cannot yet be determined as a result

of the ongoing regulatory investigation and litigation) would significantly reduce, if not exceed,

any remaining account balance Gallant holds at AFX. *Id.* ¶ 10.

## ARGUMENT

### I.    The Complaint Should Be Dismissed Against AFX for Lack of Personal Jurisdiction

### A.    Applicable Legal Standards

1.    Plaintiff's Pleading Burden

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must

make a prima facie showing that jurisdiction exists." *Licci v. Lebanese Canadian Bank, SAL*,

732 F.3d 161, 167 (2d Cir. 2013) (internal quotation marks and citation omitted). A prima facie

showing "entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape*, 334 F.3d 204, 206 (2d Cir. 2003)).  The plaintiff must allege specific facts establishing jurisdiction; conclusory allegations are insufficient.  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) ("[C]onclusory non-fact-specific jurisdictional allegations" are insufficient to plead personal jurisdiction); *King Cty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 316 n. 28 (S.D.N.Y. 2011) ("[C]onclusory non-fact-specific jurisdictional allegations…will not establish personal jurisdiction.") (internal quotation marks omitted)).

Further, each defendant's contacts with the forum must be assessed individually.  *See, e.g., Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (rejecting "attempt[] to attribute [one defendant]'s contacts to [another defendant] by considering the 'defending parties' together and aggregating their forum contacts," because "[t]he requirements of *International Shoe* . . . must be met as to each defendant"); *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013) ("Plaintiff['s] general allegations lump both [defendants] together, but the Supreme Court has made clear that '[e]ach defendant's contacts with the forum State must be assessed individually.'") (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

2.    <u>Governing Law</u>

"A federal court's jurisdiction over non-resident defendants is governed by the law of the state in which the court sits and the requirements of due process." *NewMarkets Partners LLC v. Sal. Oppenheim Jr & CIE,* 638 F. Supp.2d 394, 400 (S.D.N.Y. 2009) (citing *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998)).  In order to satisfy due process, personal jurisdiction may not be exercised over an out-of-state defendant unless the defendant has "certain minimum contacts .

9

. . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)); *see Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).

There are two types of personal jurisdiction, general and specific.  General, or "all-purpose" jurisdiction, permits a court to hear any and all claims against the defendant and exists only where a foreign corporation's contacts "are so 'continuous and systematic' as to render [it] essentially at home" in the forum state.  *Daimler*, 134 S. Ct. at 761 (alteration in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  "Specific or conduct-linked jurisdiction . . . depends on an affiliatio[n] between the forum and the underlying controversy," *Sonera Holding*, 750 F.3d at 225 (internal quotation mark omitted) (quoting *Goodyear*, 131 S. Ct. at 2851), and "exists when 'a [forum] exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum….'" *In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg., et al.)*, 714 F.3d 659, 673-74 (2d Cir. 2013).

Here, the Complaint relies on certain vague, non-fact-specific and conclusory "jurisdictional" allegations that do not even specify whether the Trustee asserts general or specific jurisdiction over AFX.  Accordingly, as described in detail below, such barebones (or non-existent) allegations in the Complaint do not come close to demonstrating a *prima facie* case of personal jurisdiction over AFX.

### B.    The Complaint Improperly Pleads Jurisdiction Against Defendants Collectively

As an initial matter, the Trustee's purported jurisdictional allegations are made generally against "*Defendants*" (defined in the Complaint to include AFX, Capital Corp. and STO) or "*one*

*or more Defendants.*" Compl. ¶¶ 6-20.  Such allegations are woefully deficient under well-established law requiring that each defendant's contacts with a forum state must be assessed individually.  *See, supra, Rush*, 444 U.S. at 331-32; *Doe*, 939 F. Supp. 2d at 332.  This alone is grounds for dismissal.  *See Project Cricket Acquisition, Inc. v. Fla. Capital Partners, In*c. No. 652524/2015, 2017 N.Y. Misc. LEXIS 2516, at *13-14 (Sup. Ct., New York County June 27, 2017) (holding that there was no jurisdiction where the plaintiff provided no specific allegation regarding New York contacts attributable to *each* defendant (emphasis added)).  Moreover, as described below, such vague allegations do not come close to meeting the standards for either general or specific jurisdiction.

## C.    AFX is Not Subject to General Jurisdiction in New York

Under New York's Civil Practice Law & Rules ("CPLR") section 301, a foreign corporation is subject to general jurisdiction if it has "engaged in such a continuous and systematic course of 'doing business' [in New York] that a finding of its 'presence' [in New York] is warranted." *Hood v. Ascent Med. Corp*., No. 13cv0628 (RWS) (DF), 2016 U.S. Dist. LEXIS  28142 at *27 (S.D.N.Y. Mar. 3, 2016) (alterations in original).  Under the requisite due process analysis, a court may exercise general jurisdiction over a foreign corporation only where its contacts "are so 'continuous and systematic' as to render [it] essentially at home" in the forum state. *Daimler*, 134 S. Ct. at 761 (alteration in original) (citing *Goodyear*, 131 S. Ct. at 2851). For a corporation, "the place of incorporation and the principal place of business are paradigm bases for general jurisdiction."  *Id*. at 760 (internal quotation marks and alterations omitted) and a foreign entity is typically deemed "at home" only in those two places.  *Id*. at 761; *see also Sonera Holding*, 750 F.3d at 225 ("The natural result of general jurisdiction's 'at home' requirement is that 'only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.'") (quoting *Daimler*, 134 S. Ct. at 760).  As the

11

Supreme Court has explained, it would require an "exceptional case" for a corporation to have contacts that are "so substantial and of such a nature as to render [it] at home" in a forum other than the places where it is incorporated and where it maintains its principal place of business. *Daimler*, 134 S. Ct. at 761, n.19.

Here, the Complaint alleges that AFX is a Cypriot limited company located in Cyprus. Compl. ¶ 27.  The Complaint also confirms that AFX "is authorized to conduct business and is 'regulated by the Cypress [*sic*] Securities and Exchange Commission and the Financial Conduct Authority." *Id.* ¶ 26.  Accordingly, it is undisputed that AFX is organized and exists under Cypriot law and has its principal place of business in Cyprus, and therefore, does not meet either of the prescribed *Daimler* factors required to establish general jurisdiction.

Accordingly, under well-established law, no basis exists to exercise general jurisdiction over AFX.

**D.    AFX is Not Subject to Specific Jurisdiction in New York**

"A court may exercise personal jurisdiction [over a foreign defendant] under New York's long-arm statute, CPLR § 302(a)(1), when two requirements are met: '(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Hood*, 2016 U.S. Dist. LEXIS  28142, at *35 (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).  In order to establish a transaction of business, plaintiff must allege "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.'" *Id.* at *36 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012)).  And "[a] claim 'arises out of a defendant's transaction of business in New York "when there exists a 'substantial nexus' between the business transacted and the cause of action sued upon.'" *NewMarkets Partners LLC,* 638 F. Supp.2d at 402 (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,

12

98 F.3d 25, 29 (2d Cir. 1996)).  To satisfy due process, the defendant's contacts with the forum

must be sufficient to show that the defendant "purposefully availed itself of the privilege of

doing business in the forum and could foresee being haled into court there."  *Licci*, 732 F.3d at

170.

1.    The Complaint Does Not Sufficiently Allege that AFX Conducted
Business in New York

As described above, the Trustee's purported jurisdictional allegations are

generally made against all "Defendants" or "one or more Defendants" and do not satisfy the

requirement that alleged contacts be assessed against each defendant individually. *See* Compl. ¶¶

6-20; section I. B., *supra*.  Similarly, here, with respect to the first prong of CPLR 302(a)(1), the

Complaint does not specify any New York business attributable to AFX, but rather, generally

asserts that "one or more Defendants, through appointed representatives, were present in the

United States, either physically, directly, or indirectly for, *inter alia*, the purpose of transacting

business." *Id*. ¶ 7.    Such vague and conclusory allegations are not sufficient to establish that

*AFX* purposefully availed itself of the privilege of conducting business activities in New York.

*See Project Cricket Acquisition,* No. 652524/2015, 2017 N.Y. Misc. LEXIS 2516, *13-14

(finding there was jurisdiction where the "amended complaint contains no allegation that any of

the [defendants], *as separate legal entities*, had any contact with New York." (emphasis added)).

Notwithstanding, to the extent any of the Trustee's other vague and conclusory

allegations are purportedly attributable to AFX, they are belied by the sworn facts in evidence.

In particular, AFX did not, among other things: (i) maintain an office or employee in New York;

(ii) have operations in the U.S. including any marketing operations; (iii) regularly visit New

York to meet with (non-existent) employees and staff; (iv) maintain a New York bank account to

13

process payroll; or (v) regularly solicit or transact business in New York.  Pers. Dec. ¶¶ 17-20.

The Trustee provides no evidence, through affidavits or otherwise, to the contrary.

Accordingly, the Trustee has not sufficiently alleged any act by which AFX purposefully

availed itself of the privilege of conducting activities in New York.

> 2.    The Trustee Makes *No* Allegation Connecting Any So-Called Business of
> AFX in New York to the Claims Asserted Herein

Even assuming, *arguendo*, that AFX conducted business in New York for purposes of

CPLR 302, there is no allegation supporting a substantial nexus between such purported (and

nonexistent) business and the claims asserted here, as required under the second prong of CPLR

302(a)(1).  This is unsurprising given that the Agreement and all related dealings between AFX

and the Debtors were overwhelmingly (actually, exclusively) foreign transactions. *See In re*

*Sledziejowski*, Nos. 13-22050, 13-22748, 2016 Bankr. LEXIS 3791, at *15 (Bankr. S.D.N.Y.

Oct. 21, 2016) (dismissing fraudulent conveyance claims for lack of personal jurisdiction where

claims arose from "overwhelmingly … foreign … transactions.").

Significantly, the only parties to the Agreement, AFX and Gallant, are registered in

Cyprus and the BVI, respectively, and the Agreement was not negotiated in New York and none

of its terms implicate New York.  Pers. Dec. ¶¶ 22, 24 ; *see Norben Imp. Corp. v. Metro. Plant &*

*Flower Corp.*, No. 03 Civ. 3660, 2004 U.S. Dist. LEXIS 21210, at *7 (S.D.N.Y. Oct. 25, 2004)

(finding there was an insufficient nexus where, among other things, "[t]he underlying contract

was not negotiated in New York, and none of its terms implicate New York…").  Nor does the

Agreement provide for any performance in New York; no business under the Agreement was

transacted between AFX and Gallant in New York or in the United States.  Pers. Dec. ¶ 24; *see*

*Hood*, 2016 U.S. Dist. LEXIS 28142, at *39 ("If the contract that is the basis of a claim was

neither negotiated, executed, performed, nor breached in New York, Section 302(a)(1) generally

does not confer personal jurisdiction over a defendant with respect to claims arising from that contract.") (citing *Magdalena v. Lins*, 123 A.D.3d 600, 601, 999 N.Y.S.2d 44, 45-46 (1st Dep't 2014) ("The record shows that the parties negotiated and executed the Fee Sharing Agreement while they were out of the country, and it is not alleged that the agreement was performed or breached in New York.  Thus, no part of the transaction as issue occurred in New York.")).

Indeed, rather than allege *any* connection between AFX's so-called New York conduct and the claims asserted, the Trustee generally alleges, among other things, that "one or more of the Defendants…" (i) "had an office location in New York;" (ii) "solicit[ed] business for its U.S. operations [in an undisclosed location];" (iii) "had its employee(s) and/or representatives participate in trade shows related to business products, education and training [in an undisclosed location];" (iv) "looked to attract business through U.S. marketing and operations;" (v) "had its overseas representatives visit New York several times per year;" (vi) "maintained a banking account…in New York to process payroll;" and (vii) "conducted business over the internet and/or telecommunications systems with one or both of the Debtors, who were located in the United States."  Compl. ¶¶ 8-11, 13, 15-16.  While contrary to the evidence submitted (*see, generally*, Pers. Dec.), such allegations are devoid of any explanation as to how such purported New York business contacts substantially relate to the Trustee's claims; *they do not*.  *See, e.g., Hood*, 2016 U.S. Dist. LEXIS 28142, at *40 (holding, among other things, that where a contract does not on its face contemplate performance in New York, plaintiff's attendance at a trade show in New York during which plaintiff conducted marketing and sales activities on behalf of defendant, "does not demonstrate a substantial relationship between a party's New York

transactions and a contract-related claim, particularly when there is a stronger nexus between the contract and another forum.").[6]

Moreover, the only two allegations that even reference the Debtors, let alone the Agreement and claims asserted herein, allege that "Defendants" conducted business and exchanged documents over the internet and/or telecommunications systems "with one or more of the Debtors, who were located in the United States…"  Compl. ¶¶ 16-17.  However, under similar facts, the Supreme Court of New York determined that a defendant's telephone calls and electronic communications directed to a plaintiff in New York did not establish a substantial relationship between the plaintiff's alleged claims and the defendant's transactions in New York for purposes of CPLR 302(a)(1).  *Ace Decade Holdings Ltd. v. UBS AG, No. 653316/2016*, 2016 N.Y. Misc. LEXIS 4541, at *16-17 (Sup. Ct., New York County Dec. 7, 2016).  In *Ace*, the court found there was no allegation that defendant's employees in Hong Kong specifically sought out the plaintiff in New York, or that defendant attempted to conduct a transaction with the plaintiff in New York:

> Instead, the Complaint describes a purchase by a British Virgin Islands company ([plaintiff]) through a Chinese investment fund, of Shares regulated by Chinese law, denominated in Hong Kong Dollars and listed on the Hong Kong Stock Exchange.  Based on the 'totality of the circumstances,' there is simply no basis to conclude that there is a 'substantial relationship' between the plaintiff's causes of action and the defendant's transactions in New York.

*Id*. at *17 (citations omitted).

---

[6] Further, the Trustee's allegation that "Defendants entered into contracts with the Debtors knowing *the Debtors had business operations directly or indirectly in the United States*," (Compl. ¶ 18 (emphasis added)) exemplifies the deficiency of its pleading.  The law is well-established: "it is the *defendant's* conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  *Walden*, 134 S. Ct at 1122 (emphasis added).  That *the Debtors* allegedly had business operations in the United States is entirely irrelevant in examining *AFX's* conduct.  And in any case, it is not alleged, nor could it be, as described above, that any alleged conduct of AFX in the United States had any connection whatsoever to the claims at issue here.

Similarly here, there is no allegation, nor could there be, that AFX employees specifically sought out Gallant in New York or that they attempted to conduct a transaction with Gallant in New York.  To the contrary, and as the court found determinative in *Ace*, at all relevant times, AFX intended and understood that it was dealing with a BVI company to perform exclusively non-U.S. transactions.  Pers. Dec. ¶ 22.  In particular, the subject Agreement and related transactions were between two foreign entities, contemplated solely foreign transactions and were governed and regulated by foreign law.  *Id*. ¶¶ 22-23.  As such, there is no reasonable basis, nor is one alleged, to find any substantial connection between the Trustee's purported claims and New York (or the United States).

Accordingly, the Trustee has not sufficiently alleged that AFX engaged in New York conduct that had *any* relationship, let alone a substantial relationship, to the Trustee's purported claims and the Trustee has not satisfied its burden of establishing a *prima facie* case of specific jurisdiction.

## II.    The Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds

It is well-settled that under the doctrine of *forum non conveniens*, "New York courts 'need not entertain causes of action lacking a substantial nexus with New York.'"  *Ace*, 2016 N.Y. Misc. LEXIS 4541, at *26 (quoting *Martin v. Mieth*, 35 N.Y.2d 414, 418 (1974)).  The doctrine of *forum non conveniens* allows the court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim*." LaSala v. Bank of Cyprus Pub. Co.,* 510 F. Supp. 2d 246, 254 (S.D.N.Y. 2007) (citing *Carey v. Bayerische Hypo-Under Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)).

"Although no one factor is controlling, collectively, the courts consider and balance the following factors in determining an application for dismissal based on *forum non conveniens*: existence of an adequate alternative forum; situs of the underlying transaction; residency of the

17

parties; potential hardship to the defendant; location of documents; location of a majority of the

witnesses; existence of a forum selection clause; need to apply the law of a foreign jurisdiction;

and burden on New York courts." *Ace*, 2016 N.Y. Misc. LEXIS 4541, at *27.  As discussed

below, considered collectively, these factors strongly point toward dismissal.

### A.  The Agreement and All Related Transactions Occurred Abroad

The occurrence of a transaction in a foreign jurisdiction weighs heavily in favor of

dismissal for *forum non conveniens.  See, e.g., Hbouss v. Bank of Montreal*, 23 A.D.3d 152, 152

(1st Dep't 2005); *Phat Tan Nguyen v. Banque Indosuez*, 19 A.D.3d 292, 294-95 (1st Dep't

2005); *see also Silver v. Great Am. Ins. Co.*, 29 N.Y.2d 356, 362 (1972).  Here, the relevant

transactions and related events, including the parties' execution of the Agreement (which is

controlled by Cypriot law), the opening of the Gallant account with AFX and the alleged

deposits and withdrawals from the Gallant account occurred *entirely* abroad, where the contract

parties were located and where AFX oversaw the Gallant account and all related transactions.

Pers. Dec. ¶ 23.  Significantly, *no relevant conduct* in connection with any of these events

occurred in New York.

### B.  Cyprus Has a Far Greater Interest than New York

"The public interest in having localized controversies decided at home" also weighs in

favor of dismissal for *forum non conveniens.  LaSala*, 510 F. Supp. 2d at 261.  "This factor

requires an evaluation of which forum possesses a stronger local interest in the controversy." *Id.*

at 261-62 (determining that Cyprus possessed by far the strongest interest in the case where the

dispute centered around events occurring there, including "the [subject] Bank of Cyprus accounts

were opened [there], and the transfers alleged to have been improperly permitted by the Bank

were authorized by personnel in Cyprus.").

Here, there is no question that the dispute centers on events occurring in Cyprus (or abroad). In particular, the Agreement was executed in Cyprus by a Cypriot entity and included the Cyprus Forum Clause; the Gallant account was opened in Cyprus; and the Alleged Withdrawals and Alleged Miscalculation Amount were allegedly perpetrated against the Gallant account in Cyprus by AFX personnel in Cyprus. Compl. ¶¶ 62-63, 69, 74; Pers. Dec. ¶¶ 23-25. Moreover, Cyprus has a greater interest in the controversy than New York where AFX is authorized and regulated by the Cypress Securities and Exchange Commission. Compl. ¶ 26; *see, e.g., Garmendia v. O'Neill*, 46 A.D.3d 361, 362 (1st Dep't 2007) ("Uruguay has an interest in adjudicating claims involving its own banking institutions…").

### C.    Cyprus Is the Parties' Chosen Forum

It has been held that the existence of a mandatory, enforceable forum selection clause, like the Forum Clause here,[7] dramatically alters a *forum non conveniens* analysis. *Weber v. PACT XPP Techs, AG,* 811 F.3d 758, 767 (5th Cir. 2016). In particular, the plaintiff's choice of forum merits no weight and plaintiff bears the burden of establishing that *forum non conveniens* dismissal is unwarranted. *Id.* "A forum selection clause should be treated as prima facie valid and enforced unless plaintiffs can show that the clause is unreasonable." *See Tsangaris v. Elite, Inc.,* No. 92 Civ. 7855 (RPP), 1993 U.S. Dist. LEXIS 9235, at *26 (S.D.N.Y. 1993).

While the Trustee does not even mention the Forum Clause, as described herein, the Trustee dressed up her breach of contract claims under the Agreement as Chapter 5 causes of action under the Bankruptcy Code in an inappropriate attempt to sidestep the Forum Clause and the parties' agreed upon jurisdiction in Cyprus. However, where, as here, the Trustee's so-called

---

[7] The Forum Clause is mandatory because it uses the term "shall" coupled with only one jurisdiction (Cyprus). *See Baosteel Am., Inc. v. M/V Ocean Lord*, 257 F. Supp. 2d 687, 690 (S.D.N.Y. 2003).

core bankruptcy claims are inextricably intertwined with non-core matters – in this case, a breach of contract claim under the Agreement – the Trustee may still be bound. *See In re Commodore Int'l, Ltd.*, 242 B.R. 243, 261 (Bankr. S.D.N.Y. 1999) ("A debtor-in-possession or trustee, or by implication a committee whose authority derives from them, is not bound by a forum selection clause in an agreement provided the litigation at issue amounts to a core proceeding <u>*and is not inextricably intertwined with non-core matters*</u>." (emphasis added)).

As detailed herein, each of the Trustee's claims seeks the same relief – recovery of amounts Gallant is allegedly owed by AFX under the Agreement.  As such, the Trustee's claims – despite being cloaked in bankruptcy clothes – are inextricably linked with Gallant's non-core claim that AFX breached the Agreement (and in actuality, disguised contract claims).  Indeed, as described in section III. A. below, the Trustee's turnover, declaratory relief and automatic stay claims cannot be raised before resolution of the Trustee's underlying breach of contract claim. Accordingly, this Court should hold the parties to their agreed upon choice of law and jurisdiction in Cyprus.

### D.    No Relevant Party to the Action is Domiciled in New York

The residence of parties to the lawsuit outside of New York weighs in favor of dismissal for *forum non conveniens*.  *See World Point Trading PTE v. Credito Italiano*, 225 A.D.2d 153, 160-62 (1st Dep't 1996).  Here, as alleged, the two parties to the Agreement, Gallant and AFX, are registered in the BVI and Cyprus, respectively. Compl. ¶¶ 22, 27.  While Gallant alleges a mailing address in New York, as detailed herein (*see* section, I. D., *supra*), New York bears no connection to the Agreement and related transactions that give rise to the purported claims here. *LaSala*, 510 F. Supp. 2d at 257 ("A plaintiff's choice of forum is [] 'given reduced emphasis where … the operative facts upon which the litigation is brought bear little material connection to the chosen forum.'") (citation omitted).  Indeed, any deference to the Trustee's choice to bring

this action in New York "is diminished whe[re] '[P]laintiff is a corporation doing business abroad and can expect to litigate in foreign courts.'" *Id.* This is especially true here where Gallant contractually agreed, through the Forum Clause, to litigate in Cyprus and submit to jurisdiction there.

Meanwhile, the only two parties allegedly residing in New York were not parties to the Agreement and had no role in any of the alleged transactions giving rise to the purported claims. Specifically, the debtor Avenica provided technical support to Gallant (Compl. ¶ 23) while Capital Corp. was formed after the Client Agreement was entered and is now dissolved. Pers. Dec. ¶¶ 12, 16; *see also* section IV, *infra*.

### E.    Cyprus Is an Adequate Alternative Forum

"An alternative forum is adequate 'if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.'" *LaSala*, 510 F. Supp. 2d at 255 (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)). "This does not mean that the same degree of relief must be available in the alternative forum" or that the available causes of action must be identical. *Id.* Instead, in order to deem a sovereign nation's courts unsatisfactory, "a fundamental obstacle to a plaintiff's recovery" must be shown. *Id.* (citing *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975)).

Here, Movants consent to personal jurisdiction in Cyprus for purposes of litigation on the Trustee's claims should this Court dismiss this action on *forum non conveniens* grounds.[8] In light of this, Cyprus is an adequate alternative forum.  *See Hanwha Life Ins. v. UBS AG*, 127 A.D.3d 618, 619 (1st Dep't 2015) (Korea was an adequate forum "in light of defendants'

---

[8] As discussed below (section IV, *infra*), Capital Corp. is dissolved and cannot be sued in any jurisdiction, so it cannot consent to jurisdiction.  However, to the extent the Court disagrees and holds that it has the requisite capacity to be sued (and there is a claim sufficiently alleged against it), Capital Corp. also consents to be sued in Cyprus.

representation that they will submit to its jurisdiction in the event of dismissal.").  In addition, it
is clear that Cypriot courts would permit litigation of the subject matter of the purported dispute
in this action.  Indeed, the Agreement – the sole transaction from which all of the purported
claims arise – is governed by the laws of Cyprus, and it has been established that Cyprus
recognizes claims for breach of contract and various torts.  *See LaSala*, 510 F. Supp. 2d at 256
("Where Cyprus law recognizes causes of action for three of the five claims brought by
plaintiffs, it cannot be said that Cyprus fails to permit 'litigation of the subject matter of the
dispute.'").

### F.    No Key Witnesses or Evidence Are Located in New York

The location of witnesses outside the United States supports dismissal on *forum non
conveniens* grounds.  *See, e.g. Adamowicz v. Besnainou*, 58 A.D.3d 546, 546-47 (1st Dep't
2009); *Shin-Etsu Chem. Co. v. ICICI Bank Ltd.*, 9 A.D.3d 171, 177-78 (1st Dep't 2004).  Here,
the gravamen of the Complaint is the Alleged Withdrawals and Alleged Miscalculation Amount
allegedly perpetrated by AFX and its personnel through Gallant's AFX account.  AFX has no
personnel in the United States and Gallant's account was maintained in Cyprus.  Pers. Dec. ¶¶
17-20.

### G.    Foreign Law Governs the Trustee's Disguised Breach of Contract Claims

"[T]he likelihood that foreign law will apply weighs against retention of the action." *See
Abert Trading, Inc. v. Kipling Belg. N.V./S.A.*, No. 00 Civ. 0478 (RMB), 2002 U.S. Dist. LEXIS
3109, at *19-20 (S.D.N.Y. 2002) (dismissing case on basis of doctrine of *forum non conveniens*
where "[t]here is a real likelihood that Belgium law would apply").  Here, Cypriot law will
necessarily apply to determine whether AFX has any liability under the Agreement, as alleged.
*See* section III. A., *infra* (while improperly raised and subject to dismissal, the Trustee's
turnover, declaratory relief and automatic stay claims are inextricably linked to an action for

breach of the Agreement (and disguised contract claims) which must be resolved under Cypriot law pursuant to the Forum Clause).

III.    **The Complaint Fails To State a Cause of Action**

A.    **The Turnover, Declaratory Relief and Violation of Stay Claims Should Be Dismissed**

Through the first two causes of action for turnover and declaratory relief, the Trustee seeks a determination that the Alleged Withdrawals and Alleged Miscalculation Amount are amounts owed to Gallant by AFX under the Agreement and that such amounts constitute property of the estate that must be turned over to the Trustee.  Compl. ¶¶ 78-88.  Similarly, through the fifth cause of action for violation of the automatic stay, the Trustee asserts that certain of the Alleged Withdrawals occurred post-petition and constitute a violation of the automatic stay.  However, as described above, the gravamen of the Trustee's claims are that AFX owes money to Gallant under the Agreement.  The claims therefore are breach of contract claims under the Agreement dressed up as Chapter 5 or "stay violation" causes of action as an improper means to avoid the Cyprus Forum Clause and manufacture jurisdiction here.

Indeed, the law is clear that "where [] the court must resolve whether or not the debt claimed is due, the action to collect the disputed funds cannot be regarded as a turnover proceeding under the core jurisdiction of the bankruptcy court."  *In re J.T. Moran Fin. Corp.*, 124 B.R. 931, 938 (Bankr. S.D.N.Y. 1991) (citations omitted); *see also Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.*, No. 05-245-JJF, 2006 U.S. Dist. LEXIS 2797 (D. Del. Jan. 26, 2006) (holding turnover action is not appropriate when the amount of rent pursuant to a contract was at issue).  Similarly here, the amounts Gallant alleges are due under the Agreement are disputed where, among other things, AFX (a) disputes the amount of Gallant's balance under the Agreement pursuant to the terms of the Agreement and Cypriot law, and (b) has its own claims

23

against Gallant for indemnification under the Agreement.  Therefore, before a court can decide whether such disputed amounts are owed to Gallant such that they constitute property of the estate subject to turnover *or* a violation of the automatic stay, it must resolve the underlying breach of contract claims and the rights of the parties under the Agreement pursuant to Cypriot law. *J.T. Moran*, 124 B.R. at 938 ("In other words, if the amount in question can be characterized as property of the estate only if the debtor prevails and not property of the estate if the defendants succeed on their counterclaims, there is no unconditional property of the estate subject to a turnover proceeding for core jurisdiction unless the debtor ultimately prevails in the action on the contract."); *see also In re Burnett*, 450 B.R. 589, 594 (Bankr. W.D. Va. 2011) (noting the "automatic stay only applies to property of the estate" and because the debtor did not have a legal or equitable interest in the property, the automatic stay did not apply).

In other words, if AFX owes nothing to Gallant under the terms of the Agreement – as AFX alleges – the Trustee's remaining claims fail as a matter of law.  Accordingly, the Trustee's so-called "turnover," declaratory relief and automatic stay claims are premature before a breach of contract claim is adjudicated in favor of Gallant.  While no such breach of contract claim is alleged here (likely for strategic reasons, as noted above), in any case, such a claim can only be determined in Cyprus per the Forum Clause.  Therefore, Gallant fails to state a cause of action and these claims must be dismissed as a matter of law.

### B.    The Trustee's Preference and Fraudulent Transfer Claims Should Be Dismissed

Both the Trustee's preference claim (Third Claim) and her constructively fraudulent transfer claim (Fourth Claim) should be dismissed because they fail as a matter of law under § 546(g) of the Bankruptcy Code.  Section 546(g) states as follows:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B) and 548(b)
> of this title, the trustee may not avoid a transfer, made by or to (or

24

> for the benefit of) a swap participant or financial participant, under
> or in connection with any swap agreement and that is made before
> the commencement of the case, except under section
> 548(a)(1)(A)….

11 U.S.C. § 546(g).

Section 546(g) thus provides that a trustee may not avoid a preference or constructively

fraudulent transfer that is made (a) by or to (or for the benefit of) a swap participant under or in

connection with a swap agreement, and (b) before the commencement of the debtor's bankruptcy

case.  Section 546(g) "was intended to 'ensure that the swap . . .  markets are not destabilized by

uncertainties regarding the treatment of their financial instruments under the Bankruptcy Code.'"

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 145 (S.D.N.Y. 2013)

(quoting H.R. Rep. No. 101-484, at 1, *reprinted in* 1990 U.S.C.C.A.N. 223, 223).

Here, the elements of § 546(g) are plainly satisfied.  The transfers the Trustee seeks to

avoid (the "<u>Transfers</u>") were made "under or in connection with a swap agreement."  Section

101(53B) of the Bankruptcy Code defines "swap agreement," in relevant part, as follows:

> (53B) The term "swap agreement"
>
>  (A) means—
>
> > (i) any agreement, including the terms and conditions
> > incorporated by reference in such agreement, which is—
> >
> > > (I) an interest rate swap, option, future, or forward
> > > agreement, including a rate floor, rate cap, rate collar,
> > > *cross-currency rate swap*, and basis swap;
> > >
> > > (II) a spot, same day-tomorrow, tomorrow-next,
> > > forward, *or other foreign exchange,* precious metals, or
> > > other commodity agreement;
> > >
> > > (III) *a currency swap, option, future, or forward
> > > agreement*;
>
> . . .

25

> (ii) any agreement or transaction that is similar to any other agreement or transaction referred to in this paragraph and that—

> > (I) is of a type that has been, is presently, or in the future becomes, the subject of recurrent dealings in the swap or other derivatives markets (including terms and conditions incorporated by reference therein); and

> > (II) *is a forward, swap, future, option, or spot transaction on one or more rates, currencies,* commodities, equity securities, or other equity instruments, debt securities or other debt instruments, quantitative measures associated with an occurrence, extent of an occurrence, or contingency associated with a financial, commercial, or economic consequence, or economic or financial indices or measures of economic or financial risk or value;

> > (iii) any combination of agreements or transactions referred to in this subparagraph;

> > (iv) any option to enter into an agreement or transaction referred to in this subparagraph;

> > (v) a master agreement that provides for an agreement or transaction referred to in clause (i), (ii), (iii), or (iv), together with all supplements to any such master agreement, and without regard to whether the master agreement contains an agreement or transaction that is not a swap agreement under this paragraph, except that the master agreement shall be considered to be a swap agreement under this paragraph only with respect to each agreement or transaction under the master agreement that is referred to in clause (i), (ii), (iii), or (iv); or (vi) any security agreement or arrangement or other credit enhancement related to any agreements or transactions referred to in clause (i) through (v), including any guarantee or reimbursement obligation by or to a swap participant or financial participant in connection with any agreement or transaction referred to in any such clause, but not to exceed the damages in connection with any such agreement or transaction, measured in accordance with section 562. . . .

11 U.S.C. § 101(53B) (emphasis added).

The Agreement – which provides for foreign currency swaps – plainly qualifies as a

"swap agreement" under § 101(53B)(A)(ii)(i) and (ii)(II). *See id.*; *see also* Client Agreement at

§§ 5.9, 7.1(ii) (referencing "Swaps" entered into under the agreement); *In re Casa de Cambio*

*Majapara S.A. de C.V.*, 390 B.R. 595, 597, 600 (Bankr. N.D. Ill. 2008) (stipulating that foreign exchange spot transactions qualified as "swap agreements"); *In re Nat'l Gas Distribs., LLC*, 556 F.3d 247, 253 (4th Cir. 2009) ("The current definition of 'swap agreement' is now extremely broad, covering several dozen enumerated contracts and transactions, as well as combinations of them, options on them, and similar contracts or transactions."). Moreover, the Transfers indisputably were made "under or in connection with a swap agreement" (i.e., the Agreement). *See Madoff*, 505 B.R. at 145 (stating that "in connection with" has a "broad meaning" and that "section 546(g)'s requirement that a transfer be made 'in connection with any swap agreement' simply means that the transfer must be related to such an agreement"); *Casa de Cambio*, 390 B.R. at 598 (noting broad application of "in connection with").

AFX also qualifies as a "swap participant" entitled to the protections of § 546(g). Section 101(53C) of the Bankruptcy Code defines "swap participant" as "an entity that, at any time before the filing of the petition, has an outstanding swap agreement with the debtor." 11 U.S.C. § 101(53C). Because, as noted above, the Agreement is a "swap agreement," AFX qualifies as a "swap participant."

Finally, the Transfers took place before Gallant's bankruptcy. Compl. ¶¶ 90 and 101. Accordingly, each of the elements of § 546(g) is satisfied. Claims Three and Four of the Trustee's Complaint therefore fail as a matter of law.[9]

---

[9] Further, with respect to the Trustee's purported fraudulent conveyance claim, it is well-established under New York law that "a cause of action to recover damages for fraud may not be maintained when the only fraud charged relates to a breach of contract." *Alamo Contract Builders, Inc. v. CTF Hotel Co.*, 242 A.D.2d 643, 644, 663 N.Y.S.2d 42, 43 (2d Dep't 1997) (citations omitted). Here, as described above, the fraudulent conveyance claim (and each of the other claims asserted by the Trustee) is a dressed up breach of contract claim arising solely under the Agreement but improperly brought here as a so-called bankruptcy claim in order to avoid the Forum Clause. Indeed, the Trustee's fraudulent conveyance claim alleges only that AFX breached the Agreement by improperly making the Alleged Withdrawals; this alone does not create an independent claim under the Bankruptcy Code. *See Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("In other words, 'simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making,

27

### C. The Preference Claim Should Be Dismissed Because a Recoupment Cannot Be a Preference

The Trustee's preference claim (Claim Three) also fails because a recoupment cannot be a preference. The Trustee claims that the funds AFX recouped constitute a preference because AFX recouped the funds within 90 days of the petition date. However, recouping funds under a contract does not constitute a preference under bankruptcy law. "Recoupment . . . . is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim . . . ." *In re Yonkers Hamilton Sanitarium, Inc.* 22 B.R. 427, 432 (Bankr. S.D.N.Y. 1982) (citation omitted). "The only real requirement regarding recoupment is that a sum can be reduced only by matters or claims arising out of the same transaction as the original sum." *Id.* at 433 (citations omitted); *Snodgrass v. Dep't of Veterans Affairs*, 244 B.R. 353 (W.D. Va. 2000) (exercising right to recoupment within preference period does not constitute a preferential transfer); *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (M.D. Tenn. 1981) (holding deductions from debtor's royalty payments due to prior advances  constituted an allowable recoupment under the Bankruptcy Act).

Here, AFX recouped funds owed under the same contract under which it allegedly owed money to the Debtor. While the Trustee disputes AFX's contractual right to recoup funds, she cannot pursue a preference claim against AFX because a recoupment does not constitute a preference under well-established law. The Trustee's preference claim therefore fails as a matter of law for this reason, as well.

---

to perform its obligations thereunder, is insufficient to state an independent tort claim.'"). For this additional reason, the Trustee's purported fraudulent conveyance claim fails to state a claim and should be dismissed.

**IV.    Capital Corp. Is Not a Party to the Subject Transactions in the Complaint and Lacks Capacity to Be Sued**

As the undisputed facts establish, Capital Corp. is not a party to the Agreement and does not otherwise have any liability under the Agreement for the Alleged Withdrawals or Alleged Miscalculation Amount – the sole recoveries sought by the Trustee through the Complaint.  Pers. Dec. ¶ 12; Compl. ¶¶ 82, 88, 99, 106 and 112.  Indeed, it is further undisputed that Capital Corp. was formed after the Agreement was entered and was dissolved nearly seven months before this action was filed.

It is well-established that where an entity has been dissolved, its capacity to be sued is determined by where the entity was organized. *See McCagg v. Schulte Roth & Zabel LLP,* 74 A.D.3d 620, 626-27 (1st Dep't 2010).  N.Y. CLS Bus. Corp. § 1006(a)(4) only allows a dissolved corporation to sue or be sued while it is winding  up the affairs of the corporation.  *See 41 E. 1st St. Rehab Corp. v. Lopez,* 26 Misc. 3d 990, 995 (N.Y. Civ., New York County 2009) (noting lawsuit must be related to winding up).  Here, Capital Corp. is no longer winding up; it filed a Certificate of Dissolution with the New York Department of State in September, 2017 and closed its accounts.  Pers. Dec. ¶ 16.  If a company no longer has assets and is no longer carrying on business, it is wound up.  *See 172 E. 122 St. Tenants Ass'n v. Schwarz*, 73 N.Y.2d 340 (1989) (winding up includes "the performance of acts directed toward the liquidation of the corporation").

Accordingly, Capital Corp. has absolutely no connection to the subject transactions or liability for the asserted causes of action, and in any case, is a dissolved entity that lacks capacity

to be sued.  Therefore each claim alleged against Capital Corp. should be dismissed in its entirety.[10]

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss this action in its entirety against all Defendants.

Dated:  June 15, 2018
       New York, New York

**FOLEY & LARDNER LLP**

By: /s/  *Douglas E. Spelfogel*
Douglas E. Spelfogel
Derek L. Wright
90 Park Avenue
New York, New York 10016-1314
Telephone:  (212) 682.7474
Facsimile:  (212) 687.2329

and

Geoffrey S. Goodman
321 North Clark Street
Chicago, Illinois 60610
Telephone:  (312) 832.4500
Facsimile:  (312) 832.4700

*Attorneys for Defendants*

---

[10]  While not alleged, it appears that the Trustee names Capital Corp. as a defendant for the sole purpose of manufacturing jurisdiction over AFX in New York.  However, Capital Corp. was not a subsidiary of AFX where AFX had no ownership interest in Capital Corp.  Pers. Dec. ¶ 15.  Moreover, even assuming, *arguendo*, that Capital Corp. was a subsidiary of AFX (which it is not), that would not subject AFX to general jurisdiction in this Court.  In *Daimler*, the Supreme Court held that even if all of the subsidiary's contacts with the State "are imputable to Daimler, there still would be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts hardly render it at home there." 134 S.Ct. at 760.  Further, while Capital Corp. is not a subsidiary of AFX, there is no basis for a finding that Capital Corp. is AFX's agent for jurisdictional purposes (which also is not alleged).  *See, e.g., Porter v. LSB Indus., Inc.,* 192 A.D.2d 205, 213 (4th Dep't 1993) (noting that "[a] finding of agency for jurisdictional purposes will not be inferred from the mere existence of a parent-subsidiary relationship.").  Indeed, the Supreme Court in *Daimler* cast substantial doubt on the viability of "agency" jurisdiction as a basis for general jurisdiction. 134 S.Ct. at 759 n.13.  In any case, to the extent the Trustee asserts jurisdiction over AFX based on any purported relationship with Capital Corp., AFX reserves all rights with respect to the same.

4830-5158-2823.15