UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

GALLANT CAPITAL MARKETS, LTD.

        Debtor.

Chapter 11

Case No. 17-41814-ESS

ESTHER DUVAL, AS CHAPTER 11 TRUSTEE OF
GALLANT CAPITAL MARKETS, LTD., ESTATE,

        Plaintiff,

        -against-

AFX CAPITAL MARKETS LTD., AFX CAPITAL
U.S. CORP. and STO SUPER TRADING ONLINE,

        Defendants.

Adv. Pro. No. 18-01038-ESS

## TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**LaMONICA HERBST & MANISCALCO, LLP**
*Attorneys for Plaintiff Esther DuVal, Chapter 11 Trustee of the Estate of Gallant Capital Markets Ltd.*

3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: 516.826.6500

Joseph S. Maniscalco, Esq.
Jacqulyn S. Loftin, Esq.

## Table of Contents

Preliminary Statement ..................................................................................................... 1

I.    **PERSONAL JURISDICTION EXISTS OVER DEFENDANTS** ................................ 8

    A.    Sufficient Minimum Contacts Exist ......................................................... 9

    B.    The Exercise of Jurisdiction Over Defendants Is Reasonable ............................ 16

II.    **DEFENDANTS FAILED TO MEET THEIR BURDEN FOR DISMISSAL BASED ON FORUM NON CONVENIENS GROUNDS** ............................................. 18

III.    **THE COMPLAINT PLAUSIBLY STATES THE CLAIMS FOR RELIEF** ............ 21

    A.    Defendants Fail To Assert a Basis for the Dismissal of the Turnover, Declaratory Relief and Violation Stay Claims ...................................................... 22

        i.    The Turnover Claim .................................................................. 23

        ii.    Declaratory Relief ..................................................................... 25

        iii.    The Stay Violation Claim .......................................................... 26

    B.    Bankruptcy Code § 546(g) Is Inapplicable to the Trustee's Preference and Fraudulent Transfer Claims ................................................................. 27

    C.    Defendants Are Not Entitled to the Dismissal of the Preference Claim Predicated on the Affirmative Defense of Recoupment ...................................... 28

Conclusion ……………………………………………………………………………………31

**Table of Authorities**

**Cases**

2010 WL 4366183 (E.D.N.Y.2010) ......................................................... 26

Am. Express Travel Related Servs. Co. v. Henein,
    257 B.R. 702 (E.D.N.Y. 2001) ...................................................... 6-7, 21

Amron v. Morgan Stanley Inv. Advisors, Inc.,
    464 F.3d 338 (2d Cir. 2006) ............................................................ 7

Angueira v. Ortega T.
    (In re Ortega T.), 562 B.R. 538 (Bankr.S.D.Fla. 2016) ...................... 24

Anyanwu v. Columbia Broad Sys., Inc.,
    887 F. Supp. 690 (S.D.N.Y. 1995) ................................................... 6

AP Indus., Inc. v. SN Phelps & Co.
    (In re AP Indus., Inc.), 117 B.R. 789 (Bankr. S.D.N.Y.1990) ............ 23

Arcadia Aviation PHF, LLC v. Aero-Smith, Inc.,
    2013 U.S. Dist. LEXIS 99326, *7 (S.D.N.Y. July 16, 2013) ............ 15

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) .................................................................. 7, 22

Bickerton v. Bozel S.A.
    (In re Bozel S.A.), 434 B.R. 86 (Bankr. S.D.N.Y. 2010) ............... 8-9, 16

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ..................................................................... 15

Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC,
    155 F.3d 603 (2d Cir. 1998) .......................................................... 20

Chew v. Dietrich,
    143 F.3d 24 (2d Cir. 1998) ............................................................ 13

Corp. Creditor Trust v. SSTS Am. Corp., No. 02 Civ. 9629,
    2003 U.S. Dist. LEXIS 9802 (S.D.N.Y. June 9, 2003) ..................... 30

Daimler AG v. Bauman,
    134 S. Ct. 746 (2014) ........................................................ 9, 10-11, 11

Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,
    297 F.3d 1343 (Fed. Cir. 2002) ..................................................... 15

Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru,
    665 F.3d 384 (2d Cir. 2011) .......................................................... 19

Folger Adam Sec, Inc.,
    209 F.3d 252 (3d Circ. 2000) ........................................................ 30

Geron v. Peebler
(In re Pali Holdings, Inc.), 488 B.R. 841, Fn. (Bankr.S.D.N.Y. 2013) ............................... 24

Global Cable, Inc. v. Adelphia Communications Corp.
(In re Adelphia Communications Corp.), 2006 WL 1559437 (S.D.N.Y. 2006) ................................ 29

Gregory v. Daly,
243 F.3d 687 (2d Cir. 2001) ............................................................................................ 8, 22

Helicopteros Nacionales de Colom., S.A. v. Hall,
466 U.S. 408 (1984) ....................................................................................................... 9, 10

II SCA,
555 B.R. 323 (Bankr. S.D.N.Y. 2016) ............................................................................... 19

in Deutsche Bank Securities, Inc. v. Montana Board of Investments
Deutsche Bank Securities, Inc. v. Montana Board of Investments, 7 N.Y. 3d 65 (2006) .................. 13

in In re Brizinova
In re Brizinova, 554 B.R. 64 (Bankr.E.D.N.Y. 2016) .......................................................... 23

In re Amaranth Natural Gas Commodities Litig.,
587 F. Supp. 2d 513 (S.D.N.Y. 2008) ............................................................................... 9

In re Ebadi,
448 B.R. 308 (Bankr.E.D.N.Y.2011) .................................................................................. 26

In re J.T. Moran Fin. Corp.,
124 B.R. 931 (Bankr.S.D.N.Y. 1991) ................................................................................. 24

In re Kosadnar,
157 F.3d 1011 (5th Cir 1998) ........................................................................................... 29

In re Terrorist Attacks on Sept. 11, 2001,
714 F.3d 659 (2d Cir. 2013) ........................................................................................... 9, 18

In re Yonkers Hamilton Sanitarium, Inc.,
22 B.R. 427 (Bankr. S.D.N.Y. 1982) .................................................................................. 30

In Republic of Argentina v. Weltover, Inc.
Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992) ........................................... 13

Inc. v. Am. Buddha,
609 F .3d 30 (2d Cir. 2010) ............................................................................................. 8

Interbulk, Ltd. v. Louis Dreyfus Corp.
(In re Interbulk, Ltd.), 240 B.R. 195, n.7 (Bankr. S.D.N.Y. 1999) ..................................... 27

Iragorri v. United Techs. Corp.,
274 F.3d 65 (2d Cir. 2001) .............................................................................................. 19

Jazini v. Nissan Motor Co.,
148 F.3d 181 (2d Cir. 1998) ............................................................................................ 8

Judge Gonzalez in Official Committee of Unsecured Creditors of Enron Corp. v. Amanda K. Martin
  (In re Enron Creditors Recovery Corp), 376 B.R. 442 (2007) ........................................................... 29

Kirschenbaum v. Federal Ins. Co.
  (In re EMS Fin. Servs., LLC), 2013 Bankr. LEXIS 139 WL 64755 ................................................... 24

Knopfler v. Schraiber
  (In re Schraiber), 97 B.R. 937 (Bankr.N.D.Ill. 1989) ......................................................... 25

Koken v. Reliance Grp. Holdings, Inc.
  (In re Reliance Grp. Holdings, Inc.), 273 B.R. 374 (Bankr.E.D.Pa. 2002) ........................................ 25

Kramer v. Mahia
  (In re Khan), No. 10-46901-ESS, 2014 WL 4956676 (Bankr.E.D.N.Y. Sept. 30, 2014) ................... 23

Lawson v. Ford Motor Co.
  (In re Roblin Indus., Inc.), 78 F.3d 30 (2d Cir. 1996) ......................................................... 29

Marine Midland Bank, NA. v. Miller,
  664 F.2d 899 (2d Cir. 1981) ...................................................................................... 8

Matera v. Native Eyewear, Inc.,
  355 F. Supp. 2d 680 (E.D.N.Y. 2005) ................................................................................ 15

Maxwell Commc'n Corp. PLC by Homan v. Societe Generale
  (In re Maxwell Commc'n Corp. PLC), 93 F.3d 1036 (2d Cir. 1996) ....................................... 7, 21-22

Monegasque De Reassurances v. Nak Naftogaz of Ukraine,
  311 F.3d (2d Cir. 2002) ............................................................................................ 19

New York State Elec. & Gas Corp. v. McMahon
  (In re McMahon), 129 F.3d 93 (2d Cir.1997) ..................................................................... 29

Paulemon v. Tobin,
  30 F.3d 307 (2d Cir. 1994) .............................................................................. 6, 7, 21, 22

Paycom Billing Servs. v. MasterCard Int'l, Inc.
  accord , 467 F.3d 283 (2d Cir. 2006) ............................................................................... 7

Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc.
  (In re Cont'l Airlines, Inc.), 138 B.R. 442 (D. Del. 1992) ................................................. 25

Peregrine Myanmar Ltd. v. Segal,
  89 F.3d 41 (2d Cir. 1996) .......................................................................................... 18

Picard v. Cohmad Securities Corp.,
  418 B.R. 75 (Bankr. S.D.N.Y. 2009) ............................................................................... 11

Picard v. Magnify Inc.
  (In re Bernard L. Madoff Inv. Sec. LLC), 2012 Bankr. LEXIS 2748, *20 (Bankr. S.D.N.Y. June 15,
  2012) ............................................................................................................... 18

Picard v. Maxam Absolute Return Fund, L.P.
  (In re Bernard L. Madoff Inc. Sec. LLC), 460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................ 15, 17

Picard v. The Estate (Succession) of Doris Igoin
     (In re Bernard L. Madoff Investment Securities LLC), 525 B.R. 871 (Bankr. S.D.N.Y. 2015) ...  14, 15

Pryor v. N.Y. State Dep't of Taxation and Fin.
     (In re Waring), 491 B.R. 324 (Bankr. E.D.N.Y. 2013) ....................................................  29

Ramco-Gershenson Properties LP v. Pattyworld Inc.,
     2014 U.S. Dist. LEXIS 90750, *27 ............................................................................  15

Rexnord Holdings, Inc. v. Bidermann,
     21 F.3d 522 (2d Cir.1994) .........................................................................................  26

Rogin v. New York Times Co.,
     923 F.2d 995 (2d. Cir. 1991) ......................................................................................  6

Salahuddin v. Cuomo,
     861 F.2d 40 (2d Cir. 1988) .........................................................................................  6

Schroeder v. New Century Holdings, Inc.
     (In re New Century Holdings, Inc.), 387 B.R. 95 (Bankr.D.Del. 2008) ............................  25

Schutte Bagclosures Inc. v. Kwik Lok Corp.,
     48 F. Supp. 3d 675 (S.D.N.Y. 2014) ..........................................................................  16

Scottish Air v. British Coledonian Group,
     81 F.3d 1224 (2d Cir. 1996) .......................................................................................  20

Simmons v. Abruzzo,
     49 F.3d 83 (2d Cir. 1995) ......................................................................................  7, 22

Snodgrass v. Department of Veterans Affairs
     (In re Snodgrass), 244 B.R. 353 ...............................................................................  31

Stratagem Dev. Corp. v. Heron Int'l N.V.,
     153 F.R.D. 535 (S.D.N.Y. 1994) ...............................................................................  18

Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.,
     421 F. Supp. 2d 741 (S.D.N.Y. 2006) .....................................................................  19, 20

Velo Holdings Inc. v. Paymentech, LLC
     (In re Velo Holdings Inc.), 475 B.R. 367 (Bankr.S.D.N.Y. 2012) ...................................  25

Waldschmidt v. CBS, Inc.,
     14 B.R. 309 (M.D.Tenn. 1981) ..................................................................................  31

Wiwa v. Royal Dutch Petroleum Co.,
     226 F.3d 88 (2d Cir. 2000) ........................................................................................  18

World-Wide Volkswagen Corp. v. Woodson,
     444 U.S. 286 (1980) ..................................................................................................  16

**Statutes**

11 U.S.C. § 105 ............................................................................................................................ 5

11 U.S.C. § 362 ...................................................................................................................... 22, 26

11 U.S.C. § 363 ........................................................................................................................... 23

11 U.S.C. § 522 ........................................................................................................................... 23

11 U.S.C. § 541 ...................................................................................................................... 5, 23

11 U.S.C. § 542 ...................................................................................................................... 5, 23

11 U.S.C. § 546 .................................................................................................................... 27, 28

11 U.S.C. § 547 ...................................................................................................................... 5, 29

11 U.S.C. § 548 ............................................................................................................................. 5

11 U.S.C. § 1108 .......................................................................................................................... 4

11 U.S.C. § 1107 .......................................................................................................................... 3

28 U.S.C. § 1409 .......................................................................................................................... 3

28 U.S.C. §§ 1334 ........................................................................................................................ 3

NY CPLR § 302 ..................................................................................................................... 13, 14

**Other**

Fed. R. Bankr. P. 7001 ................................................................................................................. 5

Fed. R. Bankr. P. 7004 ................................................................................................................. 9

Fed. R. Civ. P. 8 ........................................................................................................................... 6

Fed. R. Civ. P. 12 .............................................................................................................. 6, 7, 8, 21

Fifth Amendment of the United States Constitution ............................................................ 9, 16

Plaintiff, Esther DuVal, in her capacity as Chapter 11 Trustee (the "Trustee" or "Plaintiff") of the jointly-administered estates of Avenica, Inc. ("Avenica") and Gallant Capital Markets, Ltd. ("Gallant", along with Avenica are collectively referred to as the "Debtors"), on behalf of the Gallant estate, respectfully submits this Memorandum in Opposition (the "Opposition")[1] to the Motion to Dismiss the Complaint (the "Motion") filed by AFX Capital Markets Ltd. ("AFX"), STO Super Trading Online ("STO") and AFX Capital U.S. Corp. ("AFX Capital", together with AFX and STO are collectively referred to as "Defendants" or "Defendants")

## PRELIMINARY STATEMENT

The Motion should be denied in its entirety. The Motion is the Defendants' latest delay tactic to keep improper withdrawals of Gallant Funds—the estate's assets—which continues to cause harm to the Gallant estate and all parties-in-interest in this bankruptcy case.  These claims are born under the Bankruptcy Code and entails core issue claims *i.e.* turnover of property of the Gallant estate, Chapter 5 avoidance claims and a violation of the automatic stay. Yet, Defendants seek to avoid this Court's jurisdiction and the consequences of their conduct by attempting to recast this dispute as a contract claims that should be adjudicated abroad. That argument is a red herring in an attempt to avoid the substance of the Trustee's claims.

Throughout 2015 and 2016, Gallant deposited approximately $2.35 million (for its benefit) into a Gallant account maintained at AFX. Within the two-week period prior to Gallant's commencement of its bankruptcy case, there was a balance of approximately $2.4 million in the Gallant account at AFX.  Around that time, Gallant made multiple demands upon Defendants for the turnover of Gallant's funds—all of which were disregarded. Interestingly, at that time, Defendants did not assert any right to a majority of those funds, but rather only an objection to

---

[1]    Capitalized terms not otherwise defined herein shall have the definition ascribed to them in the Complaint.

where Gallant asked for its funds to be sent. Notwithstanding, Defendants withdrew the Remaining Balance, without authorization and without basis, on the Filing Date—in violation of the automatic stay. This case involves core issues whereby the Trustee is seeking a turnover of Gallant property, avoidance and recovery of assets of the Gallant estate, and enforcement of the automatic stay. Accordingly, the Bankruptcy Court is the proper, and most effective, forum for such claims to be adjudicated.

In an effort to play a game of catch me if you can, Defendants allege that the Trustee does not meet the requirements of minimum contacts to retain specific jurisdiction because Defendants have no contact with New York. This is simply untrue. At all times relevant, it was public knowledge that Defendants, including AFX, had an office and were doing business in New York. STO's website states that STO is a "division of AFX Group established in 2009 and . . . is the trading name of AFX Capital Markets Ltd. and AFX Markets Ltd." The STO website also references "offices in many of the world's major financial centres [including] New York".  In fact, on October 29, 2015, an article was released announcing the opening of the AFX Capital's NYC Office and the hiring of Thomas O'Reilly as Senior VP of Sales with a quote from the CEO exclaiming the company's excitement "to have a footprint in the United States". Thomas O'Reilly confirmed this in a declaration whereby he swore, under the penalty of perjury, that while employed by AFX Group and AFX Capital he worked out of the New York office located at 370 Lexington Avenue, Office 2001, New York, New York.

It is inconceivable that in light of this public information, Mario Persichino, Defendants' authorized representative, declared, under the penalty of perjury, that "AFX does not have an office or any employees in the United States and no AFX personnel visit New York or the United States to discuss the same." See Motion, Exhibit "B", Mario Persichino Declaration, p. 4, ¶ 17.  This is

also contradicted by the declaration of Thomas O'Reilly whereby he stated he had met with Mr. Persichino multiple times during Mr. Perischino's visits to New York.

Defendants allege that the Complaint asserts no plausible claims for relief almost as an afterthought. Defendants spend the first 22 pages repeatedly asserting lack of personal jurisdiction and *forum non conveniens*, and only attempt to attack the basis for relief on a substantive level in the last 7 pages; yet fail to state any predicate for their allegations. Defendants are hiding behind an alleged foreign defendant defense while lacking any substantive grounds to dismiss Plaintiff's plausible entitlement for relief.  In reality, Defendants have wrongfully, and without justification, taken funds from Gallant that belong to the Gallant bankruptcy estate, and Plaintiff is appropriately employing the jurisdiction of the Bankruptcy Court to recover them.

For the reasons set forth herein, the Motion should be denied in its entirety.

## STATEMENT OF JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). Venue of this proceeding is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1409(a).

## RELEVANT PROCEDURAL BACKGROUND

On April 14, 2017 (the "Filing Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court, Eastern District of New York (the "Court" or "Bankruptcy Court").

The Debtors were operating their businesses and managing their affairs as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

By Order dated May 30, 2017, Esther DuVal, CPA, was appointed as the Chapter 11 Trustee of the Debtors' cases.

By Amended Order entered on August 29, 2017, the Debtors' cases are being jointly administered.

Pursuant to Bankruptcy Code § 1108, the Trustee is authorized to operate the Debtors' businesses.

## RELEVANT FACTUAL BACKGROUND

On or about November 13, 2014, Gallant and AFX entered into a client account agreement entitled "Terms and Conditions for Eligible Counterparties and Professional Clients" (the "Client Agreement"). See Complaint, ¶ 33.

On March 20, 2015, AFX and Gallant amended the Client Agreement under the terms of the AFX capital risk share agreement (the "Capital Risk Share Agreement"), in which the parties agreed to enter into a revenue sharing arrangement. See Complaint, ¶ 34.

In or about April, 2015 through December 20, 2016, in accordance with the Client Agreement, Gallant deposited an aggregate amount of $2,349,896.12 into the Gallant Account, for its benefit, at AFX. See Complaint, ¶ 50.

According to AFX's records, on April 6, 2017 (8 days from the Filing Date), AFX made four withdrawals (the "Withdrawals") from the Gallant Account as follows:

i)  $114,554.20, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for January, 2017;

ii)  $530,442.80, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for February, 2017;

iii)  $381,745.20, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for March, 2017; and

iv)  $2,024.20, purportedly representing 50% of Gallant's positive profit/loss (negative AFX revenue calculation) for April, 2017.

The Withdrawals, totaling $1,028,766.40, were not authorized by Gallant and did not correlate with the timing of transactions contemplated under the express terms of the Capital Risk Share Agreement.   Per Defendants, the Withdrawals purportedly represented four months of positive profit/loss owed by Gallant to AFX under the Capital Risk Share Agreement. See Complaint, ¶¶ 62 and 63.

On April 14, 2017, the Filing Date, according to the STO AFX Daily Confirmation Report, Defendants, again without authorization, withdrew the remaining balance of Gallant's funds from the Gallant Account in the amount of $1,443,132.92 (the "Remaining Balance" along with the Withdrawals are collectively defined as the "Gallant Funds"), leaving a balance of $0.00. See Complaint, ¶ 69.

To date, Defendants have failed to provide facts, detail or any calculable basis justifying their swiping of all funds in Gallant's account maintained at AFX.  On April 2, 2018, the Trustee, on behalf of the Gallant estate, commenced this adversary proceeding (the "Adversary Proceeding") by filing the complaint (the "Complaint") to recover sums due Gallant by Defendants or to avoid and recover transfers made, voluntarily or involuntarily, by Gallant to Defendants or funds improperly withheld by Defendants and which are due to Gallant under Bankruptcy Code §§ 105(a), 362, 502, 541, 542, 547, 548, 550 and 551 and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Complaint also seeks to hold Defendants liable for, among other things, failure to turnover property of Gallant's estate and a violation of the automatic stay.

## LEGAL STANDARD AND ARGUMENT

It is axiomatic that dismissing a plaintiff's complaint at the pleading stage prior to discovery is a drastic remedy that must be applied with substantial caution. The burden falls

squarely on the moving party to establish that no set of facts can be proven which would warrant relief on the claims stated. See Rogin v. New York Times Co., 923 F.2d 995, 999 (2d. Cir. 1991) cert denied, 502 U.S. 821, 112 S. Ct. 81 (1993); see also Anyanwu v. Columbia Broad Sys., Inc., 887 F. Supp. 690, 692 (S.D.N.Y. 1995) (observing that Rule 12(b)(6) imposes substantial proof burdens upon the movant).

Rule 8 provides, in relevant part, that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In addition, Rule 8(e)(1) provides that "each averment of a pleading shall be simple, concise, and direct." Id. The Court of Appeals for the Second Circuit has observed that:

> The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."

Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1281, at 365 [1969]) (additional internal citations omitted).

Rule 12(b)(6), made applicable to this Adversary Proceeding, by Bankruptcy Rule 7012, authorizes a court to dismiss the Complaint for "failure to state a claim for which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must presume all factual allegations in the complaint to be true and view them in light most favorable to the plaintiff. See Paulemon v. Tobin, 30 F.3d 307, 309 (2d Cir. 1994). "In reviewing pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court 'must limit itself to facts stated in the complaint as exhibits or incorporated in the complaint by reference'." Am. Express Travel Related Servs. Co. v. Henein,

257 B.R. 702, 705 (E.D.N.Y. 2001) (citing <u>Newman & Schwartz v. Asplundh Tree Expert Co., Inc.</u>, 102 F.3d 660, 662 (2d Cir. 1996); <u>Kopec v. Coughlin</u>, 922 F.2d 152, 155-56 (2d Cir. 1991)).

The dismissal is warranted where it appears beyond doubt that the plaintiff can prove no sets of facts in support of his claim which would entitle him to relief. <u>See Maxwell Commc'n Corp. PLC by Homan v. Societe Generale (In re Maxwell Commc'n Corp. PLC)</u>, 93 F.3d 1036, 1044 (2d Cir. 1996); <u>Paulemon</u>, 30 F.3d at 309. "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86-87 (2d Cir. 1995) (quoting <u>Salahuddin</u>, 861 F.2d at 42).

To defeat a motion to dismiss under Rule 12(b)(6), a complaint must set forth a "plausible entitlement to relief". <u>See Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007). Merely "conceivable" claims do not suffice. <u>Id</u>. at 570. Indeed, a complaint should be dismissed under Rule 12(b)(6) where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible[.]" <u>Id</u>. The <u>Twombly</u> Court expressed that factual allegations must be enough to raise a right to relief above the speculative level. <u>Id</u>. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Id</u>. (internal quotation and alteration marks omitted); <u>accord Paycom Billing Servs. v. MasterCard Int'l, Inc.</u>, 467 F.3d 283, 289 (2d Cir. 2006) (stating "we do not permit conclusory statements to substitute for minimally sufficient factual allegations" (quotation and citation omitted)). Indeed, it is well-established that "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." <u>Amron v. Morgan Stanley Inv. Advisors, Inc.</u>, 464 F.3d 338, 344 (2d Cir. 2006) (citation omitted).

In assessing the adequacy of a complaint, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (citations omitted). The Court's consideration is limited to the four corners of the complaint, and documents attached to the complaint as exhibits or incorporated in it by reference. See id.

Here, viewing the Complaint in light of this standard, it is apparent that it sufficiently sets forth a plausible entitlement to relief with respect to each of the claims for relief asserted therein. Accordingly, the Motion should be denied in its entirety.

## ARGUMENTS

## I.    PERSONAL JURISDICTION EXISTS OVER DEFENDANTS

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff needs only make a *prima facie* showing "through its own affidavits and supporting materials" that personal jurisdiction exists. See Marine Midland Bank, NA. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Where no discovery has taken place, as is the case here, a plaintiff can rely on "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." Penguin Group (USA) Inc. v. Am. Buddha, 609 F .3d 30, 35 (2d Cir. 2010); Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998).

Because valid service of process under Rule 7004(d) "is sufficient to establish personal jurisdiction, state long-arm statutes are inapplicable, and the only remaining inquiry for a bankruptcy court is whether exercising personal jurisdiction over the defendant would be consistent with the Due Process Clause of the Fifth Amendment." Bickerton v. Bozel S.A. (In re

Bozel S.A.), 434 B.R. 86, 97 (Bankr. S.D.N.Y. 2010) (citing In re Enron Corp., 316 B.R. 434, 440, 444-45 (Bankr. S.D.N.Y. 2004)); see also FED. R. BANKR. P. 7004(f). Where, as here, foreign defendants have not consented to jurisdiction by filing a proof of claim in the bankruptcy case, "[t]o establish personal jurisdiction over a defendant, due process [under the Fifth Amendment of the United States Constitution] requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The "forum state" is the United States as a whole, and "a court should consider the defendant's contacts throughout the United States." In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 527 (S.D.N.Y. 2008).

A. **Sufficient Minimum Contacts Exist**

In assessing the sufficiency of a defendant's "minimum" contacts, courts distinguish between "general" and "specific" personal jurisdiction. In re Terrorist Attacks, 714 F. 3d at 673. General, or "all-purpose," jurisdiction over a foreign defendant allows a court to hear any and all claims against such defendant. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (citations omitted). Specific jurisdiction over a foreign defendant allows a court to hear claims that "aris[e] out of or relate[] to the defendant's contacts with the forum . . . ." Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984) (citation omitted). Here, the Trustee alleges that specific jurisdiction exists over all Defendants.

Here, Defendants' contacts in New York are substantial despite the fact that Defendants assert they had none. See Motion, p. 13; see also, Motion, Exhibit "B", Mario Perischino Declaration. Indeed, it was a strategic decision by Defendants to expand its business relationships

in the U.S., and specifically in New York, by opening a New York office in 2015, which they advertised in trade publications.

On Thursday, October 29, 2015, Financial Magnates published an article with the headline "AFX Capital Taps Tom O'Reilly as Senior VP Sales, Opens NYC Office". A copy of the article is annexed hereto as <u>Exhibit "A"</u>. In the article, AFX Capital announced the opening of a new office "in the heart of the finance world, Downtown New York City" acknowledging AFX Capital's "footprint in the United States". <u>See</u> Exhibit "A". Equally as important, the CEO of AFX Capital, Manuela Mazzaccco, was quoted saying:

> [t]o keep growing as a company, we believe that it is important to establish an office in New York. The opening represents a critical milestone in the company's development, as an established financial broker and having Tom O'Reilly on board as Senior Vice President of Sales, reinforces the prestige of our new office.

<u>Id</u>.

As of December 25, 2016, the STO (the tradename of AFX) website showed an office located at 370 Lexington Avenue, New York, New York. A copy of the STO Office Location webpage is annexed hereto as <u>Exhibit "B"</u>. Moreover, as of the date of this Opposition, the STO webpage titled "Who We Are" still states that STO is a "**trade name of AFX Capital Markets Ltd. and AFX Markets Ltd. with offices in** many of the world's major financial centres— London, Milan, Limassol, Shanghai and **New York**" (**emphasis added**). A copy of the STO "Who We Are" webpage is annexed hereto as <u>Exhibit "C"</u>. Indeed, Defendants made a strategic decision to avail itself to the United States, particularly New York, to expand its company. Therefore, it is reasonable to conclude that for the privilege of doing business in this forum, it submitted itself to this jurisdiction.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." <u>Walden</u>

v. Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 775 (1984)) (quotation marks omitted). The defendant's suit-related conduct with the forum must form the basis for specific jurisdiction. <u>See</u> <u>id.</u> at 1121; <u>Picard v. Cohmad Securities Corp.</u>, 418 B.R. 75, 80 (Bankr. S.D.N.Y. 2009) ("Specific personal jurisdiction exists where a foreign defendant 'purposefully direct[s] his activities at residents of the forum,' and the underlying cause of action 'arise[s] out of or relate[s] to those activities'." (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)). "Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction [is asserted]—minimum contacts [necessary to support such jurisdiction] **exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being hauled into court there**." (**emphasis added**) <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 170 (2d Cir. 2013) (quoting <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 305 F.3d 120, 127 (2d Cir. 2002)).

The Complaint also alleges communications with Thomas O'Reilly ("<u>Reilly</u>"), the Senior Vice President of Sales, whereby demands were made for the turnover of Gallant Funds. <u>See</u> Complaint ¶ 67. The Trustee also obtained a declaration from Thomas O'Reilly (the "<u>Declaration</u>") that further establishes Defendants' minimum contacts with New York. A copy of the declaration in annexed hereto as <u>Exhibit "D"</u>. O'Reilly declared, under the penalty of perjury:

i. I was the Senior Vice President of Sales ("<u>SVPS</u>") for AFX Capital U.S. Corp and the AFX Group (collectively, "<u>AFX</u>") from September, 2015 through April, 2017.

ii. During that time, I was based in New York and occupied an AFX Capital office at 370 Lexington Avenue, Office 2001, New York, New York.

iii. On or about the spring of 2015, I was approached by Mario Persichino, who I understand to be the owner and/or shareholder of AFX, regarding working for AFX in a sales capacity. I had met Mario Persichino previously and had come across him several times

through the years at trade shows or other events involving the foreign currency exchange business. Mario Persichino and I met in New York shortly prior to me joining AFX to discuss my potential employment with AFX in New York.

iv.     After joining AFX, I met with Mario Persichino upon his visits to New York, which occurred approximately three (3) times per year.

v.      While employed by AFX in New York, I also met with Manuela Mazzacco, AFX's Chief Executive Officer, when she came to New York.

vi.     While my role as SVPS for AFX was primarily focused on sales, I did take on other responsibilities as AFX's New York based employee, including, but not limited to (i) opening an AFX U.S. bank account at Bank of America; (ii) communicating with ADP for AFX's U.S. payroll, workman's compensation and unemployment insurance needs; and (iii) issuing payments from AFX's U.S. bank account as necessary for U.S. business operations.

vii.    If there were insufficient funds in AFX's Bank of America account to cover U.S. business operations, I would contact AFX's employees overseas and they would wire the requisite funds from their overseas accounts to AFX's U.S. bank account at Bank of America.

viii.   Upon starting my work with AFX, I managed AFX's relationship with Gallant since its Chief Executive Officer, Salvatore Buccellato ("Mr. Buccellato"), and personnel were also located in New York. My role included meeting with Mr. Buccellato, typically over meal.

ix.     On or about early spring 2017, I became aware that Gallant was seeking, and may have had a liquidity necessity to, withdraw funds from its AFX account. I also became aware that AFX was not transferring the funds requested by Gallant. Upon becoming aware of this situation, I, as AFX's representative, encouraged Gallant's and AFX's operations personnel and executives to pick up the phone and have a direct dialogue regarding any disagreements with respect to the amount due Gallant. There seemed to have been a significant difference of opinion between AFX and Gallant at that time as to the amount owed by AFX to Gallant, which I recall that difference being approximately a $1,000,000 difference.

See Exhibit "D".

Defendants' contacts with the United States coincide with the asserted causes of action of

failure to turnover property of the Gallant estate, avoidance and recovery of the Withdrawals and

12

the Remaining Balance, and violation of the automatic stay, as set forth in the Complaint. These claims are all core bankruptcy claims. These are not contractual breach of contract claims as Defendants allege.

The Second Circuit has adopted a flexible standard for determining whether a claim "arises from or relates to" a defendant's contacts with a forum for purposes of evaluating the existence of specific jurisdiction. Specifically, the Second Circuit has held that:

> Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.

Chew v. Dietrich, 143 F.3d 24, 29 (2d Cir. 1998) (citations omitted).

In Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 619-20 (1992), the United States Supreme Court considered whether the Republic of Argentina maintained minimum contacts with the United States. The Supreme Court concluded that the exercise of jurisdiction was appropriate and Argentina possessed the requisite minimum contacts where Argentina's sole contacts were that Argentina issued debt instruments denominated in the United States dollars that were payable in New York and appointed a financial agent in New York. Id.

Further, in Deutsche Bank Securities, Inc. v. Montana Board of Investments, 7 N.Y. 3d 65 (2006), in determining that both the provisions of the New York long arm statute (i.e., NY CPLR § 302) and constitutional due process were satisfied, the New York Court of Appeals held that New York state courts could exercise personal jurisdiction over the defendant. The Court of Appeals reasoned as follows:

> [Defendant] is a sophisticated institutional trader that entered New York to transact business here by knowingly initiating and pursuing

13

> a negotiation with a DBSI employee in New York [exclusively through electronic means] that culminated in the sale of $ 15 million in bonds. Negotiating substantial transactions such as this one was a major aspect of MBOI's mission—"part of its principal reason for being". Further, over the preceding 13 months, MBOI had engaged in approximately eight other bond transactions with DBSI's employee in New York, availing itself of the benefits of conducting business here, and thus had sufficient contacts with New York to authorize our courts to exercise jurisdiction over its person.

Id. at 71-72.

In Picard v. The Estate (Succession) of Doris Igoin (In re Bernard L. Madoff Investment Securities LLC), 525 B.R. 871, 884-85 (Bankr. S.D.N.Y. 2015), Judge Bernstein considered the following facts:

> The Defendants' motion to dismiss primarily focuses on the French connection. They point out that the *Customer Agreements* were negotiated with Madoff in France, written in French, signed in France and are governed by French law. In this regard, and unlike other BLMIS trading agreements, the *Customer Agreements* did not include a New York choice of law provision. Moreover, Laurence and Emilie never came to the United States in connection with their business with BLMIS. Finally, they argue that most of the money (and all of Emilie's withdrawals) were used to pay French taxes.

Igoin, 525 B.R. at 884. Notwithstanding the sparse contacts, Judge Bernstein held that the defendants maintained sufficient minimum contacts with the United States by holding as follows:

> Although there are obvious French connections to this case, and the Defendants frequently invoke the French *Customer Agreements*, they fail to explain their relevance to the Trustee's fraudulent transfer claims . . . That they did not travel to the United States on BLMIS business does not change the jurisdictional analysis because their conduct with respect to their BLMIS accounts caused the injury in New York. Burger King, 471 U.S. at 476 ("So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.") (citation omitted). And although the absence of a New York choice of law provision is relevant, it is not determinative.

14

Igoin, 525 B.R. at 885. Judge Lifland similarly opined "[t]he defendant's activity need not have taken place within the forum, and a single transaction with the forum will suffice." Picard v. Maxam Absolute Return Fund, L.P. (In re Bernard L. Madoff Inc. Sec. LLC), 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (citations omitted).

Moreover, the fact that the Agreements contain a choice of law clause is a red herring. Defendants argue that because the Agreements have a choice of law for Cypriot law that the Agreement and any related contract or transaction shall be governed by Cypriot law and the Court of Cypress shall have jurisdiction over any related disputes. The Southern District of New York has held that "[a] choice of law clause does not, therefore, invoke the benefits and protections of the chosen state's laws to the exclusion of all other states." Arcadia Aviation PHF, LLC v. Aero-Smith, Inc., 2013 U.S. Dist. LEXIS 99326, *7 (S.D.N.Y. July 16, 2013); Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 685 (E.D.N.Y. 2005) ("Because choice of law provisions 'have minimal jurisdictional implications,' the fact that the parties chose Pennsylvania law to govern this action is not dispositive of the issue of personal jurisdiction.") (citations omitted); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985) (stating that a choice-of-law provision "standing alone would be insufficient to confer jurisdiction."); Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1354 (Fed. Cir. 2002) ("[T]he inclusion of the arbitration and Canadian choice of law provisions fails to negate the sufficiency of [defendant's] minimum contacts."), cited with approval by Igoin, 525 B.R. at 885; Ramco-Gershenson Properties LP v. Pattyworld Inc., 2014 U.S. Dist. LEXIS 90750, *27 (D. E.D. MI. July 3, 2014) ("Defendants have not cited any precedent that compels the conclusion that because the Lease is governed by Florida law, they cannot be deemed to have purposefully availed themselves of acting in Michigan").

As established above, Defendants met the minimum contacts to New York and have the requisite minimum contacts to satisfy due process under the Fifth Amendment of the United States Constitution. Defendants' conduct, the Declaration and the news article clearly establish that Defendants availed themselves to this jurisdiction.

**B. <u>The Exercise of Jurisdiction Over Defendants Is Reasonable</u>**

Once minimum contacts are established, the next step is to demonstrate that the exercise of jurisdiction is reasonable in the circumstances. In determining the reasonableness of exercising jurisdiction over a defendant, "the defendant's contacts with the forum State must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980)).

Where constitutional minimum contacts have been established, "often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." <u>Bozel</u>, 434 B.R. at 100 (quoting <u>Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cnty.</u>, 480 U.S. 102, 14 (1987) (quotation marks omitted). The burden shifts to the defendant "to present a 'compelling case' that establishing personal jurisdiction would be unreasonable." <u>Bozel</u>, 434 B.R. at 100 (citations omitted). Here, Defendants have not sustained their burden.

"The Court must take into account five factors in this inquiry: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." <u>Schutte Bagclosures Inc. v. Kwik Lok Corp.</u>, 48 F. Supp. 3d 675, 687 (S.D.N.Y. 2014) (citations omitted).

In Picard v. Maxam Absolute Return Fund, LP (Securities Investor Protection Corp. v. Bernard L. Madoff Inc. Sec. LLC), 460 B.R. 106, 119-20 (Bankr. S.D.N.Y. 2011), the Bankruptcy Court for the Southern District of New York held that the exercise of jurisdiction would be reasonable under the circumstances. In Maxam, while the defendant was located abroad, the defendant's counsel was located in New York. The Court found "the conveniences of modern communication and transportation" supported the finding that the burden against the foreign defendant would be minimal. See id. (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129 (2d Cir. 2002)). The Court further stated that "the United States has a strong interest in applying the fraudulent transfer and preference provisions of its Bankruptcy Code since the Trustee's claims arise under it, and Defendants' transfers have allegedly deprived United States' creditors of distributions to which they are entitled in the BLMIS liquidation". See id. (citing U.S. Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus. Inc.), 68 B.R. 690, 699 (Bankr. S.D.N.Y. 1986).

Like in Maxam, Defendants are represented by able counsel in the United States; Defendants have the resources to defend themselves in the United States; the United States, and more particularly, the Bankruptcy Court, has a strong interest in the litigation of core issues including Chapter 5 avoidance claims, a stay violation and other claims asserted in the Complaint for the benefit of the estate's creditors, who have been harmed from Defendants' unjustified taking of the Gallant Funds; and the most efficient resolution of this controversy will be in the Bankruptcy Court where the Debtors' bankruptcy cases are pending. Indeed, Defendants and any other parties that may be in possession of Gallant's assets will be emboldened to take the assets without justification should they be permitted to play a game of catch me if you can with the Trustee. Forcing the Trustee to litigate theses causes of action based on the Bankruptcy Code in a Cypress

court would be inequitable to all parties in interest in this case who have conducted themselves within the confines of the law.

The maintenance of this suit before this Court does not offend traditional notions of fair play and substantial justice. Accordingly, Plaintiff met her burden and established facts sufficient to subject Defendants to personal jurisdiction.[2]

## II.     DEFENDANTS FAILED TO MEET THEIR BURDEN FOR DISMISSAL BASED ON FORUM NON CONVENIENS GROUNDS

The doctrine of *forum non conveniens* "is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000). Whether to dismiss an action on *forum non conveniens* grounds is a decision that "lies wholly within the broad discretion of the court' and should be reversed only if 'that discretion has been clearly abused'." Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir. 1996) (quoting Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC, 81 F.3d 1224, 1232 (2d Cir. 1996)).  A court may dismiss an action under *forum non conveniens* "when considerations of convenience, fairness, and judicial economy so warrant." Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720 n.6 (2d Cir. 2013) (citation omitted).

---

[2]      In the unlikely event that the Court finds that existing allegations are insufficient to subject Defendants to personal jurisdiction, the Trustee should be afforded the opportunity to engage in jurisdictional discovery. "This Court has considerable discretion in determining how best to handle jurisdictional questions . . . and may permit a plaintiff to conduct limited discovery with respect to [a] jurisdictional issue." Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC), 2012 Bankr. LEXIS 2748, *20 (Bankr. S.D.N.Y. June 15, 2012) (citations omitted). "Such discovery is appropriate where the plaintiff has made a *sufficient start* toward establishing jurisdiction and where it would not be a fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper." Id. at *20; see also Stratagem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 547 (S.D.N.Y. 1994) ("Although plaintiffs must make prima facie showing of personal jurisdiction to withstand a motion to dismiss, the Court has discretion to order further discovery on the jurisdictional issue, provided that plaintiffs make a threshold showing of jurisdiction and establish that their position is not frivolous."). This discovery is typically permitted where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge." Id.

In so doing, a court may bypass the question of whether subject matter and personal jurisdiction exist in order to first resolve the question of whether exercising jurisdiction over a foreign defendant is fair and makes judicial-economic sense. See Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru, 665 F.3d 384, 389 (2d Cir. 2011). The Second Circuit has crafted a three-step analysis for determining whether to dismiss a case pursuant to *forum non conveniens*: (1) a determination of the degree of deference properly accorded the plaintiff's forum choice; (2) a consideration of whether an adequate alternative forum exists; and (3) a balancing of the private interests of the parties in adjudicating the case in the selected fora and the public interests at stake. See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d 741, 753 (S.D.N.Y. 2006).

"In considering these factors, the court is necessarily engaged in a comparison between the hardships defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country." Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001). In determining whether a plaintiff's choice of forum was motivated by convenience, courts consider the following factors: [1] the convenience of the plaintiff's residence in relation to the chosen forum; [2] the availability of witnesses or evidence to the forum district; [3] the defendant's amenability to suit in the forum district; [4] the availability of appropriate legal assistance; and [5] other reasons relating to convenience or expense. In re Hellas Telecomms., 555 B.F. at 346. In re Hellas Telecomms. (Luxembourg) II SCA, 555 B.R. 323, 346 (Bankr. S.D.N.Y. 2016). "An alternative forum is ordinarily adequate if (1) the defendants are amenable to service of process there and (2) the forum permits litigation of the subject matter of the dispute." Monegasque De Reassurances, 311 F.3d at 499 (citation omitted). "[T]he availability of an adequate alternative forum does not

depend on the existence of the identical cause of action in the other forum." Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC, 155 F.3d 603, 610 (2d Cir. 1998). The private interest factors weigh the convenience of the competing forums: [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling [witnesses] and the cost of obtaining attendance of willing witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive. Strategic Value, 421 F. Supp. 2d at 757. Public factors include [1] administrative difficulties stemming from court congestion[;] [2] the undesirability of imposing jury duty upon the people of a community which has no relation to the litigation; [3] the local interest in having localized controversies and [4] the appropriateness of holding the trial in a forum that is 'at home' with the applicable law. Scottish Air, 81 F.3d 1224 at 1232

In light of the factors outlined by the Second Circuit, Defendants fail to meet their burden to have the Complaint dismissed based on *forum non conveniens* grounds. Plaintiff is the Chapter 11 Trustee of the jointly administered bankruptcy estates appointed by the Office of the United States Trustee, Eastern District of New York and the claims asserted in the Complaint are core bankruptcy claims (*i.e.* Chapter 5 avoidance claims, declaratory relief and violation of the automatic stay). The dismissal of the pending Adversary Proceeding and commencement of a new action in Cypress over claims arising under the Bankruptcy Code would not only cause an odd result, but would also give rise to unnecessary costs and unduly burden the estates to the detriment of all parties-in-interest in the Debtor's bankruptcy case.

Moreover, the majority, if not all, of the witnesses are located in United States (*i.e.* Plaintiff, Mr. Buccellato, Reilly and Manuela Mazzacco). In fact, Plaintiff is not aware of any party involved in this litigation or third-party witness, who resides in Cypress. Mario Persichino, the owner and/or

shareholder of AFX Group, who provided the declaration, is a resident of Dubai. See Mario Persichino Declaration, p. 1. ¶ 1. Importantly, Mr. Perischino apparently travels to New York on business including attendance at "trade shows or other events involving the foreign currency exchange business". See Motion, Exhibit "B", ¶ 6.  New York is the proper forum for this Adversary Proceeding. Defendants have retained counsel in New York and will not suffer a hardship through the retention of jurisdiction in the Bankruptcy Court.

Similar to the personal jurisdiction argument, the *forum non conveniens* argument ignores the fact that there is no basis in which an alternative forum is appropriate to pursue these claims. Accordingly, the Court, in its broad discretion, should deny the dismissal of the claims based on *forum non conveniens* grounds.

### III.    THE COMPLAINT PLAUSIBLY STATES THE CLAIMS FOR RELIEF

Federal Rule 12(b)(6), made applicable to this Adversary Proceeding pursuant to Bankruptcy Rule 7012, authorizes a court to dismiss a complaint for "failure to state a claim for which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must presume all factual allegations in the complaint to be true and view them in light most favorable to the plaintiff. See Paulemon v. Tobin, 30 F.3d 307, 309 (2d Cir. 1994). "In reviewing pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court 'must limit itself to facts stated in the complaint as exhibits or incorporated in the complaint by reference'." Am. Express Travel Related Servs. Co. v. Henein, 257 B.R. 702, 705 (E.D.N.Y. 2001) (citing Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996); Kopec v. Coughlin, 922 F.2d 152, 155-56 (2d Cir. 1991)). The dismissal is warranted where it appears beyond doubt that the plaintiff can prove no sets of facts in support of his claim which would entitle him to relief. See Maxwell Commc'n Corp. PLC by Homan v. Societe Generale (In re Maxwell Commc'n Corp. PLC), 93 F.3d 1036, 1044

(2d Cir. 1996); <u>Paulemon</u>, 30 F.3d at 309. "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted).

To defeat a motion to dismiss under Rule 12(b)(6), a complaint must set forth a "plausible entitlement to relief." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559 (2007). Merely "conceivable" claims do not suffice. <u>Id.</u> at 570. A complaint should only be dismissed under Rule 12(b)(6) where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible[.]" <u>Id.</u> The <u>Twombly</u> Court expressed that factual allegations must be enough to raise a right to relief above the speculative level. <u>See id.</u> at 555. In assessing the adequacy of a complaint, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." <u>Gregory v. Daly</u>, 243 F.3d 687, 691 (2d Cir. 2001) (citations omitted).

### A. **Defendants Fail To Assert a Basis for the Dismissal of the Turnover, Declaratory Relief and Violation Stay Claims**

Contrary to Defendants' assertions that the gravamen of the Complaint is that Defendants owed the Trustee money under the Capital Risk Share Agreement, by virtue of the Complaint, the Trustee seeks to avoid and recover funds transferred from the Gallant Account under various Chapter 5 provisions and to hold Defendants' liable for their violation of the automatic stay imposed under Bankruptcy Code § 362.

In assailing the Trustee's first (turnover), second (declaratory relief) and fifth (stay violation) claims for relief, Defendants contend that since they dispute that the Withdrawals and Remaining Balance are property of the estate, those claims are premature. Below, the Trustee addresses each of these claims for relief.

i.        **The Turnover Claim**

The Trustee's first claim is for turnover of estate property under Bankruptcy Code §§ 541 and 542. Bankruptcy Code § 541(a) provides that the bankruptcy estate consists of all "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).   Bankruptcy Code § 541 "has been broadly construed ... [to include] all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property." AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 799 (Bankr. S.D.N.Y.1990).

Bankruptcy Code § 542(a) provides:

an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

As observed by this Court in In re Brizinova, 554 B.R. 64, 75 (Bankr.E.D.N.Y. 2016), a Trustee must allege three elements to state a claim under Bankruptcy Code § 542(a), namely: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate'." Id.; Kramer v. Mahia (In re Khan), No. 10-46901-ESS, 2014 WL 4956676, at *22 (Bankr.E.D.N.Y. Sept. 30, 2014) (quoting Zazzali v. Minert (In re DBSI, Inc.), 468 B.R. 663, 669 (Bankr.D.Del.2011)).

Each of the elements of a turnover claim have been adequately pled in the Complaint.  First, Defendants are in possession of the Withdrawals and the Remaining Balance, each of which Defendants withdrew from the Gallant Account. Second, upon recovery, those funds could be used

23

in connection with the administration of the estate, including to pay creditor claims and allowed administrative expenses. Third, the approximate $2.8 million taken by Defendants has more than consequential value.  Accordingly, the first claim for relief states a plausible claim for turnover.

While the Courts have recognized constraints upon a Trustee's use of her turnover power where, for example, it is used as a Trojan Horse for bringing garden variety contract claims, when the property in question is not already property of the estate, and when an estate's title to property is legitimately debatable, the Trustee has properly invoked her turnover power here.  Geron v. Peebler (In re Pali Holdings, Inc.), 488 B.R. 841, Fn. 39 (Bankr.S.D.N.Y. 2013).  Prior to moving to dismiss the Complaint, Defendants never disputed Gallant's entitlement to the Remaining Balance. As the beneficiary of the Gallant Account, there is no bona fide question that the Remaining Balance is property of the estate or that the estate is entitled to those funds. Defendants' post-petition refusal to remit the Remaining Balance to the Trustee does not arise from a genuine dispute over ownership, but instead is manufactured, without legitimate basis and reflects a post-hoc stratagem to keep estate property from the reach of the Trustee, this estate, and the Court.

In relying on In re J.T. Moran Fin. Corp., 124 B.R. 931, 938 (Bankr.S.D.N.Y. 1991), Defendants overlook those cases in which a turnover has been asserted in the same complaint that seeks to establish that the property subject to turnover is property of the estate.  See, e.g., Angueira v. Ortega T. (In re Ortega T.), 562 B.R. 538, 543 (Bankr.S.D.Fla. 2016) (the Court declined to dismiss the turnover claim since the adversary proceeding also sought a determination that the property was property of the estate); Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs., LLC), 2013 Bankr. LEXIS 139, 2013 WL 64755 (the Court abated the Trustee's turnover claim pending adjudication of the dispute as to entitlement to payment from a certain insurance policy).

In such instances, the Courts have declined to dismiss the turnover claim because a finding that the property is property of the estate will satisfy the conditions precedent for a turnover.  As such, dismissal of the turnover claim is impractical and should be denied.

### ii.    Declaratory Relief

Other than aggregate the Trustee's second claim for relief as being deficient for the same reason as her first and fifth claims for relief, Defendants fail to demonstrate that this Court should not make a determination of what is and is not property of the estate and fail to cite to any authority specific to claims for declaratory relief.

It is well settled that the determination of whether something is property of the estate is a core matter.  See, e.g., Velo Holdings Inc. v. Paymentech, LLC (In re Velo Holdings Inc.), 475 B.R. 367, 386 (Bankr.S.D.N.Y. 2012); Pension Benefit Guar. Corp. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 138 B.R. 442, 445 (D. Del. 1992) (concluding that determination regarding property of the estate is core); Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.), 387 B.R. 95, 105 (Bankr.D.Del. 2008) (concluding that matters requiring declaration whether property is property of the estate are core); Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp. Holdings, Inc.), 273 B.R. 374, 394-95 (Bankr.E.D.Pa. 2002) (proceeding to determine whether certain property rights are property of the estate under Section 541 is core, even if determination rests upon interpretation of state law); Knopfler v. Schraiber (In re Schraiber), 97 B.R. 937, 939 (Bankr.N.D.Ill. 1989) (concluding that bankruptcy court has core jurisdiction to determine what property of estate is and can apply state law).

Accordingly, even if the Court were to determine that the turnover claim is premature until the Withdrawals and Remaining Balance are avoided, the dismissal of the first claim for relief does not necessitate the dismissal of the second claim for relief.

### iii.    **The Stay Violation Claim**

Under her fifth claim for relief, the Trustee seeks a money judgment against Defendants for violating the automatic stay by withdrawing the Remaining Balance of $1,443,132.92.

Bankruptcy Code § 362(a) provides that a "petition filed under ... this title ... operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The automatic stay "is effective immediately upon the filing of the petition ... and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir.1994) (citing 48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d Cir.1987), cert. denied, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988)). Actions taken in violation of the automatic stay generally are held to be void ab initio. In re Ebadi, 448 B.R. 308, 313 (Bankr.E.D.N.Y.2011) (citing Rexnord Holdings, 21 F.3d at 527). See In re Olejnik, No. 09-76714-AST, 2010 WL 4366183, at *5 (E.D.N.Y.2010).

In the Complaint, the Trustee has alleged that Defendants withdrew the Remaining Balance from the Gallant Account on or after the Filing Date.  In doing so, Defendants exercised control over property of the estate, namely funds deposited into the Gallant Account for the benefit of Gallant.

Relying on In re Burnett, 450 NR. 589, 594 (Bank.W.D.Va. 2011), Defendants assert that the stay imposed in Gallant's case does not apply because Gallant did not have a legal or equitable interest in the Withdrawals or Remaining Balance.  However, unlike Burnett, where the debtor's interest in real estate was conclusively foreclosed upon prior to the filing of his bankruptcy petition such that he had no legal or equitable interest in property subject to the automatic stay, Gallant has

26

had and continues to have an interest in the Withdrawals and the Remaining Balance.  In fact, Defendants' interest in the Remaining Balance remains wholly unexplained.  Having never provided facts justifying a right to the Remaining Balance, Defendants, upon the filing of this bankruptcy case, improperly and without any justification, removed the Remaining Balance from the Gallant account.  While Defendants could prevail on the stay violation claim if the Court determines that the Withdrawals and the Remaining Balance are not property of Gallant's estate or that Gallant holds no interest in the Remaining Balance or Withdrawals, these are not the facts of this case and Defendants' conclusory allegation that they are not property of the estate is insufficient to defeat the fifth claim for relief at the pleading stage.

Accordingly, the Trustee has sufficiently alleged that after the automatic stay took effect, Defendants withdrew the Remaining Balance from the Gallant Account and thereby exercised control over property of the estate.

## B. Bankruptcy Code § 546(g) Is Inapplicable to the Trustee's Preference and Fraudulent Transfer Claims

Defendants argue that Bankruptcy Code § 546(g) precludes the Trustee's preference and fraudulent transfer claims. Although the Second Circuit interprets swap agreements broadly, "[T]he definition of 'swap agreement' . . . should not be interpreted to permit parties to document non-swaps as swap transactions." H.R. Rep. No. 109-31, at 122 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 184. The United States Bankruptcy Court, Southern District of New York defined a swap agreement as one "between two parties whereby the parties agree to exchange one or more future payments measured by different prices of a commodity with payments calculated by reference to a notional amount." Interbulk, Ltd. v. Louis Dreyfus Corp. (In re Interbulk, Ltd.), 240 B.R. 195, 201, n.7 (Bankr. S.D.N.Y. 1999).

A "swap" under Bankruptcy Code § 546 as described in *In re Interbulk, Ltd*. relates to

27

agreements on future payments, the purpose of which is to provide market stability for these specific types of transactions.  The relationship between Gallant and Defendants is not remotely akin to a swap as the term is used under the Bankruptcy Code.  Under the Client Agreement, a "swap" is defined as a daily interest payment calculated on a daily basis as set forth in the most updated Rates Schedule and accrued for the benefit of either party. A client's account was debited or credited with such amount <u>every calendar day</u>. <u>See</u> Client Agreement, p.11, ⁋ 5.9.  Furthermore, in this instance, the two large sum withdrawals by Defendants was not on account of interest payments debited on a daily basis under the terms of the Client Agreement. Instead, these funds withdrawn by Defendants (without authorization) belonged to Gallant. The Gallant Funds were considered "Client Money" not subject to swap transactions.  Under the terms of the Agreement the "Client Money" was defined as client deposits and "shall be net of any bank fee, commission, expense, cost or other charge unless stated otherwise". <u>See</u> Client Agreement, p. 12, section 8. Defendants' removal of Gallant funds that are now the subject of this action for turnover, avoidance and recovery under Chapter 5, and violations of the automatic stay, are in no way transfers under or in connection with a swap agreement as that term is used in the Bankruptcy Code.  Accordingly, the withdrawal of the Gallant Funds should not be deemed swap transactions and Bankruptcy Code § 546(g) does not preclude the Trustee's preference and fraudulent conveyance claims.

### C.  <u>Defendants Are Not Entitled to the Dismissal of the Preference Claim Predicated on the Affirmative Defense of Recoupment</u>

Defendants alternatively claim that the Trustee's third claim for relief to recover the Withdrawals and the Remaining Balance from the Gallant Account made within ninety (90) days of the Filing Date must be dismissed on the grounds of recoupment.  In doing so, Defendants attempt to recast the factual allegations set forth in the Complaint and to shoe horn their conduct into a contractual claim. Contrary to what Defendants have alleged in opposition, the Trustee has

not claimed that Defendants recouped funds; to the contrary, for purposes of her preference claim, the Trustee has alleged that Defendants engaged in the unauthorized taking of Withdrawals and the Remaining Balances based on an antecedent debt.

Bankruptcy Code § 547(b) "authorizes the Trustee to avoid a transfer which prefers one creditor over similarly situated creditors, and allows the transferee to receive more than it would have received in a chapter 7 case had the transfer not been made". <u>Pryor v. N.Y. State Dep't of Taxation and Fin. (In re Waring)</u>, 491 B.R. 324, 328 (Bankr. E.D.N.Y. 2013) (citing <u>Pryor v. Zerbo (In re Zerbo)</u>, 397 B.R. 642, 648 (Bankr. E.D.N.Y. 2008)). The Trustee bears the burden of proving each of the elements of a preference by a preponderance of the evidence. 11 U.S.C. § 547(g); <u>see also</u> <u>Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)</u>, 78 F.3d 30, 34 (2d Cir. 1996) (citation omitted). Defendants, however, bear the burden of proof for any affirmative defenses under Bankruptcy Code § 547(c). *See* 11 U.S.C. § 547(g); <u>Waring</u>, 491 B.R. at 329.

As observed by Judge Gonzalez in <u>Official Committee of Unsecured Creditors of Enron Corp. v. Amanda K. Martin (In re Enron Creditors Recovery Corp)</u>, 376 B.R. 442 (2007), recoupment is a process that permits a "defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." <u>In re Kosadnar</u>, 157 F.3d 1011, 1013 (5th Cir 1998). Recoupment is an equitable doctrine that is allowed on a limited basis in bankruptcy cases when both debts at issue arise out of a single integrated transaction. <u>Global Cable, Inc. v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)</u>, 2006 WL 1559437 (S.D.N.Y. 2006). <u>See also</u>, <u>New York State Elec. & Gas Corp. v. McMahon (In re McMahon)</u>, 129 F.3d 93, 97 (2d Cir.1997) (noting that the doctrine of recoupment "is a limited one and should be narrowly construed.").

A right of recoupment is a defense.  See. e.g., Folger Adam Sec, Inc., 209 F.3d 252, 260(3d Circ. 2000); Daewoo Int'l (Am.) Corp. Creditor Trust v. SSTS Am. Corp., No. 02 Civ. 9629, 2003 U.S. Dist. LEXIS 9802, at *17 (S.D.N.Y. June 9, 2003).  As such, Defendants have the burden of proof of demonstrating that the affirmative defense of recoupment prevents the Trustee's recovery of the Withdrawals and Remaining Balance as preferential transfers. Plainly, Defendants cannot make such a demonstration at the pleading stage. Notably, and in fact quite glaring from Defendants' communication and its Motion, Defendants have not identified what claim they held against Gallant arising out of a common transaction that would entitle Defendants to exercise a right of recoupment.  Even if Defendants could sustain their burden of proof of this affirmative defense, a question would remain as to whether recoupment should be permitted under these circumstances given that the doctrine should be sparingly recognized and narrowly construed.

The cases cited by Defendants are factually or procedurally inapposite.  In In re Yonkers Hamilton Sanitarium, Inc., 22 B.R. 427, 432 (Bankr. S.D.N.Y. 1982), as a result of $534,863.00 in acknowledged overpayments by Medicare, pre-petition the debtor therein agreed to reduce the amount paid by Medicare bi-weekly by $10,286.00 until the overpayment had been repaid in full.  The consensual deductions during the 90-day period preceding the petition date totaled $72,012.00, representing seven (7) deductions. The debtor sought to avoid and recover those payments as preferential transfers.  The Court concluded that the trustee therein had failed to state a preference claim because the repayments constituted an adjustment of the debtor's liability under the facts presented therein.

Defendants allege that the Trustee cannot assert that the removal of the Gallant Funds were preferential transfers because Defendants exercised their right to recoup these funds. Defendants, however, do not provide a predicate as to why they would be entitled to recoupment. There is no

debt owed to Defendants at the time of the withdrawal of the Remaining Balance. Merely stating that they are entitled to recoup the Remaining Balance does not establish a proper basis or any basis whatsoever. In reality, the Remaining Balance of $1.4 million that was in the Gallant Account as of the Filing Date belonged to Gallant. Defendants had no recognized legal basis, nor has one been articulated, to withdraw the Remaining Balance from the Gallant Account.  Further, when Gallant demanded the turnover of the Remaining Balance, Defendants never claimed to have an interest in the Remaining Balance and certainly never raised the right of recoupment.

Defendants overstate the significance of the decision and order in Snodgrass v. Department of Veterans Affairs (In re Snodgrass), 244 B.R. 353 (Bankr.W.S.Va. 2000), wherein, on summary judgment, in the context of veterans' benefit overpayments, recoupment was permissible and the prepetition recoupment did not result in a voidable preference.  In contrast, in this case the parties disagree at the pleading stage over the nature of Defendants' taking of funds from the Gallant Account.

In Waldschmidt v. CBS, Inc., 14 B.R. 309 (M.D.Tenn. 1981), the District Court considered who was entitled to royalties from the sale of certain records made by the debtor musician pursuant to his recording contract with the recording company and whether the recording company was entitled to recoup the advances it made to the debtor from royalties.  The adversary proceeding commenced by the trustee therein was in the nature of a turnover proceeding pertaining to the royalties, rather than one seeking to recover preferential transfers.  On summary judgment, the District Court concluded that the royalties were the property of the debtor's estate and, notwithstanding this conclusion, the recording company was entitled to recoup the full amount of the advances based on the record before it.  As with the royalties in Waldschmidt, in the instant case, the Withdrawals and the Remaining Balance constitute property of this estate within the

meaning of the Bankruptcy Code.  However, unlike in <u>Waldschmidt</u>, Gallant had not been overpaid by Defendants.

In each of these contexts, the recoupment sought to avoid the unjust result that would occur if a debtor were permitted to retain the benefit of overpayments made by each defendant prior to each bankruptcy filing.  In contrast, Defendant's alleged recoupment did not arise from overpayments or advances made to Gallant prior to its bankruptcy filing.  Instead, Defendants either took the Withdrawals and the Remaining Balance from the Gallant Account on account of some debt owed to them or, alternatively, took it without providing consideration in exchange giving rise to the Trustee's fraudulent conveyance claim.

Unlike the defendants in each of the cases cited by Defendants, Defendants have failed to demonstrate the mutuality of obligation necessary for recoupment to defeat the Trustee's preference claim at the pleading stage.  Discovery would be required to ascertain the nature, amount and validity of Defendants' alleged claim since they have never articulated a calculable claim.   In fact, not only is the taking of Gallant's funds actionable by the Trustee, but even the raising of alleged defenses in the Defendants' Motion with respect to the taking of the Remaining Balance is a questionable practice in light of the absence of facts offered to support what are merely theoretical defenses.  As such, the dismissal of the third claim for relief predicated on recoupment should be denied.

## **CONCLUSION**

Defendants have failed to meet their heavy burden in establishing that the Complaint should be dismissed. On any of the asserted grounds, the Trustee has stated plausible entitlement to relief on each of the claims asserted against the Defendants. Indeed, taking all of the factual allegations in the Complaint as true, as is required for purposes of a motion under Rule 12(b)(6), it is clear that each claim is sufficiently pled and should not be dismissed at this early stage in the Adversary Proceeding. For all of the foregoing reasons, the Trustee respectfully submit that the Motion be denied in all respects.

Respectfully Submitted,

Dated: July 30, 2018
     Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
Counsel to Plaintiff Esther DuVal, Chapter 11 Trustee of
the Estate of Gallant Capital Markets Ltd.

By:    *s/ Joseph S. Maniscalco*
     Joseph S. Maniscalco, Esq.
     Jacqulyn S. Loftin, Esq.
     3305 Jerusalem Avenue
     Wantagh, New York 11793
     Telephone: 516.826.6500