Douglas E. Spelfogel
Derek L. Wright
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
Telephone:  (212) 682.7474
Facsimile:  (212) 687.2329
Email:  dspelfogel@foley.com

and

Geoffrey S. Goodman
FOLEY & LARDNER LLP
321 North Clark Street
Chicago, Illinois 60610
Telephone:  (312) 832.4500
Facsimile:  (312) 832.4700
Email:  ggoodman@foley.com

*Attorneys for Defendants*

**Hearing Date:**  August 13, 2018 at 3:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

GALLANT CAPITAL MARKETS, LTD.,

                    Debtor.

------------------------------------------------------------X

ESTHER DUVAL, AS CHAPTER 11 TRUSTEE
OF GALLANT CAPITAL MARKETS, LTD.
ESTATE

                    Plaintiff,

                  v.

AFX CAPITAL MARKETS LTD., AFX CAPITAL
U.S.  CORP., AND STO SUPER TRADING
ONLINE,

                    Defendants

------------------------------------------------------------X

Case No. 17-41814-ESS

Chapter 11

Adv. Pro. No. 18-1038-ESS

## REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .................................................................................................................... 5

I.     The Trustee Cannot Meet Her Burden of Establishing Jurisdiction Over AFX ................ 5

     A.     AFX Does Not Have Sufficient Minimum Contacts in New York (or the United States) to Support the Exercise of Specific Jurisdiction ............................ 5

          1.     No Contacts *by AFX* Are Alleged Where the Trustee Improperly Conflates Defendants .................................................................................... 5

          2.     The Purported Contacts Bear No Connection to the Subject Claims ......... 7

     B.     It Is Not Reasonable Under the Circumstances to Exercise Jurisdiction Over AFX.......................................................................................................... 10

II.     The Trustee Cannot (and Does Not) Dispute the Overwhelming Factors Supporting Dismissal Based on *Forum Non Conveniens* .................................................. 12

III.     The Complaint Fails To State a Cause of Action ............................................................ 14

     A.     The Turnover, Declaratory Relief and Violation of Stay Claims Are Disguised Breach of Contract Claims Not Properly Raised Here ........................ 14

     B.     The Trustee's Preference And Fraudulent Transfer Claims Should Be Dismissed Under Section 546(g) Of The Bankruptcy Code................................. 17

     C.     The Trustee's Preference Claim Also Should Be Dismissed Because a Recoupment Cannot Be a Preference .................................................................. 19

CONCLUSION.................................................................................................................. 21

4839-1924-7470.12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 11 E. 36th LLC*,
    No. 13-11506 (JLG), 2015 WL 2445075 (Bankr. S.D.N.Y. May 20, 2015) ..........................14

*Arcadia Aviation PHF, LLC v. Aero-Smith, Inc.*,
    No. 12 CIV. 6177 PAC, 2013 WL 3717651 (S.D.N.Y. July 16, 2013)..................................10

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
    137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017) ......................................................................9

*In re Casa de Cambio Majapara S.A. de C.V.*,
    390 B.R. 595 (Bankr. N.D. Ill. 2008) .............................................................18, 19

*Chew v. Dietrich*,
    143 F.3d 24 (2d Cir. 1998)....................................................................................10

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
    7 N.Y. 3d 65 850 N.E.2d 1140 (2006)..................................................................10

*Doe v. Delaware State Police*,
    939 F. Supp. 2d 313 (S.D.N.Y. 2013)....................................................................6

*In re EMS Fin. Servs., LLC*,
    No. 12-71324-AST, 2013 WL 64755 (Bankr. E.D.N.Y. Jan. 4, 2013) ...................15

*In re Interbulk, Ltd.*,
    240 B.R. 195 (Bankr. S.D.N.Y. 1999) ..................................................................17

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)..................................................................................12

*JGB Enterprises, Inc. v. Beta Fluid Sys., Inc.*,
    135 F. Supp. 3d 18, 27 (N.D.N.Y. 2015) .............................................................12

*In re Lehman Bros. Holdings Inc.*,
    502 B.R. 376 (Bankr. S.D.N.Y. 2013) ..................................................................16

*In re Lexington Healthcare Grp., Inc.*,
    363 B.R. 713 (Bankr. D. Del. 2007) .....................................................................14

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
    84 F.3d 560 (2d Cir.1996)....................................................................................11

i

*In re Nat'l Gas Distributors, LLC*,
   556 F.3d 247 (4th Cir. 2009) ...................................................................................17

*Norben Imp. Corp. v. Metro Plant & Flower Corp.*,
   No. 03 Civ. 3660 (WHP), 2004 U.S. Dist. LEXIS 21210 (S.D.N.Y. Oct. 25,
   2004) ..........................................................................................................................7

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993).............................................................2, 8, 11, 12, 16

*In re Ortega T.*,
   562 B.R. 538 (Bankr. S.D. Fla. 2016)...................................................................15

*Picard v. Igoin* (*In re Bernard L. Madoff Inv. Sec. LLC*),
   525 B.R. 871 (Bankr. S.D.N.Y. 2015)................................................................5, 9

*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607 (1992).................................................................................................10

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).......................12

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   505 B.R. 135 (S.D.N.Y. 2013)...............................................................................19

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (Maxam)*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ..................10, 11

*Snodgrass v. Dep't of Veterans Affairs*,
   244 B.R. 353 (W.D. Va. 2000) ...............................................................................20

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
   421 F. Supp. 2d 741 (S.D.N.Y. 2006).....................................................................12

*United States v. Inslaw, Inc.*,
   932 F.2d 1467 (D.C. Cir. 1991) ..............................................................................15

*Waldschmidt v. CBS, Inc.*,
   14 B.R. 309 (M.D. Tenn. 1981) ..............................................................................20

*In re Yonkers Hamilton Sanitarium Inc.*
   22 B.R. 427 (Bankr. S.D.N.Y. 1982) ......................................................................20

**Statutes**

11 U.S.C. 362(a) .........................................................................................................16

11 U.S.C. § 101(53B) ...........................................................................................4, 17, 18

11 U.S.C. § 546(g) ........................................................................................4, 16, 17, 19

11 U.S.C. § 547(b)(2) ........................................................................................20

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.........................................17

Bankruptcy Act ........................................................................................20

Pub. L. No. 109-8, 119 Stat. 23 (2005)........................................................................................17

**Other Authorities**

5 COLLIER ON BANKRUPTCY ¶ 556.02[1] n.8 (16th ed. 2018) .......................................................18

Defendants[1] submit this Reply Memorandum in further support of their Motion to Dismiss the Complaint[2] and in response to the Trustee's opposition to the Motion [Doc. No. 16] (the "Opposition" or "Opp.").

## PRELIMINARY STATEMENT

Through the Opposition, the Trustee further confirms that her claims, alleged here as "core" bankruptcy claims, are really thinly-disguised breach of contract claims arising under the subject (Cyprus) Agreement, as to which this Court does not have jurisdiction and which are not properly adjudicated in this Court. Specifically, through the Complaint, the Trustee seeks to recover funds allegedly deposited by Gallant with AFX "*in accordance with the Client Agreement*" and alleged withdrawals of such funds that "were not authorized by Gallant and did not correlate with the timing of transactions contemplated *under the express terms of the Capital Risk Share Agreement*." Opp. at 4-5 (emphasis added). While disputed by AFX, there is no question that the Trustee's alleged claims are garden variety contract claims dressed up as bankruptcy claims here for the ulterior motive of purporting to establish jurisdiction and a forum for the Cyprus-based dispute in New York.

By the Motion, Defendants moved to dismiss such disguised breach of contract claims because (i) the Court lacks personal jurisdiction over AFX where it was not sufficiently alleged, among other things, that AFX has *any* contacts with the forum, let alone contacts that give rise or relate to the Trustee's claims, as required; (ii) New York is an inappropriate forum under the doctrine of *forum non conveniens* where, among other things, the subject dispute arises from an entirely foreign transaction with no nexus to New York (or the U.S.); and (iii) each claim, as

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion.

[2] The Motion is cited herein as "Mot. at __" and the Complaint is cited as "Compl. ¶ __"

pled, fails to state a cause of action. Through the Opposition, for the reasons described in detail

below, the Trustee does nothing to cure such deficiencies and the Complaint should be dismissed

in its entirety.

While the Trustee insists that her claims are properly raised as "core" bankruptcy claims

here, the only basis she provides for such "core" jurisdiction is that such claims are "asserted in

the Complaint for the benefit of the estate's creditors." Opp. at 17. However, the Second Circuit

has previously discredited the Trustee's position:

> Any contract action that the debtor would pursue against a
> defendant presumably would be expected to inure to the benefit of
> the debtor estate and thus 'concern[s]' its 'administration' [under
> 28 U.S.C. § 157(b)(2)(A)] … Nonetheless, the Adversary
> Proceeding remains a [non-core] pre-petition contract action that
> the Supreme Court held in *Marathon* may not be finally
> adjudicated by a non-Article III judge.

*In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993). The Second Circuit further

explained that the problem with the approach advocated by the Trustee "is that it creates an

exception to *Marathon* that would swallow the rule." *Id.* (citing 1 *Collier on Bankruptcy* ¶

3.01[2][b][iii], at 3-49 (noting that defining prepetition contract actions as core because the

amounts allegedly due would  inure to the benefit of the estate would "wipe out the

underpinnings of *Marathon*.").

Moreover – *and undisputed by the Trustee* – the Agreement was an exclusively foreign

transaction. In particular, the only two parties to the Agreement – AFX and Gallant – are

domiciled in Cyprus and the BVI, respectively, and the Agreement was not negotiated in New

York and none of its terms implicate New York. Nor does the Agreement provide for any

performance in New York; no business under the Agreement was transacted between AFX and

Gallant in New York or the United States. The Gallant account with AFX was opened in Cyprus

where AFX maintained and oversaw the account and all related transactions; all deposits and

2

withdrawals from the account occurred entirely abroad where the parties were located. Indeed, recognizing the foreign nature of the transaction, the parties included the Forum Clause requiring that any disputes under the Agreement be heard in Cyprus and governed by Cypriot law.

Against this backdrop, and under well-established law, it is strikingly clear that this Court lacks jurisdiction to hear the instant action, and it is not a proper forum.

First, there is no basis for asserting specific jurisdiction over AFX.[3] As an initial matter, the Trustee fails to allege sufficient contacts by AFX with New York (or the U.S.) – let alone any U.S. contacts relating to the alleged breach of the (Cyprus) Agreement at issue, as described below. Instead, the Trustee and new affiant, Tom O'Reilly, conflate Capital Corp. and AFX as "one" entity in order to falsely attribute Capital Corp.'s contacts in New York to AFX. Such obfuscation is grossly deficient where under well-established law, minimum contacts must be alleged against each individual defendant. Moreover, even if sufficient minimum contacts exist (and they do not), the Trustee fails to make *any showing*, as required, that the alleged causes of action arose out of or relate to such contacts. Indeed, the only so-called "contacts" alleged by the Trustee – the purported opening of a New York office and the retention of Tom O'Reilly in New York in 2015 – occurred *after* the Agreement was negotiated and entered in 2014 and have *nothing* to do with the Trustee's alleged claims under the (Cyprus) Agreement.

---

[3] The Trustee acknowledges in the Opposition that she only asserts specific, not general, jurisdiction over Defendants. Opp. at 9. Here, and through the Motion, only the Court's specific jurisdiction over AFX is addressed. As detailed in the Motion and confirmed by the Trustee (Opp. at 10), STO is a trade name (and not a separate legal entity) for AFX so any arguments on behalf of "AFX" with respect to jurisdiction apply equally to STO. In addition, as discussed in the Motion (section IV at 29), Capital Corp. is a dissolved entity and cannot be sued in any jurisdiction. Capital Corp. is also not a party to the Agreement and is not liable for any cause of action asserted in the Complaint. Significantly, Capital Corp.'s inability to be sued or held liable under the Complaint is undisputed by the Trustee in the Opposition. Rather, the Trustee named Capital Corp. as a Defendant solely as a mechanism to feign New York jurisdiction.

Second, this is not a proper forum to address such an overwhelmingly foreign transaction and should be dismissed under the doctrine of *forum non conveniens*. In arguing otherwise, the Trustee predominately relies on the fact that she is a Chapter 11 Trustee asserting alleged "core" bankruptcy claims. However, as described above, the Second Circuit confirmed that disguised breach of contract claims, like those here, are *not* core. Moreover, the numerous factors considered by courts – including, the existence of an adequate alternative forum, location of parties and witnesses, interest of the forum in the litigation, the parties' chosen forum and governing law – weigh heavily in favor of dismissal under *forum non conveniens,* as established in the Motion.

Further, even if this action is not dismissed on personal jurisdiction and/or *forum non conveniens* grounds, through the Opposition, the Trustee fails to cure her deficient pleadings and each cause of action should be dismissed for the additional reason that it fails to state a claim. Specifically, the Trustee's first, second and fifth claims for turnover, declaratory relief and violation of the stay are thinly-veiled breach of contract claims, which this Court has no jurisdiction to hear and which cannot be finally adjudicated by this Court under *Marathon*, and in any case, are subject to the Forum Clause. The Trustee's third claim to avoid an alleged preference and fourth claim to avoid an alleged constructively fraudulent conveyance fail, as a matter of law, under § 546(g) of the Bankruptcy Code because they seek to claw back transfers in connection with foreign currency transactions, which are plainly "swap agreements" under § 101(53B) of the Bankruptcy Code. In disputing this, the Trustee relies on case law that has been superseded by amendment to the Bankruptcy Code with respect to the definition of "swap agreements." The Trustee's alleged preference claim also fails, as a matter of law, because a recoupment is not an avoidable preference under long-established precedent. The Trustee's

argument that she has not alleged recoupment is belied by her own pleadings and well-established law.

## ARGUMENT

## I.    The Trustee Cannot Meet Her Burden of Establishing Jurisdiction Over AFX

It is well-established, and undisputed here, that "[d]ue process limits the exercise of personal jurisdiction over a foreign defendant" (such as AFX) and requires that a plaintiff sufficiently allege that (i) such defendant has minimum contacts with the forum (and the claim arises out of, or relates to, such contacts) and (ii) the exercise of jurisdiction over such defendant is reasonable under the circumstances.  *Picard v. Igoin* (*In re Bernard L. Madoff Inv. Sec. LLC)*, 525 B.R. 871, 882-83 (Bankr. S.D.N.Y. 2015); Opp. at 9.  Neither is sufficiently alleged by the Trustee.

### A.    AFX Does Not Have Sufficient Minimum Contacts in New York (or the United States) to Support the Exercise of Specific Jurisdiction

With respect to a foreign defendant's minimum contacts, specific jurisdiction only exists "[w]here the claim arises out of, or relates to, the defendant's contacts with the forum …"  Opp. at 11 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank*, *SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).  Accordingly, in order to establish specific jurisdiction over AFX, the Trustee must not only establish that AFX has sufficient minimum contacts with New York (or the U.S.), but must also establish that her claims arise from those contacts.  Neither is sufficiently established by the Trustee.

#### 1.    No Contacts *by AFX* Are Alleged Where the Trustee Improperly Conflates Defendants

As described in the Motion, the Complaint improperly pleads jurisdiction against Defendants collectively.  Mot. at 10-11.  This is a fatal flaw – and alone, grounds for dismissal – where under well-established law, each defendant's contacts with the forum state must be

assessed individually. *See*, *e.g.*, *Doe v. Delaware State Police*, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013) ("Plaintiff['s] general allegations lump both [defendants] together, but the Supreme Court has made clear that '[e]ach defendant's contacts with the forum State must be assessed individually.'") (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Through the Opposition, the Trustee fails to address this pleading deficiency. Specifically, to establish so-called minimum contacts, the Trustee relies on "a strategic decision by *Defendants* to expand its [sic] business relationships in the U.S., and specifically in New York, by opening a New York office in 2015, which they advertised in trade publications." Opp. at 9-10. Not only is such allegation deficiently pled against Defendants collectively, it is irrelevant where the Trustee confirms that the New York office that opened in 2015 (nearly a year after the Agreement was entered) was the office of *Capital Corp. – not* AFX. *See id*. at 10, Ex. A ("In the article, [Capital Corp.] announced the opening of a new office 'in [New York]' acknowledging [Capital Corp.'s] 'footprint in the United States.'"). In addition, the Trustee points to the purported webpage of STO as evidence that it has an office at 370 Lexington Avenue, New York, New York. *Id*. at 10. However, that is the same address that the Trustee's affiant, Tom O'Reilly, attests to occupying as an employee of Capital Corp. *Id*. Ex. D ¶ 1. Not surprisingly, since Capital Corp. dissolved in September, 2017, the STO site no longer includes that office location in New York.[4] Accordingly, the so-called New York office the Trustee relies on was not an office of AFX (Pers. Decl. ¶ 17), opened in 2015 after the Agreement giving rise to the Trustee's claims was entered and has since closed.

The Trustee also relies on a declaration from Tom O'Reilly (Opp. Ex D, the "<u>O'Reilly Dec</u>."), the former Senior Vice President of Sales for *Capital Corp.*, which she claims, "further

---

[4] Compare Opp. Ex. B (as of December 25, 2016) with https://www.stofs.com/en/contact-us.

establishes *Defendants'* minimum contacts with New York." *Id.* at 11 (emphasis added). However, the Trustee fails, *again*, to differentiate among Defendants, and not surprisingly, the O'Reilly Dec. is no less ambiguous.  In particular, Mr. O'Reilly confirms that he worked for Capital Corp. but also states (*under penalty of perjury*) that he worked for "the AFX Group" as well.  *Id.* Ex. D. ¶ 1.  While "the AFX Group" is not defined and it is entirely unclear what entity or entities Mr. O'Reilly is referring to, he goes on to refer to his employer generally as "AFX" (defined as Capital Corp. together with "the AFX Group") which gives the false impression that he was employed by AFX (the Cypriot Defendant).  This is not only belied by the Pers. Decl. (¶ 13), it improperly conflates Capital Corp. and AFX as "one" entity for purposes of jurisdiction. Notwithstanding such assertions, it is clear the Trustee has not, *and cannot*, attribute any, let alone sufficient, contacts to AFX and each claim against AFX should be dismissed on this basis alone.

### 2.    The Purported Contacts Bear No Connection to the Subject Claims

As further described in the Motion, even assuming, *arguendo*, that the Trustee somehow sufficiently established contacts with New York, which, as described above, she did not, this alone is insufficient to establish the required minimum contacts for specific jurisdiction where the purported contacts bear no connection to the subject claims.  Indeed, it is undisputed that the Agreement between AFX and Gallant was executed in 2014.  Compl. ¶ 41.  Moreover, the Agreement was entered between AFX (a Cyprus entity) and Gallant (a BVI entity) as an exclusively foreign transaction – a fact the Trustee does not dispute.  *See, e.g.*, Mot. at 14-15; Pers. Dec. ¶¶ 22, 24.  Under these circumstances, New York courts have consistently held there is not a sufficient nexus between the claims arising under such foreign agreement and the alleged contacts in New York to establish specific jurisdiction.  *See, e.g., Norben Imp. Corp. v. Metro Plant & Flower Corp.*, No. 03 Civ. 3660 (WHP), 2004 U.S. Dist. LEXIS 21210, at *7 (S.D.N.Y.

Oct. 25, 2004) (finding there was an insufficient nexus to establish jurisdiction where, among other things, "[t]he underlying contract was not negotiated in New York, and none of its terms implicate New York…").

Not surprisingly, in the Opposition, the Trustee does not even address, let alone refute, the well-established case law described in the Motion. Mot. at 14-17. Instead, the Trustee argues, *without any basis or explanation*, that "*Defendants'* contacts with the United States coincide with the asserted causes of action" (Opp. at 12) – a position belied by the very "contacts" upon which she purportedly relies and the fact that such purported contacts post-date the Agreement that is in dispute. Indeed, as described above, the gravamen of this action is a breach of contract claim under the (Cyprus) Agreement. As such, it is easy to understand why the Trustee attempts to convert a breach of contract action (clearly with no connection to New York) into an alleged "core" bankruptcy action. As discussed herein, the Trustee's efforts contravene controlling precedent. *See, supra, Orion*, 4. F.3d at 1102. Further, the only so-called contacts alleged by the Trustee are the purported opening of a New York office for Capital Corp. and hiring of Tom O'Reilly in New York in 2015. Opp. at 9-12. While disputed (*see generally*, Pers. Dec.), such alleged contacts occurred *after* the Agreement was entered in 2014 and have absolutely *nothing* to do with the Trustee's alleged claims related to the (Cyprus) Agreement.

Indeed, while the Trustee relies on the O'Reilly Dec., the only so-called "connection" (albeit a very strained one) alleged between Mr. O'Reilly and the Trustee's claims here, is his attestation that in 2017, he "encouraged Gallant's and AFX's operations personnel and executives to pick up the phone and have a direct dialogue regarding any disagreements with respect to the amount [allegedly] due Gallant." Opp. Ex. D ¶ 15. However, even if true, Mr. O'Reilly's purported efforts to act as a "mediator" between AFX and Gallant do not give rise to

the Trustee's claims.  Rather, such statement confirms that the subject dispute has no relationship to Mr. O'Reilly (he even refers to AFX's actions as being specifically distinct from his own), his presence in New York or any alleged interactions he had in New York with AFX or the Debtors. Further, it is undisputed that the Agreement is an entirely foreign contract that called for no performance in New York, did not implicate New York law and was governed and controlled under Cypriot law.

Moreover, to the extent the Trustee's position is that the O'Reilly Dec. establishes that AFX had some general presence in New York based on the allegation that its principals occasionally visited New York ("approximately three (3) times per year" (Opp. Ex. D ¶¶ 7, 8)) and met with Mr. O'Reilly there (*Id.*), such alleged general connections between AFX and New York similarly have nothing to do with the Trustee's claims under the Agreement and cannot be the basis for finding specific jurisdiction.  *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017) ("For specific jurisdiction, a defendant's general connections with the forum are not enough" where the claims asserted are unrelated to the purported conduct in the forum state).

In addition, the Trustee relies on several cases that each involved *substantial* contacts between the defendant and the forum that *directly related* to plaintiff's claims.  Opp. at 13-15. Such cases are entirely irrelevant here where, based on the undisputed facts, AFX had no contacts with the forum, much less contacts that gave rise to the Trustee's purported claims. Indeed, on their face, the Trustee's cases do not support her position but, rather, highlight the fact that no similar grounds exist for exercising specific jurisdiction over AFX here.  *See, e.g., Igoin*, 525 B.R. at 884 (Defendants entered into contracts with a New York broker dealer (Madoff) to invest over $66 million in U.S. stock markets subjecting themselves to state and federal laws and

availing themselves of the protections of federal securities laws and such conduct caused the injury in New York.).[5]

Accordingly, the Trustee has not come close to establishing that the subject causes of action arise out of, or relate to, any purported contacts by AFX, as required to establish specific jurisdiction.[6]

## B.    It Is Not Reasonable Under the Circumstances to Exercise Jurisdiction Over AFX

As the Trustee concedes, a determination as to the reasonableness of exercising jurisdiction over a foreign defendant only becomes necessary where minimum contacts have been sufficiently established (Opp. at 16) – something the Trustee fails to do here.  In any case, however, under the circumstances – in particular, where AFX is an entirely foreign entity contracting with another foreign entity (Gallant) with no economic nexus to the United States and where the parties to the Agreement specifically agreed that the subject disputes would be

---

[5] *See also, Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (Maxam)*, 460 B.R. 106, 119 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012) ("[G]iven [defendant's] entering into and performing under the Investment Management Agreement with its New York choice of law clause as well as directing investments to the United States, the Court cannot escape the conclusion that it has specific jurisdiction over [defendant]"); *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y. 3d 65, 71 850 N.E.2d 1140, 1143 (2006) (Defendant "knowingly initiat[ed] and pursu[ed] a negotiation with [plaintiff's] employee in New York that culminated in the sale of $15 million in bonds" and engaged in at least eight similar bond transactions in New York within a 13 month period); *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619 (1992) (Defendant "issu[ed] negotiable debt instruments denominated in United States dollars and payable in New York and [] appoint[ed] a financial agent in that city…."); *Chew v. Dietrich*, 143 F.3d 24, 30 (2d Cir. 1998) (In a wrongful death suit against the foreign owner of a yacht whose crewmember died while racing the yacht in international waters, finding sufficient U.S. contacts where defendant recruited victim in Rhode Island and intended to return there after the race, and the accident arose from the operation of a yacht previously used and maintained exclusively in the U.S.).

[6] The Trustee also tries to downplay the effect of the Cypriot choice of law provision in the Agreement, calling it a "red herring" because courts have held that a choice of law provision is not dispositive on the issue of personal jurisdiction.  Opp. at 15.  However, the Trustee's own cases confirm that the existence of a choice of law clause (and in this case, forum selection clause) is "'a significant factor in a personal jurisdiction analysis.'"  *Arcadia Aviation PHF, LLC v. Aero-Smith, Inc.*, No. 12 CIV. 6177 PAC, 2013 WL 3717651, at *3 (S.D.N.Y. July 16, 2013) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004)).  Moreover, this argument by the Trustee with respect to the terms of the Agreement, further confirms her claims arise under the Agreement.

heard in a foreign jurisdiction under foreign law – exercising jurisdiction over AFX in the U.S. would be patently unreasonable.

In arguing that this Court's exercise of jurisdiction over AFX would be reasonable, the Trustee relies exclusively on *Maxam* which, as described above (n.5), involved substantial connections with the U.S. not present here. Opp. at 17. Indeed, in considering reasonableness, the *Maxam* court held that "the serious burdens placed on the alien defendant" were not present where "there is a U.S. nexus to [defendant's] economic activities" – specifically, in *Maxam*, the foreign defendants were funds that intentionally channeled investor money into Madoff's Ponzi scheme in New York and as a result, received nearly $100 million of allegedly fraudulent and preferential transfers from Madoff in New York. *Maxam*, 460 B.R. 118-19.

Here, AFX has *no* economic connection to the U.S. and the subject causes of action *do not* arise from any transactions in New York, as was the case in *Maxam*. Notwithstanding those facts, the Trustee argues that jurisdiction is reasonable because AFX has able U.S. counsel and this Court allegedly has a strong interest in litigating "core issues." Opp. at 17. However, AFX was forced to retain U.S. counsel to avoid default when this action was improperly brought in New York. Further, as detailed above, the Trustee's disguised breach of contract claims are *not* core. Under these circumstances, this Court has no interest or jurisdiction in adjudicating such foreign breach of contract claims (indeed, it is improper under *Orion* and *Marathon*) and it would offend traditional notions of fair play and substantial justice to subject AFX to jurisdiction in New York (or the U.S.). *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996) (in a case involving out-of-state parties and transactions, the court held that "[plaintiff's] interest in pursuing its action in Vermont and Vermont's interest in adjudicating the case are so attenuated, if not nonexistent, that the exercise of personal jurisdiction would violate

11

our basic sense of 'fair play and substantial justice' – and deprive the defendants of due process guaranteed by the Constitution.").[7]

## II.     The Trustee Cannot (and Does Not) Dispute the Overwhelming Factors Supporting Dismissal Based on *Forum Non Conveniens*

As established in the Motion, numerous factors considered by courts in addressing a *forum non conveniens* argument weigh heavily in favor of dismissal here.  Mot. at 17-23.  Citing nothing, the Trustee argues that dismissal on *forum non conveniens* grounds is not appropriate because she is the Chapter 11 Trustee asserting alleged "core" bankruptcy claims.  Opp. at 20.  However, as established herein, the Trustee's so-called "core bankruptcy claims" are simple breach of contract claims dressed up as claims under the Bankruptcy Code in order to attempt to manufacture jurisdiction in this Court and avoid the parties' agreement to litigate such disputes in Cyprus.  Not only are such claims not properly adjudicated in this Court (*see Orion, supra*), according to the Trustee's own authority, the Trustee's choice of forum should be afforded little deference.  *See Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 759 (S.D.N.Y. 2006) ("[W]here it appears that a plaintiff has chosen a U.S. forum because

---

[7] The Trustee alternatively requests discovery (Opp. at 18 n.2) which would amount to an improper fishing expedition for hypothetical (and nonexistent) jurisdictional facts.  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ("[D]iscovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts.").  Crucially, the Trustee has not made a "sufficient start" to showing jurisdiction which requires the Trustee to assert that facts may exist in support of jurisdiction which can only be mined through discovery. *JGB Enterprises, Inc. v. Beta Fluid Sys., Inc.*, 135 F. Supp. 3d 18, 27 (N.D.N.Y. 2015).  The Trustee asserts no such facts here.  *See RSM Prod. Corp.*, 643 F. Supp. 2d at 402 (denying request for jurisdictional discovery because "[p]laintiffs have made no factual allegations which could be proven through additional discovery that would change the outcome of this issue").  Instead, the Trustee's request, presented as an afterthought in a footnote, hinges on the Complaint's conclusory non-factual specific jurisdictional allegations which courts routinely reject as insufficient to warrant discovery. *JGB Enterprises, Inc.,*135 F. Supp. 3d at 27; *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (denying request for jurisdictional discovery of foreign defendant because plaintiffs failed to make a *prima facie* showing of jurisdiction and complaint contained "conclusory non-fact-specific jurisdictional allegations").

of forum-shopping reasons, less deference will be afforded plaintiff's choice and, consequently, the greater the likelihood of dismissal."); *see also LaSala*, 510 F. Supp. 2d at 257 ("A plaintiff's choice of forum is [] 'given reduced emphasis where … the operative facts upon which the litigation is brought bear little material connection to the chosen forum.'") (citation omitted).

Meanwhile, the Trustee ignores or fails to sufficiently refute numerous other factors weighing in favor of dismissal here, including:

- <u>Cyprus Is an Adequate Alternative Forum</u>.  Again, citing nothing, the Trustee states "there is no basis in which an alternative forum is appropriate to pursue these claims." Opp. at 21.  To the contrary, AFX consents to personal jurisdiction in Cyprus for purposes of litigating the Trustee's purported claims, which would be permitted in Cypriot courts where claims for breach of contract and various torts are recognized.  Mot. at 21-22.

- <u>The Agreement and all Related Transactions Occurred Abroad</u>.  The Trustee does not dispute that the relevant transactions and related events, including: the parties' execution of the Agreement (which is controlled by Cypriot law), the opening of the Gallant account with AFX and the alleged deposits and withdrawals from the Gallant account, occurred entirely abroad, where the contract parties were located and where AFX oversaw the Gallant account and all related transactions.  *Id.* at 18.

- <u>Cyprus Has a Far Greater Interest than New York</u>.  Not surprisingly, the Trustee does not even bother arguing that New York has an interest in this action (much less a greater interest than Cyprus) where the subject dispute centers on events occurring in Cyprus (or abroad), including: the Agreement was executed in Cyprus by a Cypriot entity (and a BVI entity) and included the Cyprus Forum Clause; the Gallant account was opened in Cyprus; and the Alleged Withdrawals and Alleged Miscalculation Amount were allegedly perpetrated against the Gallant account in Cyprus by AFX personnel in Cyprus.  *Id.* at 18-19.

- <u>Cyprus Is the Parties' Chosen Forum</u>.  While the Trustee's choice of forum deserves little deference here (*see, supra*), the Trustee ignores the Forum Clause which binds the Trustee with respect to her disguised breach of contract claims and dramatically alters a *forum non conveniens* analysis.  *Id.* at 19-20.

- <u>The Relevant Parties and Key Witnesses Are All Located Outside of New York</u>. As alleged, the two parties to the Agreement, Gallant and AFX, are domiciled in the BVI and Cyprus, respectively, and through the Forum Clause, contractually agreed to litigate in Cyprus and submit to jurisdiction there.  In addition, even though Gallant alleges a mailing address in New York, as described herein, New York bears no connection to the Agreement and related transactions that give rise to the purported claims.  Accordingly, the Trustee's assertion that the majority of witnesses are located in the U.S. is implausible given the overwhelmingly foreign nature of the Agreement

13

and related transactions and fact that AFX has no personnel in the U.S. and Gallant's AFX account was maintained in Cyprus.  *Id.* at 20-22.

- Foreign Law Governs the Trustee's Disguised Breach of Contract Claims.  While the Trustee presumably (and mistakenly) assumes that federal bankruptcy law will apply to her claims, Cypriot law will necessarily apply to determine whether AFX has any liability under the Agreement, as alleged.  *See* section III. A., *infra* (while improperly raised and subject to dismissal, the Trustee's turnover, declaratory relief and automatic stay claims are inextricably linked to an action for breach of the Agreement (and disguised contract claims) which must be resolved under Cypriot law pursuant to the Forum Clause).  *Id*. at 22-23.

Accordingly while there is no question the Trustee would prefer to litigate Gallant's claims here rather than in Cyprus, the proper considerations in applying a court's discretion overwhelmingly favor dismissal for *forum non conveniens*.

## III.    The Complaint Fails To State a Cause of Action

### A.    The Turnover, Declaratory Relief and Violation of Stay Claims Are Disguised Breach of Contract Claims Not Properly Raised Here

As established in the Motion (Mot. at 23-24), the Complaint fails to sufficiently state a claim for either turnover, declaratory relief or violation of the automatic stay (Claims One, Two and Five), and the Opposition fails to provide a basis to avoid dismissal of such claims.  These claims, each of which is premised on AFX's purported breach of the Agreement, improperly serve as a vehicle for bringing an unliquidated breach of contract claim, which cannot be finally adjudicated by this Court.

To state a turnover claim, a trustee must allege "the lack of any dispute of the estate's interest in the property sought to be turned over. . . ."  *In re 11 E. 36th LLC*, No. 13-11506 (JLG), 2015 WL 2445075, at *11 (Bankr. S.D.N.Y. May 20, 2015) (collecting cases) (dismissing turnover claim because, as was clear from the face of the complaint, the trustee was attempting to liquidate a disputed debt).  "Where there is a legitimate dispute about the ownership of property a trustee seeks to recover, turnover under section 542 is not appropriate."  *In re Lexington*

4839-1924-7470.12

*Healthcare Grp., Inc.,* 363 B.R. 713, 716 (Bankr. D. Del. 2007) (finding that the trustee failed to state a claim for turnover because the right to recover the proceeds was in dispute).

Here, it is apparent from the face of the Complaint that AFX vigorously contests any breach of the Agreement, and disputes the Trustee's interest in the funds purportedly owed. *See* Compl. ¶ 72 (alleging that AFX "asserted defenses" in response to the Trustee's demand for turnover). Under these circumstances, the Trustee's own authority demonstrates that she cannot invoke the turnover power to liquidate her breach of contract claim. *See* Opp. at 24 (citing *In re Pali Holdings, Inc.*, 488 B.R. 841, 852 n.39 (Bankr. S.D.N.Y. 2013) ("Of course, the turnover power can be improperly invoked, especially when it is used as a Trojan Horse for bringing garden variety contract claims. . . ."))); *see also United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes. . . .).

Notwithstanding these facts and law, the Trustee argues that a turnover claim is properly pleaded if, in the same action, the plaintiff also seeks to establish that the property belongs to the estate. Opp. at 24. However, such theory is contrary to well-established law, as detailed above, showing that a turnover claim will not lie when there is a bona fide dispute about the Trustee's interest in the property. Predictably, the Trustee's cases do not hold differently. *See In re EMS Fin. Servs., LLC*, No. 12-71324-AST, 2013 WL 64755, at *5 (Bankr. E.D.N.Y. Jan. 4, 2013) (defendant "d[id] not challenge" the trustee's assumption that an insurance policy was property of the estate); *In re Ortega T.*, 562 B.R. 538, 543 (Bankr. S.D. Fla. 2016) (court provided no explanation for its conclusion and there was no indication that there was a "bona fide dispute" about whether the property belonged to the estate).

4839-1924-7470.12

For these same reasons, the Trustee cannot state a claim for declaratory relief.  The Trustee asserts that the Court may adjudicate her thinly disguised breach of contract claim as a request for declaratory relief because "the determination of whether something is property of the estate is a core matter."  Opp. at 25.  As with turnover claims, however, the Trustee cannot recast a non-core breach of contract claim as "core" to bring it within the jurisdiction of this Court.  *See, supra, Orion*, 4 F.3d at 1102.

The Trustee's so-called stay violation claim likewise fails because the Trustee does not, and cannot, allege that the disputed funds are property of the estate.  The automatic stay only applies to "property of the estate" (11 U.S.C. 362(a)); it does not apply to funds which are subject to a legitimate contract dispute.  *In re Lehman Bros. Holdings Inc.*, 502 B.R. 376, 381–82 (Bankr. S.D.N.Y. 2013) is instructive.  There, the debtor sought to recover funds withheld by a creditor under a swap agreement, and alleged that the creditor had "not acted reasonably in calculating its loss on account of declaring an Event of Default [under the agreement]" and exercising its contractual right to a setoff.  *Id*.  (*compare* Compl. ¶ 74).  The *Lehman* court held that this did not amount to a stay violation claim, but rather, "left [the debtor] with a breach of contract claim" because the "disputed portion of the collateral is not property of the estate."  *Id*.[8]

Accordingly, the Trustee fails to state a claim and these causes of action must be dismissed as a matter of law.

---

[8] Moreover, because the Agreement is a "swap agreement," as described below (section III B), the exercise of contractual rights under the Agreement is not a violation of the automatic stay.  11 U.S.C. §§ 362(b)(17) and 560.  Similarly, recoupment does not constitute a violation of the automatic stay.

16

**B.      The Trustee's Preference And Fraudulent Transfer Claims Should Be Dismissed Under Section 546(g) Of The Bankruptcy Code**

As further established in the Motion (Mot. at 24-27), the Trustee's preference and fraudulent transfer claims (Claims Three and Four) should be dismissed under § 546(g) of the Bankruptcy Code because the Transfers plainly were made "under or in connection with a swap agreement."  11 U.S.C. § 546(g).  Section 546(g) provides that a trustee may not avoid a preference or constructively fraudulent transfer that is made (a) by or to (or for the benefit of) a swap participant under or in connection with a swap agreement, and (b) before the commencement of the debtor's bankruptcy case.  *Id*.  In response, the Trustee argues that § 546(g) does not apply because the Agreement is not a "swap agreement."  Opp. at 27-28.  This argument is utterly baseless.

In her response, the Trustee posits a very narrow definition of "swap agreement" under § 101(53B) of the Bankruptcy Code, relying on language from *In re Interbulk, Ltd.*, 240 B.R. 195, 200 (Bankr. S.D.N.Y. 1999).  *Interbulk*, however, was a 1999 decision interpreting the prior – and much narrower – definition of "swap agreement" in effect at that time.  *See id.* at 200.

In 2005, Congress amended the definition of "swap agreement" as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  *See* Pub. L. No. 109-8, 119 Stat. 23 (2005); *In re Nat'l Gas Distributors, LLC*, 556 F.3d 247, 253 (4th Cir. 2009).  Under BAPCPA, "Congress substantially expanded the protections it had given to financial derivatives participants and transactions by expanding the definition of 'swap participants' and 'swap agreements' that are exempted from the automatic stay and from trustees' avoidance powers."  *Nat'l Gas Distributors*., 556 F.3d at 253.  The definition of "swap agreement" in effect today is "now extremely broad, covering several dozen enumerated contracts and transactions, as well as combinations of them, options on them, and similar contracts or transactions."  *Id.*

Multiple subsections of § 101(53B) make it plain that the Agreement – which indisputably provides for trading in foreign currencies ("FX") – qualifies as a "swap agreement."[9]  *See* 11 U.S.C. § 101(53B)(A)(i)(II) ("swap agreement" includes a "*spot*, same day-tomorrow, tomorrow-next, forward, *or other foreign exchange* . . . agreement") (emphasis added); *id.* at § 101(53B)(A)(i)(I) and (III) ("Cross currency rate swaps" and "currency swaps, options, futures, or forward agreements" are "swap agreements"); *id.* at § 101(53B)(A)(ii)(II) (forward, swap, future, option, and spot transactions on one or more rates, currencies or commodities that are similar to enumerated transactions in § 101(53B) are "swap agreements"). Moreover, a master agreement that provides for an agreement or transaction referred to in the swap agreement definition (such as the Agreement, which provides for FX transactions) is itself a "swap agreement."  *Id.* at § 101(53B)(A)(v).

The Trustee simply disregards the text of § 101(53B).  Instead, the Trustee argues that the Agreement is somehow not a "swap agreement" because it did not involve "future payments" due to daily debits to the client's account.  *See* Opp. at 27-28.  This argument, however, ignores that, as noted above, a "swap agreement" includes "a *spot, same day-tomorrow*, tomorrow-next, forward, or other *foreign exchange,* precious metals, or other commodity agreement."  11 U.S.C. § 101(53B)(A)(i)(II) (emphasis added); *see also* 5 COLLIER ON BANKRUPTCY ¶ 556.02[1] n.8 (16th ed. 2018) ("Spot foreign exchange transactions are included in the definition of 'swap agreements.'"); *In re Casa de Cambio Majapara S.A. de C.V.*, 390 B.R. 595, 597, 600 (Bankr. N.D. Ill. 2008) (stipulating that foreign exchange spot transactions qualified as "swap

---

[9] The entire definition of "swap agreement" in § 101(53B) is quoted, with emphasis, in AFX's Motion.  *See* Mot. at 25-26.

agreements"). Accordingly, even if the Agreement "only" involves spot or tomorrow-next FX transactions (instead of "future payments"), it is still a "swap agreement" under § 101(53B).

Finally, the Trustee argues that § 546(g) does not apply because the Transfers were not authorized under the Agreement. *See* Opp. at 28. While this argument only further evidences that the Trustee is asserting a disguised breach of contract claim against AFX, it provides no basis to sidestep AFX's § 546(g) defense. AFX's only relationship with Gallant was through the Agreement – a "swap agreement" – and any transfers to AFX were indisputably made "under or in connection with" the Agreement. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 505 B.R. 135, 145 (S.D.N.Y. 2013) (stating that "in connection with" has a "broad meaning" and that "section 546(g)'s requirement that a transfer be made 'in connection with any swap agreement' simply means that the transfer must be related to such an agreement"); *Casa de Cambio*, 390 B.R. at 598 (noting broad application of "in connection with"). The Trustee's preference and constructively fraudulent transfer claims thus fail as a matter of law and should be dismissed.[10]

## C.    The Trustee's Preference Claim Also Should Be Dismissed Because a Recoupment Cannot Be a Preference

While this Court does not need to reach this issue because § 546(g) is a complete defense to the Trustee's preference claim (Claim Three), the preference claim also fails because a recoupment cannot be a preference. The Trustee alleges that the Complaint does not plead facts demonstrating a recoupment. *See* Opp. at 28-31. The Trustee is wrong.

---

[10] If the Transfers really were inappropriate under the Agreement (which AFX vehemently disputes), the Trustee may assert a *breach of contract* claim against AFX (in Cyprus, AFX submits) to attempt to recover such amounts. The Trustee, however, cannot pursue chapter 5 causes of action expressly precluded by § 546(g).

The Complaint makes the following allegations germane to Claim Three and AFX's recoupment defense:

- As of April 3-5, 2017, AFX owed approximately $2.472 million to Gallant. (Compl. ¶¶ 55-59).

- On April 6, 2017, AFX made four withdrawals totaling approximately $1.028 million from Gallant's account (the "Withdrawals"), reducing the balance of that account to approximately $1.443 million.  (*Id.* ¶¶ 62-65).

- On April 14, 2017, AFX withdrew the remaining balance from Gallant's account (the "Remaining Balance").  (*Id.* ¶ 69).

- "Upon information and belief, ***the removal of the Withdrawals and the Remaining Balances from Gallant's account was made on account of antecedent debt owed by Gallant to Defendants*** based upon the business transactions and history between Gallants [sic] and Defendants, whereby (a) Defendants would supplied [sic] services to Gallant, (b) Defendants would deliver a bill or an invoice to Gallant for such services, and (c) Gallant was required to remit payment to Defendants for such services on a subsequent date."  (*Id.* ¶ 94) (emphasis added).

While contested, the Trustee's preference claim thus alleges that AFX owed Gallant over $2.4 million under the Agreement as of April 5, 2017, but then withdrew funds under that Agreement based on an antecedent debt owed by Gallant to AFX.  Consequently, the Trustee has pled a textbook case of recoupment by AFX.  *In re Yonkers Hamilton Sanitarium Inc.* 22 B.R. 427, 432-33 (Bankr. S.D.N.Y. 1982).

As set forth in the Motion, a recoupment is not a preference.  *Snodgrass v. Dep't of Veterans Affairs*, 244 B.R. 353 (W.D. Va. 2000) (exercising right to recoupment within preference period does not constitute a preferential transfer); *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (M.D. Tenn. 1981) (holding deductions from debtor's royalty payments due to prior advances constituted an allowable recoupment under the Bankruptcy Act).  The Trustee's

20

preference claim therefore fails as a matter of law for this additional reason, and should be dismissed.[11]

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Motion, the Court should dismiss this action in its entirety against all Defendants.

Dated:  August 10, 2018
      New York, New York

               **FOLEY & LARDNER LLP**

               By: /s/  *Douglas E. Spelfogel*
               Douglas E. Spelfogel
               Derek L. Wright
               90 Park Avenue
               New York, New York 10016-1314
               Telephone:  (212) 682.7474
               Facsimile:  (212) 687.2329

               and

               Geoffrey S. Goodman
               321 North Clark Street
               Chicago, Illinois 60610
               Telephone:  (312) 832.4500
               Facsimile:  (312) 832.4700

               *Attorneys for Defendants*

---

[11] In an attempt to sidestep AFX's recoupment defense, the Trustee grasps at straws by alleging that "[t]here is no debt owed to Defendants at the time of the withdrawal of the Remaining Balance." Opp. at 30-31.  Of course, as noted above, that is **not** what the Trustee pled in her Complaint, in which she alleged the existence of such an antecedent debt.  Compl. ¶ 94.  Moreover, if Gallant did not owe an antecedent debt to AFX, the Trustee's preference claim would fail on that basis alone, as she could not satisfy her *prima facie* case under § 547(b)(2) of the Bankruptcy Code.