**WHITE AND WILLIAMS, LLP**
7 Times Square
New York, New York 10036
Telephone: 212.714.3070
Heidi J. Sorvino, Esq.
Thomas E. Butler, Esq.
*Attorneys for Defendants*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>GALLANT CAPITAL MARKETS, LTD.<br><br>Debtor. | Chapter 11<br><br>Case No. 17-41814-ESS |
| ESTHER DUVAL, AS CHAPTER 11 TRUSTEE OF GALLANT CAPITAL MARKETS, LTD., ESTATE,<br><br>Plaintiff,<br><br>-against-<br><br>AFX CAPITAL MARKETS LTD., AFX CAPITAL U.S. CORP. and STO SUPER TRADING ONLINE,<br><br>Defendants. | Adv. Pro. No. 18-01038-ESS |

**OBJECTION OF DEFENDANTS TO
MOTION OF CHAPTER 11 TRUSTEE SEEKING THE ENTRY OF
<u>AN ORDER FOR JUDGMENT AND SEEKING SANCTIONS AND FEES</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT .....................................................................................................................................2

I. THERE WAS NO BAD FAITH THAT SUPPORTS SANCTIONS .................................2

    A. There was no Bad Faith in the Mediation and Settlement Discussions ...................2

    B. The Current Status of AFX Undermines the Trustee's Position .............................5

    C. Relief Sought Should not be Available Given that The Trustee Exercised her Remedy Under the Settlement Stipulation............................................................6

    D. The Case Law Cited by the Trustee is Inapposite.....................................................6

II. THE TRUSTEE IS NOT ENTITLED TO AN INJUNCTION ...........................................9

CONCLUSION....................................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*7 Eleven v. Khan*,
   977 F.Supp.2d 977 (E.D.N.Y. 2014) ....................................................................................10

*Almeciga v. Center for Investigative Reporting, Inc.*,
   185 F. Supp. 3d. 401 (S.D.N.Y. 2016) ...................................................................................8

*Bravia Capital Partners, Inc. v. Fike*,
   2015 Dist. LEXIS 37999 (S.D.N.Y. 2015) .............................................................................8

*Francis v. Women's Obstetrics and Gynecology Grp., P.C.*,
   144 F.R.D. 646-648 (W.D.N.Y. 1992) ...................................................................................8

*In re A.T. Reynolds & Son*,
   452 B.R. 374 (S.D.N.Y 2011) ................................................................................................8

*Kortright Partners LP v. Investcorp Inv. Advisers Ltd.*,
   327 F.Supp3d 673,688 ............................................................................................................8

*McNunn v. Meem'l Sloan-Kettering Cancer Ctr.*,
   191 F. Supp. 2d 440 (S.D.N.Y. 2002) ....................................................................................9

*Nick v. Morgans Food, Inc.*,
   270 F. 3d. 590 (8th Cir. 2001) ................................................................................................7

*Seidel v. Bradbury*,
   94 Civ. 0147, 1998 U.S. Dist. LEXIS 10310 (N.D. Tex. July 7, 1998) ..................................7

Defendants, AFX Capital Markets, Ltd., ("AFX Capital"), AFX Capital US Corp. ("AFX US") and STO Super Trading Online ("STO") (collectively, "Defendants"), by their attorneys White and Williams LLP, object to the Trustee's motion (the "Motion") and state as follows:

**PRELIMINARY STATEMENT**

In the Motion, the Trustee seeks draconian sanctions against the Defendants, all premised on the claim that the Defendants acted in bad faith in connection with a mediation and settlement in the case. Yet the Motion is entirely without a legal or factual basis, and should be summarily denied for the following reasons:

First, the picture that the Trustee attempts to draw – of rampant bad faith, "fraud on the Court," and deception – is entirely refuted by the actual facts and circumstances here. Those facts establish that Defendants acted in good faith in an effort to settle this proceeding, and continued to act in good faith even after Defendants defaulted and the Trustee chose to rescind the settlement and resume the litigation. The settlement ultimately was undermined by events outside of Defendants' control.

Second, the Trustee entirely disregards the fact that AFX Capital and its affiliate, AFX Markets Ltd. ("AFX Markets"; collectively, with Defendants, "AFX"), have apparently ceased doing business. In the case of AFX Markets, it is in administration in London; and in the case of AFX Capital, its licenses were suspended by its regulator, the Cyprus Securities and Exchange Commission ("CySec"). These events have undermined the settlement, insofar as AFX's management no longer controls AFX. Despite the fact that the Trustee was informed of these events through her counsel, they are not even mentioned in the papers, let alone taken into account.

Third, the settlement stipulation (the "Settlement Stipulation") itself included a specific remedy for a payment default. In particular, in the event of such default, the Trustee had a right to restore the litigation to active status. When the settlement deposit was not paid, the Trustee exercised that right and restored the litigation. Thereafter, AFX responded to the Trustee's document requests, produced documents, and addressed conducting possible depositions, all in a timely and complete fashion, and were otherwise prepared to proceed with the litigation. Instead of doing so, the Trustee decided to try to bypass the need to litigate through the Motion.

Finally, the case law relied upon by the Trustee is entirely inapposite, and does not support grant of the relief sought.

For the foregoing reasons, discussed in detail below, the Motion should be denied.

## ARGUMENT

### I.     THERE WAS NO BAD FAITH THAT SUPPORTS SANCTIONS

In seeking sanctions, the Trustee attempts to present a picture of bad faith from start to finish. However, this argument is premised on a distorted and untrue picture of the actual facts, and relies on case law that does not even support the relief sought. At the same time, the Trustee ignores critical facts that entirely undermine her position.

#### A.     There was no Bad Faith in the Mediation and Settlement Discussions

As the Trustee points out, a Court-ordered mediation was originally scheduled for late December. The mediation posed logistical difficulties given that AFX Capital is based in Cyprus, its principal who was responsible for this matter is an Italian citizen, and the company does not do business in the United States. Declaration of Heidi Sorvino, dated October 28, 2019 ("Sorvino Dec.") ¶ 3. While AFX Capital's principal, Mario Persechino, planned to be in the United States for the mediation, given inherent uncertainties surrounding his business and travel schedule, AFX specifically requested, *and the Trustee agreed* that a provision be included in the

mediation stipulation *permitting authorized representatives to appear by phone.* (Sorvino Dec. ¶ 9). If the Trustee believed that participation by phone could not possibly be productive, as she now indicates in her papers, the Trustee could have refused to include this provision.[1] However, she did not. Mr. Persechino was unable to appear in person, but did in fact appear by phone on December 18, while counsel was present in the Trustee's offices for at least four hours. The mediation went forward that day, as evidenced by the mediation report prepared by the mediator.[2] Notably, the Trustee chose not to mention that *participation by phone was expressly permitted by the mediation agreement.*

The remainder of the Trustee's critique of the settlement process is no more supportive of her position. While the Trustee expresses skepticism that Mr. Persechino actually was in a car accident, forcing the parties to postpone the second mediation session, she acknowledges that he appeared in person for a mediation session a few weeks later. (Motion ¶ 42). The Trustee also expresses frustration that negotiations over the settlement continued over the next two months, attributing (without any support) the delays entirely to Mr. Persechino. Notably, the Trustee ignores the fact that she was free at all times to continue the litigation despite the parties continuing to negotiate a settlement. She also ignores that the negotiations were lengthy because there were a number of issues that needed to be addressed as part of the settlement, including the settlement amount, the provision of a press release to AFX, and a method of securing the settlement, which took time to negotiate and resolve. And, in laying the blame for alleged delays on Mr. Persechino, she is apparently unaware that he was not the final decision maker at AFX.

---

[1] While face-to-face mediation is desirable, counsel for Defendants did not know "that [mediation with principals appearing by phone] would not be productive," as the Trustee contends. (Motion ¶ 8). Indeed, given the expense and time-commitment involved in trans-Atlantic travel, it was a viable alternative.

[2] Incredibly, in the Motion, the Trustee contends that the mediation did not take place on December 18. This is completely false.

(Sorvino Dec. ¶ 14). Contrary to the Trustee's implications, there is nothing about the length of the process that suggests bad faith.

Equally specious is the Trustee's claim that conduct after the settlement was reached and documented constituted bad faith that should be punished by sanctions. As the Trustee points out, Defendants failed to make the initial deposit. However, Defendant made every effort to do so, but unexpected issues have intervened. (Sorvino Dec. ¶ 21-22). The efforts included the decision to use the proceeds from a sale of real estate in Dubai to pay the amounts due. That decision was shared with the Trustee. (Sorvino Dec. ¶ 21). Unfortunately, difficulties involved with this sale closing and subsequent events prevented the settlement from being consummated.[3]

In short, the Trustee's "bad faith claim" consists of allegations that: (1) Mr. Persichino participated in the first mediation session by telephone (which he was expressly permitted to do); (2) Mr. Persichino postponed the second scheduled mediation session because he was in an automobile accident (which the Trustee suggests, without proof, did not occur); (3) the negotiations of the final settlement were spread out over two months, which the Trustee, without support, attributes to improper delay by Mr. Persichino; and (4) the Defendants ultimately failed to make the initial payment deposit on time. We submit that these circumstances simply do not amount to "bad faith" that entitles the Trustee to draconian relief and sanctions – particularly in light of the other facts that are ignored by the Trustee.[4]

---

[3] As set forth in the Sorvino Declaration, counsel for Defendants were in touch with Mr. Persichino regarding the settlement payment, relevant deadlines, and efforts to make the payment. (Sorvino Dec. ¶ 22). These communications are of course covered by the attorney-client privilege, but to the extent the Court believes them relevant, they are available for submission for *in camera* inspection.

[4] The Trustee fails to mention that, after the Trustee restored the litigation, Defendants fully cooperated, responding to document requests, producing documents, and discussing possible depositions. This cooperation entirely undercuts any suggestion that defendants were acting in bad faith or seeking delay.

-4-

### B.      The Current Status of AFX Undermines the Trustee's Position

In the Motion, the Trustee simply ignores the significant recent events with respect to AFX that undoubtedly impacted the possible settlement. In particular, on July 19, 2019, AFX Capital's licenses were suspended by its regulator, CySec. Declaration of Thomas E. Butler ("Butler Dec.") ¶ 2. Over one month later, its affiliate, AFX Market, was put into administration by the London High Court. It would appear that these events have displaced AFX's management – which had been responsible for the settlement -- and brought an end to its business.

As discussed in the annexed Declarations, counsel had been unable to reach the executives of AFX to obtain updates on the current status of the regulatory proceedings. However, there can be no doubt that the same have impacted the ability of AFX to finalize this settlement. To the extent AFX has no operating business, it could not reasonably be expected to fund an expensive settlement. To the extent AFX's operations were under the control of its foreign regulators, there is a question whether its management even had the right to complete the settlement or ability to fund a settlement thereby favoring one over others.[5]

Counsel has also reached out to the pertinent foreign authorities. The administrator has been helpful, informing counsel that it has taken control of AFX Markets' servers and premises, and sharing additional information. (Butler Dec. ¶ 5). CySec, however, as stated only that an investigation is underway, but otherwise has declined to provide information or assistance – indeed, it has even refused to provide the name of the investigator in charge. (Butler Dec. ¶ 8).

Significantly, when counsel for Defendants informed the Trustee, more than a week prior to the Motion being filed, about the events in Europe enveloping AFX, and recommended that no action be taken until a clearer picture of the future of AFX emerged, not only did the Trustee

---

[5]Upon information and belief, an English administration, like an American Chapter 11 proceeding where a trustee is appointed, places all decision making authority in the hands of the administrator.

refuse to wait, but her counsel actually cast doubt on whether the European regulators had taken these steps. (Sorvino Dec. ¶ 29). The existence of these proceedings are matters of public record. Given these circumstances, a finding that AFX acted in bad faith is entirely inappropriate.

### C. Relief Sought Should not be Available Given that The Trustee Exercised her Remedy Under the Settlement Stipulation

The Trustee also should not be permitted to obtain the relief sought here given that the Settlement Stipulation included a provision specifying that, in the event of a payment default, the remedy of the Trustee was to restore the litigation to active status. This remedy was the product of considerable negotiation between the parties. (Sorvino Dec. ¶ 18). When payment was not made, the Trustee chose to exercise this remedy. Thereafter, Defendants responded to the Trustee's document requests, negotiated a confidentiality agreement, produced all relevant and responsive documents, and began the process of discussing depositions. (Sorvino Dec ¶¶ 24-25).

Once again, the Trustee has failed to make any reference to the agreed upon remedy for payment default and of course has failed to acknowledge that Defendants complied in all respects with discovery. Having agreed that a payment default would be remedied by a resumption of litigation, Trustee should not now be permitted to insist that the payment default be remedied through sanctions. And of course, Defendants' compliance and cooperation with the resumption of discovery entirely undercuts the argument that they have acted in bad faith here.

### D. The Case Law Cited by the Trustee is Inapposite

Finally, none of the cases cited and relied upon by the Trustee supports the relief requested here. Indeed, the cases actually refute any claim to be entitled to sanctions.

In *Seidel v. Bradbury*, 94 Civ. 0147, 1998 U.S. Dist. LEXIS 10310 at *3 (N.D. Tex. July 7, 1998), the Court imposed sanctions for failure of a party to attend a Court ordered mediation. That did not happen here. In *Nick v. Morgans Food, Inc.*, 270 F. 3d. 590 (8th Cir. 2001), the defendant submitted a late mediation memorandum, failed to send a representative to the mediation with settlement authority, and informed the Court it believed the mediation order was optional, and that it chose not to comply with it believing it was a waste of time and money Again, that is not remotely close to the facts here. In *Francis v. Women's Obstetrics and Gynecology Grp., P.C.*, 144 F.R.D. 646-648 (W.D.N.Y. 1992), the wrongdoing cited by the Court included a failure to submit a mediation memorandum and to inform the plaintiff whether insurance was available to fund a possible settlement. Again, nothing of the sort is even alleged here.[6]

The Trustee's suggestion that there is conduct here that supports a finding that there was "fraud on the Court" is even further from the mark. While the Court has the inherent power to sanction a party for perpetrating such a fraud on the Court, no such conduct has occurred here. This is confirmed by the Trustee's own cases. In *Almeciga v. Center for Investigative Reporting, Inc.*, 185 F. Supp. 3d. 401, 427 (S.D.N.Y. 2016), the Court stated that: "[a]s a general matter, a Court should not impose sanctions on a party or attorney pursuant to its inherent authority unless it finds by clear and convincing evidence that [a] party or attorney knowingly [made or submitted] material, false or misleading [statements in evidence] or knowingly failed to correct

---

[6]In *In re A.T. Reynolds & Son*, 452 B.R. 374 (S.D.N.Y 2011), the District Court reversed a decision sanctioning the Defendant for purported bad faith in connection with a mediation. Similarly, in *Kortright Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F.Supp3d 673,688, the Court denied competing motions for sanctions, noting that the power to sanction parties for fraud on the Court "must be exercised with restraint and discretion."

false statements as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly."  Nothing remotely resembling that happened here.

In *Bravia Capital Partners, Inc. v. Fike*, 2015 Dist. LEXIS 37999, at *10 (S.D.N.Y. 2015) – a case in which the request for sanctions was denied – the alleged wrongdoing included destruction of evidence, withholding evidence, lying to the Court, and forging documents. The Court determined that, even though it found that there was spoliation of three documents and that a forged document was submitted to the Court, Defendant had failed to establish "intentional bad faith" or an "unconscionable scheme," and thus did not establish a fraud on the Court.  In *McNunn v. Meem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440 (S.D.N.Y. 2002), the Court outlined in a lengthy, multi-page opinion what it characterized as extensive "outrageous behavior" supporting a finding of fraud on the Court.  This included extensive and repeated lying about in the course of discovery about significant issues, failure to disclose the identities of critical witnesses, and manipulation and doctoring of evidence, including certain audio recordings.

Here, there was no "deliberate and unconscionable" scheme to interfere with the Court's ability to adjudicate this matter, and no colorable argument that there was could be made on these facts.  Indeed, the Trustee's suggestion that there was such a scheme is frivolous, and her suggestion that counsel for Defendants facilitated such a fraud is not only baseless but is a completely unprofessional and unwarranted attack.

At all times, counsel presented information to the Trustee and the Court that was complete and accurate to the best of counsel's knowledge.  Ultimately, and regrettably, it would appear that the settlement failed because the AFX business failed.  The failure of that business, and the extreme consequences for the business, its clients, and undoubtedly its management, are

a matter of public record and have been widely discussed and reported in the media. (Sorvino Dec. ¶ 27). While it is unfortunate that failure of the settlement to date has been a result, it certainly does not provide a basis for imposing sanctions. The Motion should be denied.[7]

## II. THE TRUSTEE IS NOT ENTITLED TO AN INJUNCTION

The Trustee alleges, "upon information and belief," that Amr. Persechino "used the Press Release annexed to the Settlement Stipulation for purposes of raising money." (Motion ¶ 47). The Trustee seeks injunctive relief preventing further use of this Press Release.

As the Court is no doubt aware, a preliminary injunction is an "extraordinary remedy" not granted as of right. *7 Eleven v. Khan*, 977 F. Supp. 2d 214, 219 (E.D.N.Y. 2013). Notably, the Trustee provides no evidence whatsoever to support its claim that the Press Release was used to "raise capital." Nor has Defendants' counsel uncovered any such effort. The Trustee's supposition does not support a grant of an injunction here. Moreover, given the circumstances surrounding Defendants, it would not appear that much would be gained by grant of this relief.

## CONCLUSION

For the reasons set forth above, it is respectfully requested that the Motion be denied in its entirety.

WHITE AND WILLIAMS LLP

/s Heidi J. Sorvino
_____
Heidi J. Sorvino, Esq.
Thomas E. Butler, Esq.
7 Times Square, Suite 2900
New York, New York 10036-
212-714-3070
butlert@whiteandwilliams.com

---

[7] In addition, AFX contested the jurisdiction of the Court over Defendants, and the issue also weighs against the grant of relief here. (Sorvino Dec. ¶¶ 5-6).